(d) The provisions of paragraph (a) of this rule shall not apply to the repurchase, termination, retirement, or cancellation of a security outstanding on the effective date of this section or issued pursuant to a subscription agreement or other plan of acquisition in effect on such date.

* * *

**Rule 12b-1. Distribution of Shares by Registered Open-End Management Investment Company**

(a)(1) Except as provided in this rule, it shall be unlawful for any registered open-end management investment company (other than a company complying with the provisions of section 10(d) of the Act) to act as a distributor of securities of which it is the issuer, except through an underwriter.

(2) For purposes of this rule, such a company will be deemed to be acting as a distributor of securities of which it is the issuer, other than through an underwriter, if it engages directly or indirectly in financing any activity which is primarily intended to result in the sale of shares issued by such company, including, but not necessarily limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature.

(b) A registered, open-end management investment company ("company") may act as a distributor of securities of which it is the issuer, *Provided*, That any payments made by such company in connection with such distribution are made pursuant to a written plan describing all material aspects of the proposed financing of distribution and that all agreements with any person relating to implementation of the plan are in writing, *and further provided*, That:

(1) Such plan has been approved by a vote of at least a majority of the outstanding voting securities of such company, if adopted after any public offering of the company's voting securities or the sale of such securities to persons who are not affiliated persons of the company, affiliated persons of such persons, promoters of the company or affiliated persons of such promoters;

(2) Such plan, together with any related agreements, has been approved by a vote of the board of directors of such company, and of the directors who are not interested persons of the company and have no direct or indirect financial interest in the operation of the plan or in any agreements related to the plan, cast in person at a meeting called for the purpose of voting on such plan or agreements; and

(3) Such plan or agreement provides, in substance:

(i) That it shall continue in effect for a period of more than one year from the date of its execution or adoption only so long as such continuance is specifically approved at least annually in the manner described in paragraph (b)(2);

(ii) That any person authorized to direct the disposition of monies paid or payable by such company pursuant to the plan or any related agreement shall provide to the company's board of directors, and the directors shall review, at least quarterly, a written report of the amounts so expended and the purposes for which such expenditures were made; and

(iii) In the case of a plan, that it may be terminated at any time by vote of a majority of the members of the board of directors of the company who are not interested persons of the company and have no direct or indirect financial interest in the operation of the plan or in

**Rule 12b-1**            INVESTMENT COMPANY ACT OF 1940

any agreements related to the plan or by vote of a majority of the outstanding voting securities of such company; and

(iv) In the case of an agreement related to a plan,

(A) That it may be terminated at any time, without the payment of any penalty, by vote of a majority of the members of the board of directors of such company who are not interested persons of the company and have no direct or indirect financial interest in the operation of the plan or in any agreements related to the plan or by vote of a majority of the outstanding voting securities of such company on not more than sixty days' written notice to any other party to the agreement, and

(B) For its automatic termination in the event of its assignment; and

(4) Such plan provides that it may not be amended to increase materially the amount to be spent for distribution without shareholder approval and that all material amendments of the plan must be approved in the manner described in paragraph (b)(2);

(5) Such plan is implemented and continued in a manner consistent with the provisions of paragraphs (c), (d), and (e) of this rule;

(c) A registered open-end management investment company may rely on the provisions of paragraph (b) of this Rule only if:

(1) A majority of the directors of the company are not interested persons of the company, and those directors select and nominate any other disinterested directors of the company; and

(2) Any person who acts as legal counsel for the disinterested directors of the company is an independent legal counsel;

(d) In considering whether a registered open-end management investment company should implement or continue a plan in reliance on paragraph (b) of this rule, the directors of such company shall have a duty to request and evaluate, and any person who is a party to any agreement with such company relating to such plan shall have a duty to furnish, such information as may reasonably be necessary to an informed determination of whether such plan should be implemented or continued; in fulfilling their duties under this paragraph the directors should consider and give appropriate weight to all pertinent factors, and minutes describing the factors considered and the basis for the decision to use company assets for distribution must be made and preserved in accordance with paragraph (f) of this rule;

NOTE: For a discussion of factors which may be relevant to a decision to use company assets for distribution, see Investment Company Act Releases Nos. 10862, September 7, 1979, and 11414, October 28, 1980.

(e) A registered open-end management investment company may implement or continue a plan pursuant to paragraph (b) of this rule only if the directors who vote to approve such implementation or continuation conclude, in the exercise of reasonable business judgment and in light of their fiduciary duties under state law and under sections 36(a) and (b) of the Act, that there is a reasonable likelihood that the plan will benefit the company and its shareholders; and

(f) A registered open-end management investment company must preserve copies of any plan, agreement or report made pursuant to this rule for a period of not less than six years from the date of such plan, agreement or report, the first two years in an easily accessible place.

(g) If a plan covers more than one series or class of shares, the provisions of the plan must be severable for each series or class, and whenever this rule provides for any action to be

taken with respect to a plan, that action must be taken separately for each series or class affected by the matter. Nothing in this paragraph (g) shall affect the rights of any purchase class under Rule 18f-3(e)(2)(iii).

### Rule 12d2-1. Definition of Insurance Company for Purposes of Sections 12(d)(2) and 12(g) of the Act

For purposes of sections 12(d)(2) and 12(g) of the Act, "insurance company" shall include a foreign insurance company as that term is used in rule 3a-6 under the Act.

### Rule 12d3-1. Exemption of Acquisitions of Securities Issued by Persons Engaged in Securities Related Businesses

(a) Notwithstanding section 12(d)(3) of the Act, a registered investment company, or any company or companies controlled by such registered investment company ("acquiring company") may acquire any security issued by any person that, in its most recent fiscal year, derived 15 percent or less of its gross revenues from securities related activities unless the acquiring company would control such person after the acquisition.

(b) Notwithstanding section 12(d)(3) of the Act, an acquiring company may acquire any security issued by a person that, in its most recent fiscal year, derived more than 15 percent of its gross revenues from securities related activities, provided that:

(1) Immediately after the acquisition of any equity security, the acquiring company owns not more than five percent of the outstanding securities of that class of the issuer's equity securities;

(2) Immediately after the acquisition of any debt security, the acquiring company owns not more than ten percent of the outstanding principal amount of the issuer's debt securities; and

(3) Immediately after any such acquisition, the acquiring company has invested not more than five percent of the value of its total assets in the securities of the issuer.

(c) Notwithstanding paragraphs (a) and (b) of this Rule, this Rule does not exempt the acquisition of a general partnership interest or a security issued by the acquiring company's investment adviser, promoter, or principal underwriter, or any affiliated person of such investment adviser, promoter, or principal underwriter.

(d) For purposes of this Rule:

(1) "Securities related activities" are a person's activities as a broker, a dealer, an underwriter, an investment adviser registered under the Investment Advisers Act of 1940, as amended, or as an investment adviser to a registered investment company.

(2) An issuer's gross revenues from its own securities related activities and from its ratable share of the securities related activities of enterprises of which it owns 20 percent or more of the voting or equity interest should be considered in determining the degree to which an issuer is engaged in securities related activities. Such information may be obtained from the issuer's annual report to shareholders, the issuer's annual reports or registration statement filed with the Commission, or the issuer's chief financial officer.

(3) "Equity security" is as defined in Rule 3a-11.

(4) "Debt security" includes all securities other than equity securities.