UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELLE YAMEEN,<br><br>                Plaintiff,<br><br>VS.<br><br>EATON VANCE DISTRIBUTORS, INC.,<br><br>                Defendant, and<br><br>EATON VANCE TAX-MANAGED GROWTH FUND 1.1,<br><br>                Nominal Defendant. | Civil Action No. 03-12437-RCL |

**PLAINTIFFS' RESPONSE TO STATEMENT OF MATERIAL FACTS
NOT IN DISPUTE IN SUPPORT OF EATON VANCE DISTRIBUTORS, INC.'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff respectfully submits, as explained in the accompanying memorandum of law in opposition to the Defendant's motion, that Defendant ignores a series of important factual issues relevant to resolution of the ultimate issues in this case, including, without limitation, whether Defendant fulfilled its fiduciary obligations, and, taking into account all the surrounding circumstances, whether the fees paid to Defendant were excessive. Because these factual issues are simply not addressed and most likely contested by Defendant, the purported undisputed facts addressed below are insufficient for Defendant to prevail as a matter of law at this stage in the litigation.

**Defendant's Statement 1:**

The Eaton Vance Tax-Managed Growth Fund 1.1 ("Fund") is an open-end management investment company, or mutual fund, and a series of Eaton Vance Mutual Funds Trust ("Trust"). *See* Decl. ¶ 2. The Fund was "closed" to new investors on March 1, 2001, in that it stopped sales of shares to persons who were not existing shareholders. The Fund has continued to sell shares to current shareholders. *Id.*

**Plaintiff's Response 1:**

Undisputed, except to the extent that the Defendant's statement that "The Fund has continued to sell shares to current shareholders" wrongly suggests that the Defendant continues to perform the type of distribution services it performed prior to March 1, 2001.

**Defendant's Statement 2:**

Distributors serves as the Fund's principal underwriter pursuant to an Amended and Restated Distribution Agreement effective as of June 16, 2003 ("Distribution Agreement"). A copy of the Distribution Agreement is attached as Exhibit A to the Declaration. *See* Decl. ¶ 3.

**Plaintiff's Response 2:**

Disputed to the extent that the distribution agreement attached as Exhibit A to the Declaration is not a Distribution Agreement effective as of June 16, 2003. The attached distribution agreement was effective as of March 1, 2001.

**Defendant's Statement 3:**

The Distribution agreement governs the distribution of Fund shares, including Class A, Class B and Class C shares, which are principally sold through broker-dealers or other financial institutions. Decl. ¶ 4. The Fund's Board of Trustees has approved the Distribution Agreement. Decl. ¶ 4.

**Plaintiff's Response 3:**

Undisputed except to the extent that the Defendant's Statement can be read to suggest that the Fund's Board of Trustees' approval of the Distribution Agreement was consistent with its fiduciary obligations. The statement is further disputed to the extent that the terms of the agreement identified by Defendant were the terms of a distribution agreement effective as of March 1, 2001 – and not June 16, 2003.

**Defendant's Statement 4:**

The Fund has adopted a Class B Distribution Plan and a Class C Distribution Plan. The Fund's Board of Trustees has approved the Class B Distribution Plan and the Class C Distribution Plan. Decl. ¶ 5, Exhibits B and C, respectively.

**Plaintiff's Response 4:**

Undisputed except to the extent that the Defendant's Statement can be read to suggest that the Fund's Trustees' approval of the Distribution Agreement was consistent with their fiduciary obligations.

**Defendant's Statement 5:**

Purchasers of Class A shares pay a sales charge or "front-end load" calculated as a percentage of the purchase price. Decl. ¶ 6. The front-end load is paid to Distributors, which uses it to pay commissions to the selling broker-dealer and other distribution expenses. Decl. ¶ 6.

**Plaintiff's Response 5:**

Undisputed, except to the extent the statement implies that the Defendant cannot or does not profit from the sales charges.

**Defendant's Statement 6:**

Purchasers of Class B and Class C shares do not pay front-end loads. Brokers' commissions and other expenses incurred in connection with the distribution of Class B and Class C shares are paid by Distributors. Decl. ¶ 7.

**Plaintiff's Response 6:**

Undisputed, but subject to the fact that Distributors paid those brokers commissions and other expenses incurred in connection with the distribution of Class B and Class C shares pursuant to a Distribution Agreement with the Fund which Distributors knew could be terminated by the Fund on 60 days notice without penalty, and without the Fund having any further obligation to Distributors with respect to the brokers' commissions and other expenses incurred in connection with the distribution of Class B and Class C shares paid by Distributors.

**Defendant's Statement 7:**

Pursuant to the Distribution Agreement, the Fund has agreed to pay Distributors a commission of 5% and 6.25% on each sale of Class B and Class C shares, respectively, plus interest on outstanding amounts. Decl. ¶ 8; Distribution Agreement (Exhibit A to Declaration) ¶ 5(c). That commission and interest component are paid through the accrual of an amount equal to .75% per annum of the net asset value of the Fund's Class B and C shares. The fee is calculated daily and paid monthly. Decl. ¶ 8; Distribution Agreement (Exhibit A to Declaration) ¶ 5(d). The .75 basis point fee is paid pursuant to Rule 12b-1 and is commonly referred to as a distribution fee. Decl. ¶ 8.

**Plaintiff's Response 7:**

Undisputed except to the extent that the terms of the agreement identified by Defendant were the terms of a distribution agreement effective as of March 1, 2001 – and not June 16, 2003 and subject to the fact that Distributors paid those brokers commissions and other expenses incurred in connection with the distribution of Class B and Class C shares pursuant to a Distribution Agreement with the Fund which Distributors knew could be terminated by the Fund on 60 days notice without penalty, and without the Fund having any further obligation to Distributors.

**Defendant's Statement 8:**

Under Paragraph 5(c) of the Distribution Agreement, the Fund may make such payments to Distributors only after and as a result of the sale of Fund shares. Decl. ¶ 9; Distribution Agreement (Exhibit A to Declaration) ¶ 5(c).

**Plaintiff's Response 8:**

Undisputed except to the extent that the terms of the agreement identified by Defendant were the terms of a distribution agreement effective as of March 1, 2001 – and not June 16, 2003 and subject to the fact that Distributors paid those brokers commissions and other expenses incurred in connection with the distribution of Class B and Class C shares pursuant to a Distribution Agreement with the Fund which Distributors knew could be terminated by the Fund on 60 days notice without penalty, and without the Fund having any further obligation to Distributors.

**Defendant's Statement 9:**

The amounts that are due and payable to Distributors are referred to as "uncovered distribution charges" and are tracked by share class on a daily basis by the Fund administrator. Decl. ¶10; Distribution Agreement (Exhibit A to Declaration) ¶ 5(d).

**Plaintiff's Response 9:**

Disputed. The "uncovered distribution charges" are not obligations of the Fund or "due and payable to Distributors." This statement is further disputed to the extent that the terms of the agreement identified by Defendant were the terms of a distribution agreement effective as of March 1, 2001 – and not June 16, 2003.

**Defendant's Statement 10:**

Pursuant to the Distribution Agreement, the Class B Distribution Plan, and the Class C Distribution Plan, each Class of shares makes monthly payments to Distributors until the amount of uncovered distribution charges reaches zero, at which time the .75 basis point distribution fee for that Class is not accrued or paid by that Class. Decl. ¶ 11; Distribution

Agreement (Exhibit A to Declaration) ¶ 5(d); Class B Distribution Plan (Exhibit B to Declaration) ¶ 3; Class C Distribution Plan (Exhibit C to Declaration) ¶ 3.

**Plaintiff's Response 10:**

Undisputed except to the extent that the terms of the agreement identified by Defendant were the terms of a distribution agreement effective as of March 1, 2001 – and not June 16, 2003 and subject to the fact that Distributors paid those brokers commissions and other expenses incurred in connection with the distribution of Class B and Class C shares pursuant to a Distribution Agreement with the Fund which Distributors knew could be terminated by the Fund on 60 days notice without penalty, and without the Fund having any further obligation to Distributors.

**Defendant's Statement 11:**

As reported in the Fund's Annual Report for 2002, as of December 31, 2002, the Fund's uncovered distribution charges were $86,884,581 and $86,489,100 for Class B and Class C shares, respectively. Decl. ¶ 12 and Exhibit D at 16.

**Plaintiff's Response 11:**

Undisputed, subject to the fact that those uncovered distribution charges are not obligations of the Fund and are not carried as liabilities of the Fund on its financial statement, as of December 31, 2002.

**Defendant's Statement 12:**

As reported in the Fund's semi-annual report for the period ended June 30, 2003, as of June 30, 2003, the Fund's uncovered distribution charges were $77,583,351 and $86,415,473 for Class B and Class C shares, respectively. Decl. ¶ 13 and Exhibit E at 13.

**Plaintiff's Response 12:**

Undisputed, subject to the fact that those uncovered distribution charges are not obligations of the Fund and are not carried as liabilities of the Fund on its financial statement, as of June 30, 2003.

Submitted by Counsel for the Plaintiff,

**/s/Theodore M. Hess-Mahan**
Edward F. Haber BBO No. 215620
Theodore M. Hess-Mahan BBO No. 557109
Todd S. Heyman BBO No. 643804
Shapiro Haber & Urmy LLP
75 State Street, 15th Fl.
Boston, MA 02109
(617) 439-3939