UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHELLE YAMEEN,

    Plaintiff,

v.

EATON VANCE DISTRIBUTORS, INC.,

    Defendant, and

EATON VANCE TAX-MANAGED
GROWTH FUND 1.1.,

    Nominal Defendant.

Civil Action No. 03-12437-RCL

## REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT EATON VANCE DISTRIBUTORS, INC. TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant Eaton Vance Distributors, Inc. respectfully submits this Reply to Plaintiff's Memorandum of Law in Opposition to Motion of Eaton Vance Distributors, Inc. to Dismiss or, in the Alternative, for Summary Judgment (the "Opposition" or "Opp'n").[1]

The Opposition does not raise genuine disputes of material fact – Plaintiff concedes that the amount and purpose of the 12b-1 distribution fees at issue comport with the controlling NASD rule approved by the SEC – and it fails to refute any of the legal grounds for dismissal or summary judgment set forth in the EV Memorandum. In particular:

1.    The EV Memorandum demonstrates that the federal courts have dismissed Section 36(b) complaints that fail to allege excessive investment advisory fees. EV Mem. 8-9. Plaintiff apparently concedes that she is alleging excessive distribution fees rather than excessive

---

[1] Defendant's initial Memorandum in Support of its Motion to Dismiss or, in the Alternative, for Summary Judgment will be referred to hereinafter as the "EV Memorandum" or "EV Mem." This Reply incorporates the abbreviations and definitions used in the EV Memorandum.

BOS-673639 v1 0302234-0231

advisory fees, Opp'n at 7, and that her Complaint accordingly would be dismissed under the holdings of three of the cases cited by Distributors. Opp'n at 9. But she argues that these cases "were erroneously decided" because "none of those courts appear to have been aware of ... [certain] legislative history of Sec. 36(b)," Opp'n at 9, and because the analysis of these cases has been "expressly rejected" by decisions of the Second and Third Circuits. Opp'n at 7.

There are three flaws in Plaintiff's argument. First, the cases in fact address the legislative history and find support in it for their view that the statutory text of Section 36(b) created a limited cause of action aimed only at excessive advisory fees. *See, e.g., In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 343 (S.D.N.Y. 1996) (citing cases discussing legislative history and concluding that the "right of action under section 36(b) is limited by its language and its intent to recovery of *investment advisory fees* from any party enumerated in either section 36(b) or 36(a)"); *Rohrbaugh v. Investment Co. Inst.*, Fed. Sec. L. Rep. ¶ 91,961, 2002 WL 31100821, at *9 & n.21 (D.D.C. July 2, 2002) ("[t]he Senate Report[2] goes on to explain that: 'The sole purpose [of 36(b)] is to specify the fiduciary duty of the investment adviser with respect to compensation and provide a mechanism for court enforcement of this duty'") (*quoting* Senate Report 91-184); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 491-92 (N.D. Ill. 1999) (same).

Second, Plaintiff implies that, to discern congressional intent concerning Section 36(b), this Court should look to a 1966 SEC Report that made recommendations that led Congress to initiate the legislative process resulting, four years later, in the 1970 Amendments to the ICA, which included Section 36(b). Opp'n at 7-8. However, this SEC Report is not the authoritative source of the legislative history of Section 36(b). The Senate version of Section 36(b) that was

---

[2] Senate Report 91-184 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897 ("Senate Report").

enacted in 1970 differed significantly from the SEC's proposal in its 1966 Report and, accordingly, the case law has recognized that the Senate Report is the appropriate guide for interpreting Section 36(b).[3]

Third, Plaintiff's contention that her position draws support from Second and Third Circuit authority does not stand up once the cases are examined. None of the three cases Plaintiff cites addresses the type of claim Plaintiff is attempting to bring here:

- *Krantz v. Prudential Investments Fund Management LLC*, 305 F.3d 140, 143-44 (3rd Cir. 2002) affirmed the dismissal of a 36(b) complaint pursuant to Fed. R. Civ. P. 12(b)(6). *Krantz* endorsed *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 329 (4th Cir. 2001), *see Krantz*, 305 F.3d at 143-44, in which, consistent with Defendant's position, the Fourth Circuit recognized that: "[g]eneral breach of fiduciary duty claims which involve merely an incidental or speculative effect on advisory fees are not properly within the scope of Section 36(b)." *See Migdal*, 248 F.3d at 329. *Krantz* thus supports Distributors' position.

- *Meyer v. Oppenheimer Management Corp.*, 764 F.2d 76, 83 (2nd Cir. 1985) ("*Meyer I*"), stated: "[a] claim that payments made under rule 12b-1 are excessive **when combined with advisory fees**, where both payments are made to 'affiliated persons' of an investment adviser, is cognizable under section 36(b)" (emphasis added). Plaintiff has not alleged that the Fund's advisory fees are excessive either alone or combined with 12b-1 fees.

- *Meyer v. Oppenheimer Management Corp.*, 895 F.2d 861, 866-77 (2nd Cir. 1990) ("*Meyer II*"), simply held that, given the finding of fact by the district court in that case that payments for two entirely different services (investment advisory fees and 12b-1 fees) were not excessive when viewed separately, aggregating the payments would not lead to a different result.

Thus, there is no inconsistency between these cases and the authorities cited by Distributors, a fact borne out in particular by the *TCW* case, which was decided by the United States District Court for the Southern District of New York after the Second Circuit issued *Meyer I* and *II*.

---

[3] *See, e.g., Green v. Fund Asset Management*, 286 F.3d 682 (3rd Cir. 2002) (relying on Senate Report in concluding that Section 36(b) "was intended to provide a very specific, narrow federal remedy" *id.* at 685); *In re Gartenberg*, 636 F.2d 16, 17 (2nd Cir. 1980) (citing Senate Report and noting some of the changes between the original bill and Section 36(b) as enacted). *See also Chandler v. Roudebush*, 425 U.S. 840, 857-58 (1976).

3

2. The EV Memorandum also demonstrates that Section 36(b)(4) expressly removes the 12b-1 fees at issue from the scope of Section 36(b). EV Mem. 9-10. This is because (i) Section 36(b)(4) provides that Section 36(b) "shall not apply to compensation or payments made in connection with transactions subject to Section 17 of this title [the ICA], or the rules, regulations or orders thereunder," EV Mem. 9, (ii) the SEC has made clear that, absent an exemptive rule, a 12b-1 plan would be a "joint transaction" forbidden by Section 17(d) and Rule 17d-1, EV Mem. 10 n.9, and (iii) Rule 17d-3 specifically addresses (and thus governs) Rule 12b-1 plans. EV Mem. 10.

Plaintiff argues that 12b-1 payments cannot be "subject to Section 17" because "they are explicitly exempted from Section 17 of the Act by SEC Rule 17d-3." Opp'n at 12. To reach this result, Plaintiff selectively quotes from Rule 17d-3, Opp'n at 12, but omits the crucial clause of the rule: the exemption provided by 17d-3 applies only "***Provided That: (a) such [12b-1] agreement is made in compliance with the provisions of [Rule 12b-1]***." Rule 17d-3 (emphasis added).

Plaintiff cannot have it both ways. If, as Distributors states, the 12b-1 payments at issue comply with Rule 12b-1, they are covered by the Rule 17d-3 exemption but Plaintiff concededly has no claim. If, on the other hand, the distribution payments are not "made in compliance with the provisions of" Rule 12b-1 (as Plaintiff repeatedly alleges), Rule 17d-3's exemption does not apply and these payments are subject to Section 17(d) and Rule 17d-1, so that Section 36(b)(4) puts them beyond the reach of Section 36(b) (*i.e.*, they are "subject to … Section 17 … or the rules, regulations or orders thereunder" even under Plaintiff's unduly cramped understanding of the statutory phrase "subject to"). If, as Plaintiff contends, "nonsensical word game[s]," Opp'n at 13 n.8, are being played, it is Plaintiff who is playing them.

4

3.  Even if 12b-1 fees generally were within the ambit of Section 36(b), the EV Memorandum demonstrated that, as a matter of law, the fees received by Distributors in this case cannot be deemed excessive.

Plaintiff effectively concedes that there is no material factual dispute in this case precluding dismissal of the Complaint: she acknowledges that "*[n]o claim is made in this case that the Defendant is violating NASD Rule 2830*," Opp'n at 13 (emphasis added), the rule setting permissible amounts of fees. However, she advances several erroneous legal arguments as to why this action should be allowed to proceed:

- Neither the NASD Notice to Members nor the SEC Letter[4] is entitled to deference. Opp'n at 15, 16 n.10.

This is patently incorrect. The NASD Notice to Members and the SEC Letter approve the payment of distribution fees by funds closed to new investors as consistent with Rule 2830 and Rule 12b-1. Although these materials may not warrant the so-called *Chevron* deference that is given to an agency's final interpretation of a statute enacted by Congress, the NASD Notice to Members and the SEC Letter unquestionably are entitled to deference in interpreting NASD Rules (such as Rule 2830) and SEC Rules (such as Rule 12b-1), respectively. *See, e.g., Auer v. Robbins*, 519 U.S. 452, 461-63 (1997) (agency briefs and other informal interpretations ordinarily are controlling in construing the agency's own regulations); *Dawson v. New York Life*

---

[4] As used herein, "SEC Letter" refers to the letter dated August 19, 1993 to Congressman John D. Dingell from Acting Chairman Arthur Levitt enclosing Memorandum dated August 16, 1993 of Barbara J. Green, Deputy Director, Division of Investment Management. A copy of the SEC Letter is included in the Appendix of Additional Legal Materials submitted in support of the EV Memorandum.

*Ins. Co.*, 135 F.3d 1158, 1168 (7th Cir. 1998) *citing Moses v. Burgin*, 445 F.2d 369, 382 (1st Cir. 1971) (NASD Notices to Members entitled to deference when construing NASD Rules).[5]

- NASD Rule 2830 and the SEC Letter stand only for the proposition that "there is no *per se* bar to the continuation of a Rule 12b-1 Plan by a closed fund…. The claim at bar is that under the 'specific facts and circumstances' here, it was a breach of fiduciary duty for the Trustees to continue the Rule 12b-1 plans." Opp'n at 16.

Plaintiff's claim has nothing to do with any "specific facts and circumstances" in this case. Plaintiff instead makes an across-the-board legal argument: because a mutual fund has the option of discontinuing 12b-1 payments at any time, and because continuing 12b-1 payments that are not legally owed cannot possibly benefit a fund that is closed to new investors, a fund's board of directors necessarily breaches its fiduciary duties by approving payment of 12b-1 fees to a closed fund. Opp'n at 3-6, 13-14, 18-20. Plaintiff's position thus is directly refuted by the NASD Notice to Members interpreting Rule 2830 and by the SEC Letter, which specifically authorize payment of 12b-1 fees after a fund is closed for the purpose of reimbursing an underwriter for past distribution expenses.

- Whether the distribution fees comply with NASD Rule 2830 is a "red herring" because "[c]ompliance with NASD Rule 2830 does not, in any way, mean that a mutual fund, its trustees or its underwriter, have complied with Rule 12b-1." Opp'n at 13.

Far from being a "red herring," Plaintiff's concession that these fees comport with NASD Rule 2830 is independently sufficient to require dismissal of the Complaint. Section 22(b) confers upon the NASD the exclusive authority (subject to SEC oversight) to strike a balance between prohibiting "excessive" sales charges and "allow[ing] reasonable compensation for

---

[5] Plaintiff also argues that the SEC Letter is "unauthenticated." Opp'n at 14-15. Although Defendant believes there is no serious question regarding whether the SEC Letter is genuine, Defendant has no objection to whatever focused discovery the Court believes may be necessary to verify its authenticity, *if* Plaintiff *genuinely* disputes the letter's authenticity.

underwriters." 15 U.S.C. § 80a-22(b).[6] It is plain that the balance struck by NASD Rule 2830 could not be maintained were courts exercising jurisdiction under Section 36(b) to intrude with their own judgments about what constitutes excessive sales charges, or about the permissible purposes of such sales charges. *Cf. United States v. National Association of Securities Dealers, Inc.*, 422 U.S. 694, 734 (1975) (antitrust laws are impliedly repealed when necessary "to assure that the federal agency entrusted with regulation in the public interest could carry out that responsibility free from the disruption of conflicting judgments that might be voiced by courts").

Finally, Plaintiff is not suing for a violation of Rule 12b-1,[7] she is suing solely under a specific, express provision, Section 36(b). Plaintiff's allegations that the Fund's trustees breached their fiduciary duties in approving 12b-1 payments that, for the reasons already discussed, unquestionably are proper in amount and purpose[8] are simply irrelevant to a claim under Section 36(b). *See, e.g., Migdal*, 248 F.3d at 329 ("[I]f [a] claim for general breach of fiduciary duty is to be brought, it must be done under some other section of the ICA, or alternatively under state law." Section 36(b) is limited to cases where there was excessive compensation).

---

[6] Notably, Section 22(b)(3) expressly provides that Section 22(b) trumps any inconsistent provision of law in effect on the date of the enactment of Section 22(b).

[7] As Plaintiff undoubtedly knows, there is no private right of action under Rule 12b-1. *See, e.g., Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 432-33 (2nd Cir. 2002) (refusing to recognize an implied right of action under the ICA in light of *Alexander v. Sandoval*, 532 U.S. 517 (2001)).

[8] *See also* Plaintiff's Response to Statement of Material Facts not in Dispute ¶¶ 8, 10 (recognizing that 12b-1 fees at issue may be paid only after and as a result of the sale of Fund shares and only until amount of "uncovered distribution charges" reaches zero).

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the EV Memorandum, the Complaint fails to state a claim under Section 36(b) and should therefore be dismissed with prejudice. In the alternative, summary judgment should be granted for Defendant.

Respectfully submitted,

*/s/ Wm. Shaw McDermott*
*/s/ Amy B. Abbott*

Wm. Shaw McDermott (BBO #330860)
Aimée E. Bierman (BBO #640385)
Amy B. Abbott (BBO #648072)
KIRKPATRICK & LOCKHART LLP
75 State Street
Boston, MA 02109-1808
(617) 261-3100

Jeffrey B. Maletta, Esq.
Nicholas G. Terris, Esq.
KIRKPATRICK & LOCKHART LLP
1800 Massachusetts Avenue, N.W.
Washington, D.C. 20036
(202) 778-9000

*Attorneys for Defendant*
*Eaton Vance Distributors, Inc.*

Date: April 28, 2004