

Slip Copy  
2004 WL 1903075 (S.D.N.Y.)  
**(Cite as: 2004 WL 1903075 (S.D.N.Y.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court,  
S.D. New York.

Milton PFEIFFER, Plaintiff,  
v.  
BJURMAN, BARRY & ASSOCIATES, and Bjurman, Barry Micro Cap Growth Fund, Defendants.

**No. 03 Civ.9741 DLC.**

Aug. 26, 2004.

Eduard Korsinsky, Jean Marc Zimmerman, Zimmerman, Levi & Korsinsky, LLP, New York, New York, for the Plaintiff.

Mitchell A. Karlan, Michael M. Krauss, Gibson, Dunn & Crutcher, LLP, New York, New York, for the Defendants.

*OPINION AND ORDER*

COTE, J.

**\*1** In a second amended complaint, plaintiff Milton Pfeiffer ("Pfeiffer") alleges that the defendants Bjurman, Barry & Associated ("BB & A") and its no-load mutual fund Bjurman, Barry Micro Cap Growth Fund (the "Fund"), violated their fiduciary duties under Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-1 et seq. (1988) ("Section 36(b)" and "ICA"), by charging excessive promotion, distribution, administrative, transfer agent and "other" fees after the Fund was closed to new investors. The defendants respond that the fees were for less than permitted by Rule 12b-1 of the Securities and Exchange Commission ("Rule 12b-1" and "SEC"), 17 C.F.R. § 270.12b-1 (2004). [FN1] Defendants move to dismiss the action with prejudice. For the reasons stated below, the motion is granted with respect to administrative, transfer agent and "other" fees, but denied with respect to marketing, distribution and service fees charged by the Fund.

> FN1. SEC Rule 12b-1 is promulgated under Section 12(b) of the ICA, 15 U.S.C. § 80a-12(b).

*Background* [FN2]

> FN2. The facts recited here are taken from the Second Amended Complaint, from documents integral to that pleading, or in the light most favorable to the plaintiff.

A. *The Fund*

The Bjurman, Barry Funds (the "Trust") is a diversified, open-end investment company organized under the laws of Delaware and registered under the ICA. The Trust is governed by a five-member Board of Trustees (the "Board"). Three of the five Trustees are disinterested and independent. The Trust offers shares in three mutual funds, including the Fund that is the subject of this action.

The Fund is "no load," which means that it is an investment fund with combined asset-based sales charges and service fees of no more than 0.25% of average annual net assets. *See* NASD Rule 2830(d)(4). The Fund invests in companies with market capitalizations of between $30 million and $300 million. The Fund closed to new investors on May 30, 2003. [FN3] For the year-to-date as of September 30, 2003, the Fund's assets appreciated over 43 percent. As of July 3, 2003, each of the three principal shareholders of the Fund, with combined beneficial ownership of 73.09% of the outstanding voting shares, was a

Slip Copy  Page 2
2004 WL 1903075 (S.D.N.Y.)
**(Cite as: 2004 WL 1903075 (S.D.N.Y.))**

broker-dealer holding funds for the benefit of its clients.

> FN3. In a June 2, 2003 supplement to its prospectus, the Trust stated that, although the Fund was closed to new investors, "existing shareholders will be permitted to make additional investments ... in any account that held shares of the Fund as of [the date it was closed]." The supplement also states that shareholders of the Trust's other funds "will be permitted to exchange into the Fund to open a new account." The supplement informs shareholders that the "Fund reserves the right to reopen the Fund" at any time.

B. *The Rule 12b-1 Plan*

In 1999, the Board filed with the SEC a distribution plan (the "Plan") pursuant to Rule 12b-1. [FN4] Rule 12b-1 permits a mutual fund that meets certain conditions to use a percentage of its assets to reimburse "underwriters, dealers and sales personnel" in connection with the distribution and marketing of its shares. 17 C.F.R. § 270.12b-1. Rule 12b-1 also permits a mutual fund to use a portion of its assets to compensate broker-dealers for providing shareholder services such as maintaining shareholder accounts. *Id.;* *see also* NASD Rule 2830(b)(8) (the service fee is used to compensate broker-dealers for "personal service and/or maintenance of shareholder accounts"). A fund with a Rule 12b-1 fee thus permits shareholders to pay for sales-related and other expenses over time, rather than immediately on purchase.

> FN4. In accordance with SEC rules, the Plan must be re-approved annually by a vote of the Board. Additionally, so long as the Plan is in effect, the selection and nomination of the Trust's independent Trustees is committed to the sole discretion of the existing independent Trustees. The Board must also review on a quarterly basis a written report that itemizes the distribution-related expenses incurred on the Fund's behalf and specifies the purpose for each expense.

In order to comply with Rule 12b-1, a mutual fund must issue a written distribution plan detailing "all material aspects of the proposed financing and distribution" of its shares. *Id.* at § 270.12b-1(b). Such plan must be approved by a majority of the fund's board of directors, including a majority of the disinterested directors. *Id.* at § 270.12b-1(b), (c). The plan must also be approved by a majority of the fund's outstanding voting shares. *Id* . The plan may be implemented or continued "only if the directors who vote to approve such implementation or continuation conclude, in the exercise of reasonable business judgment and in light of their fiduciary duties under state law and under sections 36(a) and (b)(15 U.S.C. 80a-35 (a) and (b)) of the Act, that there is a reasonable likelihood that the plan will benefit the company and its shareholders." *Id.* at § 270.12b-1(e).

**\*2** Although Rule 12b-1 does not impose limits on the amount a fund may charge its shareholders pursuant to its distribution plan, the SEC has specified such caps in approving amendments to the NASD's Conduct Rules. *See* 15 U.S.C. § 80a-22(b)(1) (authorizing NASD, subject to SEC approval, to impose limits on mutual fund sales charges). Pursuant to NASD Rule 2830, Rule 12b-1 fees are limited to a maximum of 1% of a fund's average net assets per year, which may include a service fee of up to 0.25%. *See* NASD Rule 2830(b)(8). The NASD not only imposes annual limits but also cumulative limits on the level of "asset-based sales charges" that a mutual fund may charge its shareholders. The aggregate sales charges of a mutual fund such as the Fund, which has both an asset-based sales charge and a service fee, is 6.25% of the offering price of each share. *See* NASD Rule 2830(d)(2)(A).

It is undisputed that the Plan complies with the procedural requirements of Rule 12b-1. Among other things, it was approved by a majority of the Board, the independent Trustees, and the shareholders. The Plan provides, in relevant part:

> 1. The Fund shall *reimburse the Advisor, Distributor or others* for all expenses incurred by such parties in the *promotion and distribution of shares* of the Fund

Slip Copy  
2004 WL 1903075 (S.D.N.Y.)  
**(Cite as: 2004 WL 1903075 (S.D.N.Y.))**

Page 3

*... as well as* any distribution or *service fees paid to securities dealers* or others who have executed a servicing agreement with the Trust on behalf of the Fund.... The monies to be paid pursuant to any such servicing agreement shall be used to pay dealers or brokers for, among other things, furnishing personal services and maintaining shareholder accounts....

2. The *maximum aggregate amount which may be reimbursed* by the Fund to such parties pursuant to paragraph 1 *shall be 0.25% per annum of the average daily net assets* of the Fund.... [FN5]

> FN5. The Fund's 0.25% fee is one-quarter of the maximum allowable Rule 12b-1 fee under the NASD rules.

(Emphasis supplied.) The Plan thus expressly provides that the Rule 12b-1 expenses include promotion, distribution and service fees.

C. *The Investment Adviser*

BB & A is the investment adviser for the Fund; it determines which securities the Fund will buy or sell, and, together with the Trust's officers, administers the Fund's daily operations. Its investment advisory fee is not the subject of this lawsuit. Pursuant to the Plan, BB & A also charges the Fund distribution and service fees in accordance with Rule 12b-1 of up to 0.25% of the Fund's average daily net assets. This fee is used to reimburse BB & A for expenses incurred in connection with promotion and distribution of the Fund's shares, as well as for services such as maintaining shareholder accounts. The Fund's Rule 12b-1 expenses are principally used to compensate the Fund's three principal shareholders, who are broker-dealers holding shares for the benefit of their clients.

As noted, the Fund closed to new investors as of May 30, 2003, but its assets appreciated significantly in the year ending September 30, 2003. For the fiscal year ending March 31, 2003, the Fund paid BB & A Rule 12b-1 fees of $836,845 in connection with promotional and distribution expenses. For the six months from April 1 to September 30, 2003, BB & A was paid $837,633. [FN6]

> FN6. Integrated Fund Services, Inc. ("Integrated") has been retained by the Trust as the Fund's transfer agent and administrator. BB & A is not a party to the agreements governing Integrated's relationship with the Fund. For its transfer agent services, Integrated receives from the Fund a fee of $20 per shareholder account per year, subject to a monthly minimum of $2,000. For the Fiscal year ended March 31, 2003, Integrated received transfer agent fees from the Fund in the amount of $96,500. For the six months from April 1 to September 30, 2003, Integrated received a total of $81,490. For its services as the Fund's administrator, Integrated receives from the Fund a monthly fee based on its average daily net assets. For the fiscal year ended March 31, 2003, Integrated received administrative fees from the Fund in the amount of $353,487. For the six months from April 1 to September 30, 2003, Integrated received a total of $355,439.

D. *Procedural History*

**\*3** On December 9, 2003, plaintiff commenced this lawsuit as a derivative action against BB & A on behalf of the Fund. Plaintiff alleged that, because the Fund is now closed to new investors, charging any Rule 12-1 fee is unnecessary, unreasonable, and excessive, and that BB & A's receipt of such fees violates Section 36(b) of the ICA and Delaware law. On February 20, 2004, plaintiff filed its First Amended Complaint, which principally (1) added the Board of Trustees as defendants, and alleged Delaware law claims against them for breach of fiduciary duties and waste of corporate assets; and (2) alleged that the plaintiff made no demand on the Trustees to file suit because such demand would have been futile. On March 25, defendants moved to dismiss the First Amended Complaint.

At an April 1 pre-trial conference, the merits of the allegations in light of industry standards and relevant legal principles were discussed. The parties were

Slip Copy
2004 WL 1903075 (S.D.N.Y.)
**(Cite as: 2004 WL 1903075 (S.D.N.Y.))**

Page 4

ordered to meet and discuss industry practices regarding Rule 12b-1 fees and the Fund's fee structure. On April 9, the plaintiff announced that it would withdraw its pending complaint and file a new pleading. [FN7]

> FN7. The plaintiff had filed a parallel action against another mutual fund, which was also the subject of the April 1 conference. As a result of the parties' meeting on April 16, the plaintiff has voluntarily dismissed that action.

On April 30, plaintiff filed a Second Amended Complaint, which pleading is the subject of this motion. In this complaint, the plaintiff removes the Trustees as defendants and all claims pursuant to state law. The plaintiff now alleges that BB & A breached its fiduciary duties under Section 36(b) of the ICA by (1) continuing to charge the Fund for marketing and distribution expenses after the Fund closed to new investors, and (2) charging the Fund for marketing, distribution, service, administrative and "other expenses" in proportion to the Fund's assets rather than the services rendered. The plaintiff claims that it is "inconceivable" that the Fund's Rule 12b-1 expenses increased "so dramatically" at a time when the Fund was closed to new investors, and thus that the increase in Rule 12b-1 fees "lacked any reasonable relationship to actual expenses incurred for promotion and distribution, but rather, was substantially the result of appreciation of the assets in the Fund by about 43% year-to-date as of September 30, 2003." According to the plaintiff, "this was an apparent violation of the Plan that permitted [BB & A] to charge the Fund 12b-1 fees only for *reimbursement of actual expenses* for promotion and distribution capped at 0.25% of the Fund's average daily net asset." (Emphasis supplied.)

*Discussion*

When considering a motion to dismiss, a court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Securities Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir.2000); *Jaghory v. New York State Department of Education,* 131 F.3d 326, 329 (2d Cir.1997). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004); *Securities Investor Protection Corp., LLP,* 222 F.3d at 68. The complaint is governed by the pleading standards set forth in Rule 8(a), Fed.R.Civ.P. Under Rule 8(a), a pleading adequately states a claim when it contains "a short and plain statement of the claim showing that the pleader is entitled to relief," and thus gives "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) (citation omitted).

**\*4** An action alleging that Rule 12b-1 expenses resulted in excessive compensation to a mutual fund's investment adviser is properly brought under Section 36(b) of the ICA. [FN8] *Krinsk v. Fund Asset Management, Inc.,* 875 F.2d 404, 406 (2d Cir.1989). Under Section 36(b), a mutual fund's investment adviser has a fiduciary duty "with respect to the receipt of compensation for services." [FN9] 15 U.S.C. § 80a-35(b). The plaintiff bears the "burden of proving a breach of fiduciary duty." 15 U.S.C. § 80a-35(b)(1).

> FN8. Congress enacted Section 36(b) in large part because it recognized "that as mutual funds grew larger, it became less expensive for investment advisers to provide additional services. Congress wanted to ensure that investment advisers passed on to fund investors the savings that they realized from these economies of scale." *Migdal v. Rowe Price-Fleming Int'l, Inc.,* 248 F.3d 321, 326-27 (4th Cir.2001) (citing *Fogel v. Chestnutt,* 668 F.2d 100, 111 (2d Cir.1981)).

> FN9. Section 36 provides in relevant part that: the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company or by the security holders

Slip Copy  
2004 WL 1903075 (S.D.N.Y.)  
**(Cite as: 2004 WL 1903075 (S.D.N.Y.))**

Page 5

thereof, to such investment adviser or any affiliated person of such investment adviser. 15 U.S.C. § 80a-35(b).

Whether an investment adviser's fee violates the fiduciary duty imposed by Section 36(b) depends on "whether the fee schedule represents a charge within the range of what would have been negotiated at arm's-length in the light of all of the surrounding circumstances." *Gartenberg v. Merrill Lynch Asset Management, Inc.,* 694 F.2d 923, 928 (2d Cir.1982). To violate Section 36(b), "the adviser-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." [FN10] *Id. See also Meyer v. Oppenheimer Management Corp.,* 895 F.2d 861, 866 (2d Cir.1990); *Krinsk,* 875 F.2d at 409. To determine whether a fee charged by an investment advisor is excessive for purposes of Section 36(b), a court must examine the following factors:

> FN10. As the Senate explained at the time it passed Section 36(b):
> Because of the unique structure of this industry the relationship between mutual funds and their investment adviser is not the same as that usually existing between buyers and sellers or in conventional corporate relationships. Since a typical fund is organized by its investment adviser which provides it with almost all management services and because its shares are bought by investors who rely on that service, a mutual fund cannot, as a practical matter, sever its relationship with the adviser. Therefore, the forces of arm's-length bargaining do not work in the mutual fund industry in the same manner as they do in other sectors of the American economy.
> S. Rep. No. 184, 91st Cong., 1st Sess., reprinted in 1970 U.S.Code Cong. & Ad. News 4897, 4901.

(a) the nature and quality of services provided to fund shareholders; (b) the profitability of the fund to the adviser-manager; (c) fall-out benefits; (d) economies of scale; (e) comparative fee structures; and (f) the independence and conscientiousness of the trustees. *Krinsk,* 875 F.2d at 409. This last fact is of particular importance. "The expertise of the trustees, whether they are fully informed, and the extent of care and conscientiousness with which they perform their duties are among the most important factors to be examined in evaluating the reasonableness of compensation under section 36(b)." *Id.* at 412; *see also Gartenberg,* 694 F.2d at 933; S.Rep. No. 91-184, 91st Cong., 2d Sess., at 4897, 4902-03 (1970) (Section 36(b) "is not intended to authorize a court to substitute its business judgment for that of the mutual fund's board of directors in the area of management fees").

The plaintiff has met its burden of alleging that BB & A violated its fiduciary duty under Section 36(b) by receiving excessive promotion, distribution and servicing fees. [FN11] The plaintiff asserts in essence that BB & A's increased Rule 12b-1 fees were not "reasonably related" to the services it performed for the Fund. It is unnecessary for the plaintiff to set forth evidentiary details to support this allegation, or to support those elements of the *Gartenberg* test that may apply to promotion, distribution and service fees. *See Gartenberg,* 641 F.2d at 933.

> FN11. To the extent plaintiff is challenging the administrative, transfer agent, and "other" expenses incurred by the Fund, that claim must be dismissed. It is undisputed that Integrated supplied transfer agent and administrative services to the Fund, and that its compensation was governed by agreements with the Fund to which BB & A was not a party. Under Section 36(b), "damages may be recovered only against the recipient of the compensation." *Krinsk,* 875 F.2d at 413; *see also* 15 U.S.C. § 80a-35(b)(3). The plaintiff has not named Integrated in this action.

The defendants have pointed to several decisions in which courts dismissed a Section 36(b) claim for failure

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                         Page 6
2004 WL 1903075 (S.D.N.Y.)
**(Cite as: 2004 WL 1903075 (S.D.N.Y.))**

to state a claim. While recognizing that Rule 8's pleading standard is very liberal, these cases held that the complaints at issue were too conclusory to survive a motion to dismiss. Almost all of these cases preceded the Supreme Court's reminder in *Swierkiewicz* that a plaintiff need only give a plain statement of its claim and fair notice of the ground on which it rests. *Swierkiewicz,* 534 U.S. at 512. In any event, the Second Amended Complaint provides a stronger factual basis for its Section 36(b) claim than any of those cases on which the defendants rely.

 **\*5** The defendants argue vigorously that the plaintiff will not be able to prevail on his claim because he misunderstands the mechanics of Rule 12b-1 fees. The defendants note that SEC and NASD rules permit the assessment of Rule 12b-1 fees for all promotion and distribution related expenses incurred by a mutual fund, so long as such expenses do not exceed the maximum allowable under the fund's written distribution plan. Moreover, the fees charged for ongoing personal shareholder services may be assessed indefinitely and are not subject to a lifetime cap. If a mutual fund's Rule 12b-1 expenses for a one-year period do not match the limit specified in the distribution plan, the fund may use the difference to pay for unreimbursed Rule 12b-1 expenses from prior years. The SEC and NASD also permit a fund that is closed to new investors to continue charging an asset-based sales charge, provided the fund does not exceed the aggregate cap of 6.25%. *See* NASD Rule 2830(d)(2).

 The defendants maintain that, given the mechanics of Rule 12b-1 fees, such fees do not decrease simply because a fund closes to new investors. Thus, the fact that an investment adviser receives promotion, distribution and service fees that are the same or even higher during a period in which the fund is closed to new investors than when the fund was open will not necessarily establish a violation. The defendants heavily rely on the argument that, because the Plan caps its Rule 12b-1 fees at 0.25% of the Fund's average daily net assets--or one-fourth less than the maximum asset-based charge allowed by the SEC--the fees are *per se* reasonable. The defendants cite no case law for this proposition. Should the plaintiff succeed in showing that the fees were excessive when measured against the

services rendered, the defendant will not be able to defeat that showing by arguing that they could have charged even more.

 This is not to suggest that the plaintiff faces an easy task. To prevail in this action, the plaintiff will have to demonstrate that the fees were in fact excessive; that is, that the fees were so disproportionately large that they bore no reasonable relationship to the services actually provided and could not have been the product of an arm's length negotiation. Whether the plaintiff can meet this burden will be decided at a later stage of this action. The plaintiff's failure to do so in his pleading is not a ground for dismissal.

 *Conclusion*

 For the reasons stated above, the motion to dismiss is denied in part. The claims against the defendants with respect to administrative, transfer agent, and "other" fees are dismissed. The motion to dismiss the claims regarding marketing, distribution, and service fees is denied.

 SO ORDERED:

 2004 WL 1903075 (S.D.N.Y.)

 END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.