UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHELLE YAMEEN,

        Plaintiff,

v.

EATON VANCE DISTRIBUTORS, INC.,

        Defendant, and

EATON VANCE TAX-MANAGED
GROWTH FUND 1.1.,

        Nominal Defendant.

Civil Action No. 03-12437-RCL

**DEFENDANT'S PROPOSED[1] RESPONSE TO PLAINTIFF'S SUBMISSION OF SUPPLEMENTAL AUTHORITY IN OPPOSITION TO MOTION OF EATON VANCE DISTRIBUTORS, INC. TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

In her Submission of Supplemental Authority, plaintiff Michelle Yameen ("Plaintiff") contends that two "virtually identical"[2] opinions by the same judge, Zucker v. AIM Advisors, Inc., S.D. Texas No. H-03-5653 ("AIM") and Lieber v. INVESCO Funds Group, Inc., S.D. Texas No. H-03-5744 ("INVESCO"), support Plaintiff's contention that Rule 12b-1 fees that comply with the comprehensive regulatory scheme under Section 22(b) of the Investment Company Act of 1940 and the NASD rule issued under that section, Rule 2830, can nonetheless be deemed excessive under Section 36(b). In fact, AIM and INVESCO do not support Plaintiff's position in this case because they:

---

[1] As per the Court's September 12, 2003 Standing Order Regarding Electronic Case Filing, if leave to file the attached Response is granted, Defendant will promptly electronically re-file this document, indicating same.

[2] This is the phrase used by the court in describing its own opinions.

BOS-723848 v1

- are inconsistent with Plaintiff's "core" contention that payment of 12b-1 distribution fees by a closed fund is per se illegal;

- address the reasonableness of fees based on significantly different factual allegations (i.e., AIM and INVESCO were not cases where distribution payments were made to reimburse actual, past distribution expenses as specifically authorized by the SEC and NASD);

- overlook key authority demonstrating that the NASD (subject to SEC oversight) has exclusive authority to balance prohibition of "excessive" sales charges with the economic health of the securities industry.

We address each point in turn.

1.      While, as Plaintiff apparently recognizes, AIM and INVESCO do not address most of the legal arguments raised by Defendant Eaton Vance Distributors, Inc., these cases refute what Plaintiff calls the "core" [3] claim in this case: that paying Rule 12b-1 distribution fees after a fund is closed to new investors is per se illegal. The AIM and INVESCO opinions note that "under National Association of Securities Dealers ("NASD") Rule 2830, as interpreted by NASD Notice to Members 93-12, … an investment adviser (sic) may continue collecting fees pursuant to Rule 12b-1 of the Securities and Exchange Commission … *even after a mutual fund closes to new investors*." AIM at 3 (emphasis added); see also INVESCO at 3 (same).[4]

---

[3] Plaintiff's Memorandum of Law in Opposition to Motion of Eaton Vance Distributors, Inc. to Dismiss or, in the Alternative, for Summary Judgment at 5 ("The core of the claim in this case is that, in light of the fact that the trustees determined as of March 1, 2001, that it was no longer in the best interests of the Fund and its shareholders for the Fund to sell additional shares of the Fund to the public, the trustees could not … have concluded '…that there is a reasonable likelihood that [the continuation of] the plan will benefit the [Fund] and its shareholders.' Rule 12b-1(e). Furthermore, the continuation of the Plan could not have been '…primarily intended to result in the sale of shares issued by [the Fund].' Rule 12b-1(a)(2).").

[4] AIM and INVESCO proceeded to hold that the respective plaintiffs in those cases could recover should only if they "succeed in showing that the 12b-1 fees paid by the Funds

2

2. The court in <u>AIM</u> and <u>INVESCO</u> had before it a different claim that is nowhere asserted in the complaint in this case. The plaintiffs in <u>AIM</u> and <u>INVESCO</u> argued that, while the payment of 12b-1 fees was ostensibly for ongoing distribution efforts, no such efforts were in fact being made.[5]

The instant case, by contrast, involves Plaintiff's challenge to the payment of Rule 12b-1 fees to reimburse Eaton Vance Distributors, Inc. for actual uncovered distribution charges incurred in connection with past sales of the fund's Class B and Class C shares. As demonstrated in Defendant's memoranda, ***in this context***, 12b-1 fees that comply with NASD Rule 2830 ***are necessarily reasonable*** because the SEC and NASD have specifically authorized payment of contractually due, actual past distribution expenses in amounts consistent with Rule 2830. Indeed, given that Plaintiff *concedes* that the distribution expenses were actually incurred in this case,[6] there is no basis for finding the

---

were excessive in comparison to services rendered by the Advisors." <u>AIM</u> at 11; <u>INVESCO</u> at 11-12.

[5] <u>See, e.g.,</u> AIM Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss at 7 (asserting that "defendants continue to list the Closed Funds in more than sixty (60) fund 'supermarkets' maintained by brokers such as E*trade, Charles Schwab and others…. Typically, a fund uses a percentage of net assets allocated under its Rule 12b-1 plan in order to pay for an ongoing listing in a fund supermarket to gain exposure to the fund supermarket's broad customer base and thereby attract new investors into the fund. Paying distribution fees to these fund supermarkets to list the Closed Funds, however, is not a reasonable use of the Closed Fund's assets given that the Closed Funds are closed to new investors and any future sales are strictly limited to existing investors in these funds.").

[6] <u>See, e.g.,</u> Plaintiff's Response to Statement of Material Facts Not in Dispute, Responses 8-12. Plaintiff does not dispute that distribution expenses were actually incurred in this case, but contends that, as a matter of law, the Fund was precluded under Plaintiff's view of Rule 12b-1 (which the SEC and NASD have clearly rejected) from reimbursing these expenses once the Fund closed. Plaintiff's Memorandum of Law in Opposition to Motion of Eaton Vance Distributors, Inc. to Dismiss or, in the Alternative, for Summary Judgment at 17-20.

3

essential prerequisite for a Section 36(b) violation: that the defendant has charged a fee that is so large that it bears "no reasonable relationship to the services rendered." Gartenberg v. Merrill Lynch Asset Mgt., Inc., 694 F.2d 923, 928 (2d Cir. 1982). Dismissal of the complaint in this case is warranted on this basis alone.

3.      Although the Court need not reach the issue to grant Defendant's motion to dismiss, to the extent AIM and INVESCO suggests that *any* bona fide distribution fees compliant with Rule 2830 can be excessive under Section 36(b), the court's reasoning appears to be based on a misinterpretation of the history of Rule 12b-1 and Rule 2830. Rule 12b-1 was adopted in 1980 and was silent on what fees would be reasonable. NASD Rule 2830 was adopted in 1992 to implement the congressional mandate in Section 22(b) of the Investment Company Act of 1940, which gave the NASD *exclusive authority* (subject to SEC oversight) to strike a balance between prohibiting "excessive" sales charges and "allow[ing] for reasonable compensation for sales personnel, broker-dealers, and underwriters." See 15 U.S.C. § 80a-22(b)(1). The SEC has expressly approved Rule 2830, including the caps on sales charges therein, and has found that sales charges consistent with these caps are reasonable.[7] The Rule thus represents an administrative determination balancing the protection of investors with the economic health of the securities industry. This balance (and the regulators' exclusive authority) could not be maintained if courts applied Section 36(b) to intrude with their own

---

[7] See Inv. Co., Release No. 34-30897, 57 Fed. Reg. 30985, 30989 (July 7, 1992) ("The Commission is of the opinion that the proposed rule change carries out the NASD's congressional mandate to prevent excessive sales charges on mutual fund shares. The Commission believes that the proposed rule change appropriately balances the need to ensure that the NASD's rules allow broker-dealers, sales personnel, and underwriters to receive reasonable compensation, against the need to ensure that investors are charged reasonable sales loads.")

4

judgments concerning what constitutes "excessive" fees.  Cf. Pan American World Airways, Inc. v. United States, 371 U.S. 296 (1973) (holding that antitrust laws were impliedly preempted by the Federal Aviation Act because: "[i]t would be strange, indeed, if a division of territories or an allocation of routes which met the requirements of the 'public interest' as defined in Section 2 were held to be antitrust violations . . . If the courts were to intrude independently with their construction of the antitrust laws, two regimes might collide." Id. at 309, 310).  It is no answer to suggest that it might be possible for defendants to comply both with Section 36(b) and with Rule 2830.  The crucial point is that allowing a Section 36(b) "excessive fee" claim for payments that the NASD has determined to be "non-excessive" pursuant to its authority under Section 22(b) would be inconsistent with the regulatory scheme.  Cf. Gordon v. New York Stock Exchange, 422 U.S. 659, 688 (1975) (finding private antitrust suits impliedly preempted based on the fixed commission rates that prevailed in 1970; allowing a private antitrust remedy "would conflict with the operation of the regulatory scheme which specifically authorized the SEC to oversee the fixing of commission rates"). [8]

---

[8] AIM and INVESCO suggest that Rule 2830 is not designed to preempt Section 36(b) because the SEC stated in 1988 that "Rule 12b-1 was not intended to provide a 'safe harbor' from section 36 liability."  AIM at 10; INVESCO at 10-11 citing Payment of Asset-Based Sales Loads by Registered Open-End Management Investment Companies, Investment Company Act Release No. 16431, 53 Fed. Reg. 23258, 1988 WL 1000015, at *44 (June 13, 1988).  The SEC's "no safe harbor" statement in 1988 has no apparent bearing on whether the NASD's determination of what constitutes "excessive" and "reasonable" 12b-1 fees under Rule 2830 should displace an overlapping and potentially inconsistent determination by courts applying Section 36(b).  If anything, the statement suggests why, *four years later*, the SEC approved NASD regulation of the level of 12b-1 fees under Rule 2830, see Inv. Co., Release No. 34-30897, 57 Fed. Reg. 30985, 30989-90 (July 7, 1992): to ensure that 12b-1 fees would not become excessive (when Rule 12b-1 was adopted, there was no limitation on the amount of Rule 12b-1 fees).

5

## **CONCLUSION**

For these reasons, and for the reasons set forth in Defendant's prior submissions, Plaintiff's complaint should be dismissed with prejudice, or summary judgment should be granted in Defendant's favor.

                Respectfully submitted,

                /s/ Gregory R. Youman
                Wm. Shaw McDermott (BBO #330860)
                Aimée E. Bierman (BBO #640385)
                Gregory R. Youman (BBO #648721)
                KIRKPATRICK & LOCKHART
                NICHOLSON GRAHAM LLP
                75 State Street
                Boston, MA  02109-1808
                (617) 261-3100

                Jeffrey B. Maletta, Esq.
                Nicholas G. Terris, Esq.
                Kirkpatrick & Lockhart LLP
                1800 Massachusetts Avenue, N.W.
                Washington, D.C.  20036
                (202) 778-9000

                *Attorneys for Defendant*
                *Eaton Vance Distributors, Inc.*

Date:  February 5, 2005

**CERTIFICATE OF SERVICE**

      I, Gregory R. Youman, hereby certify that on February 5, 2005, a true and correct copy of the foregoing Defendant's Proposed Response to Plaintiff's Submission of Supplemental Authority in Opposition to Motion of Eaton Vance Distributors, Inc. to Dismiss or, in the Alternative, for Summary Judgment was served electronically via ECF as follows:

      Edward F. Haber, Esq.
      SHAPIRO HABER & URMY LLP
      Exchange Place
      53 State Street
      37th Floor
      Boston, MA  02109

      /s/ Gregory R. Youman
      Gregory R. Youman