# EXHIBIT A

## 2830. Investment Company Securities

### (a) Application

This Rule shall apply exclusively to the activities of members in connection with the securities of companies registered under the Investment Company Act of 1940 ("the 1940 Act"); provided however, that Rule 2820 shall apply, in lieu of this Rule, to members' activities in connection with "variable contracts" as defined therein.

### (b) Definitions

(1) The terms "affiliated member," "compensation," "cash compensation," "non-cash compensation" and "offeror" as used in paragraph (l) of this Rule shall have the following meanings:

(A) "Affiliated Member" shall mean a member which, directly or indirectly, controls, is controlled by, or is under common control with a non-member company.

(B) "Compensation" shall mean cash compensation and non-cash compensation.

(C) "Cash compensation" shall mean any discount, concession, fee, service fee, commission, asset-based sales charge, loan, override or cash employee benefit received in connection with the sale and distribution of investment company securities.

(D) "Non-cash compensation" shall mean any form of compensation received in connection with the sale and distribution of investment company securities that is not cash compensation, including but not limited to merchandise, gifts and prizes, travel expenses, meals and lodging.

(E) "Offeror" shall mean an investment company, an adviser to an investment company, a fund administrator, an underwriter and any affiliated person (as defined in Section 2(a)(3) of the 1940 Act) of such entities.

(2) "Brokerage commissions," as used in paragraph (k), shall not be limited to commissions on agency transactions but shall include underwriting discounts or concessions and fees paid to members in connection with tender offers.

(3) "Covered account," as used in paragraph (k), shall mean (A) any other investment company or other account managed by the investment adviser of such investment company, or (B) any other account from which brokerage commissions are received or expected as a result of the request or direction of any principal underwriter of such investment company or of any affiliated person (as defined in the 1940 Act) of such investment company or of such underwriter, or of any affiliated person of an affiliated person of such investment company.

(4) "Person" shall mean "person" as defined in the 1940 Act.

(5) "Prime rate," as used in paragraph (d), shall mean the most preferential interest rate on corporate loans at large U.S. money center commercial banks.

(6) "Public offering price" shall mean a public offering price as set forth in the prospectus of the issuing company.

(7) "Rights of accumulation" as used in paragraph (d), shall mean a scale of reducing sales charges in which the sales charge applicable to the securities being purchased is based upon the aggregate quantity of securities previously purchased or acquired and then owned plus the securities being purchased.

The quantity of securities owned shall be based upon:

(A) The current value of such securities (measured by either net asset value or maximum offering price); or

(B) Total purchases of such securities at actual offering prices; or

(C) The higher of the current value or the total purchases of such securities.

The quantity of securities owned may also include redeemable securities of other registered investment companies having the same principal underwriter.

(8) "Sales charge" and "sales charges," as used in paragraph (d), shall mean all charges or fees that are paid to finance sales or sales promotion expenses, including front-end, deferred and asset-based sales charges, excluding charges and fees for ministerial, recordkeeping or administrative activities and investment management fees. For purposes of this Rule, members may rely on the sales-related fees and charges disclosed in the prospectus of an investment company.

(A) An "asset-based sales charge" is a sales charge that is deducted from the net assets of an investment company and does not include a service fee.

(B) A "deferred sales charge" any amount properly chargeable to sales or promotional expenses that is paid by a shareholder after purchase but before or upon redemption.

(C) A "front-end sales charge" is a sales charge that is included in the public offering price of the shares of an investment company.

(9) "Service fees," as used in paragraph (d), shall mean payments by an investment company for personal service and/or the maintenance of shareholder accounts.

(10) The terms "underwriter," "principal underwriter," "redeemable security," "periodic payment plan," "open-end management investment company," and unit investment trust," shall have the same definitions used in the 1940 Act.

(11) A "fund of funds" is an investment company that acquires securities issued by any other investment company registered under the 1940 Act in excess of the amounts permitted under paragraph (A) of Section 12(d)(1) of the 1940 Act. An "acquiring company" in a fund of funds is the investment company that purchases or otherwise acquires the securities of another investment company, and an "acquired company" is the investment company whose securities are acquired.

(12) "Investment companies in a single complex" are any two or more companies that hold themselves out to investors as related companies for purposes of investment and investor services.

### (c) Conditions for Discounts to Dealers

No member who is an underwriter of the securities of an investment company shall sell any such security to any dealer or broker at any price other than a public offering price unless such sale is in conformance with Rule 2420 and, if the security is issued by an open-end management company or by a unit investment trust which invests primarily in securities issued by other investment companies, unless a sales agreement is in effect between the parties as of the date of the transaction, which agreement shall set forth the concessions to be received by the dealer or broker.

### (d) Sales Charge

No member shall offer or sell the shares of any open-end investment company, any closed-end investment company that makes periodic repurchase offers pursuant to Rule 23c-3(b) under the 1940 Act and offers its shares on a continuous basis pursuant to Rule 415(a)(1)(xi) under the Securities Act of 1933, or any "single payment" investment plan issued by a unit investment trust (collectively "investment companies") registered under the 1940 Act if the sales charges described in the prospectus are excessive. Aggregate sales charges shall be deemed excessive if they do not conform to the following provisions:

(1) Investment Companies Without an Asset-Based Sales Charge

(A) Aggregate Front-end and deferred sales charges described in the prospectus which may be imposed by an investment company without an asset-based sales charge shall not exceed 8.5% of the offering price.

(B)(i) Rights of accumulation (cumulative quantity discounts) may be made available to any person in accordance with one of the alternative quantity discount schedules provided in subparagraph (D)(i) below, as in effect on the date the right is exercised.

(ii) If rights of accumulation are not made available on terms at least as favorable as those specified in subparagraph (C)(i) the maximum aggregate sales charge shall not exceed 8.0% of offering price.

(C)(i) Quantity discounts, if offered, shall be made available on single purchases by any person in accordance with one of the following two alternatives:

a. A maximum aggregate sales charge of 7.75% on purchases of $10,000 or more and a maximum aggregate sales charge of 6.25% on purchases of $25,000 or more; or

b. A maximum aggregate sales charge of 7.50% on purchases of $15,000 or more and a maximum aggregate sales charge of 6.25% on purchases of $25,000 or more.

(ii) If quantity discounts are not made available on terms at least as favorable as those specified in subparagraph (C)(i) the maximum aggregate sales charge shall not exceed:

a. 7.75% of offering price if the provisions of subparagraph (B) are met.

b. 7.25% of offering price if the provisions of subparagraph (B) are not met.

(D) If an investment company without an asset-based sales charge pays a service fee, the maximum aggregate sales charge shall not exceed 7.25% of the offering price.

(2) Investment Companies with an Asset-Based Sales Charge

(A) Except as provided in subparagraphs (C) and (D), the aggregate asset-based, front-end and deferred sales charges described in the prospectus which may be imposed by an investment company with an asset-based sales charge, if the investment company has adopted a plan under which service fees are paid, shall not exceed 6.25% of total new gross sales (excluding sales from the reinvestment of distributions and exchanges of shares between investment companies in a single complex, between classes of an investment company with multiple classes of shares or between series of a series investment company) plus interest charges on such amount equal to the prime rate plus one percent per annum. The maximum front-end or deferred sales charge resulting from any transaction shall be 6.25% of the amount invested.

(B) Except as provided in subparagraphs (C) and (D), if an investment company with an asset-based

sales charge does not pay a service fee, the aggregate asset-based, front-end and deferred sales charges described in the prospectus shall not exceed 7.25% of total new gross sales (excluding sales from the reinvestment of distributions and exchanges of shares between investment companies in a single complex, between classes of an investment company with multiple classes of shares or between series of a series investment company) plus interest charges on such amount equal to the prime rate plus one percent per annum. The maximum front-end or deferred sales charge resulting from any transaction shall be 7.25% of the amount invested.

(C) The maximum aggregate sales charge on total new gross sales set forth in subparagraphs (A) and (B) may be increased by an amount calculated by applying the appropriate percentages of 6.25% or 7.25% to total new gross sales which occurred after an investment company first adopted an asset-based sales charge until July 7, 1993 plus interest charges on such amount equal to the prime rate plus one percent per annum less any front-end, asset-based or deferred sales charges on such sales or net assets resulting from such sales.

(D) The maximum aggregate sales charges of an investment company in a single complex, a class of shares issued by an investment company with multiple classes of shares or a separate series of a series investment company, may be increased to include sales of exchanged shares provided that such increase is deducted from the maximum aggregate sales charges of the investment company, class or series which redeemed the shares for the purpose of such exchanges.

(E) No member shall offer or sell the shares of an investment company with an asset-based sales charge if:

(i) The amount of the asset-based sales charge exceeds .75 of 1% per annum of the average annual net assets of the investment company; or

(ii) Any deferred sales charges deducted from the proceeds of a redemption after the maximum cap described in subparagraphs (A), (B), (C) and (D) hereof, has been attained are not credited to the investment company.

(3) Fund of Funds

(A) If neither an acquiring company nor an acquired company in a fund of funds structure has an asset-based sales charge, the maximum aggregate front-end and deferred sales charges that may be imposed by the acquiring company, the acquired company and those companies in combination, shall not exceed the rates provided in paragraph (d)(1).

(B) Any acquiring company or acquired company in a fund of funds structure that has an asset-based sales charge shall individually comply with the requirements of paragraph (d)(2), provided:

(i) If the acquiring and acquired companies are in a single complex and the acquired fund has an asset-based sales charge, sales made to the acquiring fund shall be excluded from total gross new sales for purposes of acquired fund's calculations under subparagraphs (d)(2)(A) through (d)(2)(D); and

(ii) If both the acquiring and acquired companies have an asset-based sales charge:

a. the maximum aggregate asset-based sales charge imposed by the acquiring company, the acquired company and those companies in combination, shall not exceed the rate provided in subparagraph (d)(2)(E)(i); and

b. the maximum aggregate front-end or deferred sales charges shall not exceed 7.25% of the amount invested, or 6.25% if either company pays a service fee.

(C) The rates described in subparagraphs (d)(4) and (d)(5) shall apply to the acquiring company, the acquired company and those companies in combination. The limitations of subparagraph (d)(6) shall apply to the acquiring company and the acquired company individually.

(4) No member or person associated with a member shall, either orally or in writing, describe an investment company as being "no load" or as having "no sales charge" if the investment company has a front-end or deferred sales charge or whose total charges against net assets to provide for sales related expenses and/or service fees exceed .25 of 1% of average net assets per annum.

(5) No member or person associated with a member shall offer or sell the securities of an investment company if the service fees paid by the investment company, as disclosed in the prospectus, exceed .25 of 1% of its average annual net assets or if a service fee paid by the investment company, as disclosed in the prospectus, to any person who sells its shares exceeds .25 of 1% of the average annual net asset value of such shares.

(6) No member or person associated with a member shall offer or sell the securities of an investment company if:

(A) The investment company has a deferred sales charge paid upon redemption that declines over the period of a shareholder's investment ("contingent deferred sales load"), unless the contingent deferred sales load is calculated as if the shares or amounts representing shares not subject to the load are redeemed first, and other shares or amounts representing shares are then redeemed in the order purchased, provided that another order of redemption may be used if such order would result in the redeeming shareholder paying a lower contingent deferred sales load; or

(B) The investment company has a front-end or deferred sales charge imposed on shares, or amounts representing shares, that are purchased through the reinvestment of dividends, unless the registration statement registering the investment company's securities under the Securities Act of 1933 became effective prior to April 1, 2000.

### (e) Selling Dividends

No member shall, in recommending the purchase of investment company securities, state or imply that the purchase of such securities shortly before an ex-dividend date is advantageous to the purchaser, unless there are specific, clearly described tax or other advantages to the purchaser, and no member shall represent that distributions of long-term capital gains by an investment company are or should be viewed as part of the income yield from an investment in such company's securities.

### (f) Withhold Orders

No member shall withhold placing customers' orders for any investment company security so as to profit himself as a result of such withholding.

### (g) Purchase for Existing Orders

No member shall purchase from an underwriter the securities of any open-end investment company and no member who is an underwriter of such securities shall purchase such securities from the issuer, except (1) for the purpose of covering purchase orders previously received or (2) for its own investment. Nothing herein shall be deemed to prohibit any member from purchasing securities of any investment company specifically designed for short-term investment (e.g., money market fund).

### (h) Refund of Sales Charge

If any security issued by an open-end management investment company is repurchased by the issuer, or

by the underwriter for the account of the issuer, or is tendered for redemption within seven business days after the date of the transaction, (1) the dealer or broker shall forthwith refund to the underwriter the full concession allowed to the dealer or broker on the original sale and (2) the underwriter shall forthwith pay to the issuer the underwriter's share of the sales charge on the original sale by the underwriter and shall also pay to the issuer the refund which he received under subparagraph (1) when he receives it. The dealer or broker shall be notified by the underwriter of such repurchase or redemption within ten days of the date on which the certificate or written request for redemption is delivered to the underwriter or issuer. If the original sale was made directly to the investor by the principal underwriter, the entire sales charge shall be paid to the issuer by the principal underwriter.

**(i) Purchases as Principal**

No member who is a party to a sales agreement referred to in paragraph (c) shall, as principal, purchase any security issued by an open-end management investment company or unit investment trust from a record holder at a price lower than the bid price next quoted by or for the issuer.

**(j) Repurchase from Dealer**

No member who is a principal underwriter of a security issued by an open-end investment company or a closed-end investment company that makes periodic repurchase offers pursuant to Rule 23c-3(b) under the 1940 Act and offers its shares on a continuous basis pursuant to Rule 415(a)(1)(xi) under the Securities Act of 1933 shall repurchase such security, either as principal or as agent for the issuer, from a dealer acting as principal who is not a party to a sales agreement with a principal underwriter, nor from any investor, unless such dealer or investor is the record owner of the security so tendered for repurchase. No member who is a principal underwriter shall participate in the offering or in the sale of any such security if the issuer voluntarily redeems or repurchases its securities from a dealer acting as principal who is not a party to such a sales agreement nor from any investor, unless such dealer or investor is the record owner of the security so tendered for repurchase. Nothing in this paragraph shall relate to the compulsory redemption of any security upon presentation to the issuer pursuant to the terms of the security.

Nothing in this Rule shall prevent any member, whether or not a party to a sales agreement, from selling any such security for the account of a record owner to the underwriter or issuer at the bid price next quoted by or for the issuer and charging the investor to a reasonable charge for handling the transaction, provided that such member discloses to such record owner that direct redemption of the security can be accomplished by the record owner without incurring such charges.

**(k) Execution of Investment Company Portfolio Transactions**

(1) No member shall, directly or indirectly, favor or disfavor the sale or distribution of shares of any particular investment company or group of investment companies on the basis of brokerage commissions received or expected by such member from any source, including such investment company, or any covered account.

(2) No member shall, directly or indirectly, demand or require brokerage commissions or solicit a promise of such commissions from any source as a condition to the sale or distribution of shares of an investment company.

(3) No member shall, directly or indirectly, offer or promise to another member, brokerage commissions from any source as a condition to the sale or distribution of shares of an investment company and no member shall request or arrange for the direction to any member of a specific amount or percentage of brokerage commissions conditioned upon that member's sales or promise of sales of shares of an investment company.

(4) No member shall circulate any information regarding the amount or level of brokerage commissions received by the member from any investment company or covered account to other than management personnel who are required, in the overall management of the member's business, to have access to such information.

(5) No member shall, with respect to such member's activities as underwriter of investment company shares, suggest, encourage, or sponsor any incentive campaign or special sales effort of another member with respect to the shares of any investment company which incentive or sales effort is, to the knowledge or understanding of such underwriter-member, to be based upon, or financed by, brokerage commissions directed or arranged by the underwriter-member.

(6) No member shall, with respect to such member's retail sales or distribution of investment company shares:

(A) provide to salesmen, branch managers or other sales personnel any incentive or additional compensation for the sale of shares of specific investment companies based on the amount of brokerage commissions received or expected from any source, including such investment companies or any covered account. Included in this prohibition are bonuses, preferred compensation lists, sales incentive campaign or contests, or any other method of compensation which provides an incentive to sales personnel to favor or disfavor any investment company or group of investment companies based on brokerage commissions;

(B) recommend specific investment companies to sales personnel, or establish "recommended," "selected," or "preferred" lists of investment companies, regardless of the existence of any special compensation or incentives to favor or disfavor the shares of such company or companies in sales efforts, if such companies are recommended or selected on the basis of brokerage commissions received or expected from any source;

(C) grant to salesmen, branch managers or other sales personnel any participation in brokerage commissions received by such member from portfolio transactions of an investment company whose shares are sold by such member, or from any covered account, if such commissions are directed by, or identified with, such investment company or any covered account; or

(D) use sales of shares of any investment company as a factor in negotiating the price of, or the amount of brokerage commissions to be paid on, a portfolio transaction of an investment company or of any covered account, whether such transaction is executed in the over-the-counter market or elsewhere.

(7) Provided that the member does not violate any of the specific provisions of this paragraph (k), nothing herein shall be deemed to prohibit:

(A) the execution of portfolio transactions of any investment company or covered account by members who also sell shares of the investment company;

(B) a member from selling shares of, or acting as underwriter for, an investment company which follows a policy, disclosed in its prospectus, of considering sales of shares of the investment company as a factor in the selection of broker/dealers to execute portfolio transactions, subject to the requirements of best execution;

(C) a member from compensating its salesmen and managers based on total sales of investment company shares attributable to such salesmen or managers, whether by use of overrides, accounting credits, or other compensation methods, provided that such compensation is not designed to favor or disfavor sales of shares of particular investment companies on a basis prohibited by this paragraph (k).

**(l) Member Compensation**

In connection with the sale and distribution of investment company securities:

(1) Except as described below, no associated person of a member shall accept any compensation from anyone other than the member with which the person is associated. This requirement will not prohibit arrangements where a non-member company pays compensation directly to associated persons of the member, provided that:

(A) the arrangement is agreed to by the member;

(B) the member relies on an appropriate rule, regulation, interpretive release, interpretive letter, or "no-action" letter issued by the Commission or its staff that applies to the specific fact situation of the arrangement;

(C) the receipt by associated persons of such compensation is treated as compensation received by the member for purposes of the Rules of the Association; and

(D) the record keeping requirement in paragraph (l)(3) is satisfied.

(2) No member or person associated with a member shall accept any compensation from an offeror which is in the form of securities of any kind.

(3) Except for items described in subparagraphs (l)(5)(A) and (B), a member shall maintain records of all compensation received by the member or its associated persons from offerors. The records shall include the names of the offerors, the names of the associated persons, the amount of cash, the nature and, if known, the value of non-cash compensation received.

(4) No member shall accept any cash compensation from an offeror unless such compensation is described in a current prospectus of the investment company. When special cash compensation arrangements are made available by an offeror to a member, which arrangements are not made available on the same terms to all members who distribute the investment company securities of the offeror, a member shall not enter into such arrangements unless the name of the member and the details of the arrangements are disclosed in the prospectus. Prospectus disclosure requirements shall not apply to cash compensation arrangements between:

(A) principal underwriters of the same security; and

(B) the principal underwriter of a security and the sponsor of a unit investment trust which utilizes such security as its underlying investment.

(5) No member or person associated with a member shall directly or indirectly accept or make payments or offers of payments of any non-cash compensation, except as provided in this provision. Notwithstanding the provisions of subparagraph (l)(1), the following non-cash compensation arrangements are permitted:

(A) Gifts that do not exceed an annual amount per person fixed periodically by the Association [1] and are not preconditioned on achievement of a sales target.

(B) An occasional meal, a ticket to a sporting event or the theater, or comparable entertainment which is neither so frequent nor so extensive as to raise any question of propriety and is not preconditioned on achievement of a sales target.

(C) Payment or reimbursement by offerors in connection with meetings held by an offeror or by a member for the purpose of training or education of associated persons of a member, provided that:

(i) the record keeping requirement in paragraph (l)(3) is satisfied;

(ii) associated persons obtain the member's prior approval to attend the meeting and attendance by a member's associated persons is not preconditioned by the member on the achievement of a sales target or any other incentives pursuant to a non-cash compensation arrangement permitted by paragraph (l)(5)(D);

(iii) the location is appropriate to the purpose of the meeting, which shall mean an office of the offeror or the member, or a facility located in the vicinity of such office, or a regional location with respect to regional meetings;

(iv) the payment or reimbursement is not applied to the expenses of guests of the associated person; and

(v) the payment or reimbursement by the offeror is not preconditioned by the offeror on the achievement of a sales target or any other non-cash compensation arrangement permitted by paragraph (l)(5)(D).

(D) Non-cash compensation arrangements between a member and its associated persons or a non-member company and its sales personnel who are associated persons of an affiliated member, provided that:

(i) the member's or non-member's non-cash compensation arrangement, if it includes investment company securities, is based on the total production of associated persons with respect to all investment company securities distributed by the member;

(ii) the non-cash compensation arrangement requires that the credit received for each investment company security is equally weighted;

(iii) no unaffiliated non-member company or other unaffiliated member directly or indirectly participates in the member's or non-member's organization of a permissible non-cash compensation arrangement; and

(iv) the record keeping requirement in paragraph (l)(3) is satisfied.

(E) Contributions by a non-member company or other member to a non-cash compensation arrangement between a member and its associated persons, provided that the arrangement meets the criteria in paragraph (l)(5)(D).

**(m) Prompt Payment for Investment Company Shares**

(1) Members (including underwriters) that engage in direct retail transactions for investment company shares shall transmit payments received from customers for such shares, which such members have sold to customers, to payees (i.e., underwriters, investment companies or their designated agents) by (A) the end of the third business day following a receipt of a customer's order to purchase such shares or by (B) the end of one business day following receipt of a customer's payment for such shares, whichever is the later date.

(2) Members that are underwriters and that engage in wholesale transactions for investment company shares shall transmit payments for investment company shares, which such members have received from other members, to investment company issuers or their designated agents by the end of two business days following receipt of such payments.

**(n) Disclosure of Deferred Sales Charges**

In addition to the requirements for disclosure on written confirmations of transactions contained in Rule 2230, if the transaction involves the purchase of shares of an investment company that imposes a deferred sales charge on redemption, such written confirmation shall also include the following legend: "On selling your shares, you may pay a sales charge. For the charge and other fees, see the prospectus." The legend shall appear on the front of a confirmation and in, at least, 8-point type.

[Amended eff. Feb. 8, 1971; July 15, 1973; May 1, 1976; Mar. 4, 1981; Oct. 31, 1988; Apr. 11, 1991; July 7, 1993; amended by SR-NASD-93-42 eff. Feb. 24, 1994; amended by SR-NASD-94-56 eff. June 7, 1995; amended by SR-NASD-97-35 eff. Jan. 1, 1999; amended by SR-NASD-98-14 eff. April 1, 2000; amended by SR-NASD-99-74 eff. June 20, 2000.]

Selected Notices to Members: 84-40, 88-96, 89-51, 91-40, 91-68, 92-41, 93-52, 93-82, 94-13, 94-14, 94-67, 95-36, 95-56, 99-103, 00-53.

[1] The current annual amount fixed by the Association is $100.