# EXHIBIT D

*Procedures*

The implications of the Anti-Reciprocal Rule and any interpretation or amendment are of great significance to investment companies, their investment advisers and principal underwriters, to the broker-dealers and salesmen who distribute shares of investment companies and to the investing public. Accordingly, all interested persons are invited to provide written submissions of their views to the Commission which, if the persons submitting them wish to appear and make oral statements, shall so state. Oral statements will be invited from among those who have made submissions and requested to be heard.

Interested persons are requested to supply 20 copies of their submissions to George A. Fitzsimmons, Secretary, Securities and Exchange Commission, Washington, D.C. 20549, no later than August 23, 1974. All such material should be designated "NASD Anti-Reciprocal Rule and Investment Company Brokerage Practices," File No. 4-172. All such submissions will be available for public inspection in the Commission's Public Reference Room, Room 6101, 1100 L Street, N.W., Washington, D.C.

By the Commission.

George A. Fitzsimmons
Secretary

1/ Article III, Section 26(k), of the NASD Rules of Fair Practice.

2/ Letter to Gordon Macklin, President, NASD, February 10, 1972. *See* also Statement of the Securities and Exchange Commission on the Future Structure of the Securities Markets (Securities Exchange Act Release No. 9484, February 2, 1972); Institutional Investor Study Report, House Document No. 92-64 (1971); Public Policy Implications of Investment Company Growth, H.R. Rep. No. 2337, 89th Cong., 2d Sess. (1966); Report of Special Study of Securities Markets, House Document No. 95, Pt. 4, 88th Cong., 1st Sess. (1963); and The Study of Mutual Funds, Prepared by the Wharton School of Finance and Commerce, H.R. Rep. No. 2274, 87th Cong., 2nd Sess. (1962).

---

**SECURITIES EXCHANGE ACT OF 1934**
Release No. 10868/June 20, 1974

The Securities and Exchange Commission has announced, pursuant to Section 15(c)(5) of the Securities Exchange Act of 1934 ("Exchange Act") the temporary suspension of over-the-counter trading in the securities of Monarch General, Inc. of Mineola, New York, for a ten-day period commencing at 10:45 a.m. (EDT) June 20, 1974 and terminating at midnight (EDT) June 2d, 1974.

The Commission initiated the suspension of trading at the request of Monarch General, Inc. because of the lack of accurate and adequate current information concerning the company's financial condition.

The Commission cautions broker-dealers, shareholders and prospective purchasers that they should consider carefully the foregoing information along with all other currently available information and any information subsequently issued by the company.

Furthermore, brokers and dealers should be alert to the fact that, pursuant to Rule 15c2-11 under the Exchange Act, at the termination of the suspension, no quotation may be entered unless and until they have strictly complied with all of the provisions of said rule. If any broker or dealer has any questions as to whether or not he has complied with said rule, he should not enter any quotation but immediately contact the staff of the Securities and Exchange Commission, Division of Enforcement in Washington, D.C. If any broker or dealer is uncertain as to what is required by Rule 15c2-11, he should refrain from entering quotations relating to the securities in question until such time as he has familiarized himself with said rule and is certain that all of its provisions have been met. If any broker or dealer enters any quotation which is in violation of said rule, the Commission will consider the need for prompt enforcement action.

---

**SECURITIES EXCHANGE ACT OF 1934**
Release No. 10869/June 20, 1974

The Securities and Exchange Commission has issued an order granting the application of the Boston Stock Exchange for unlisted trading privileges in the common stock of Teleprompter Corporation.

---

**SECURITIES EXCHANGE ACT OF 1934**
Release No. 10870/June 21, 1974

**INVESTMENT COMPANY ACT OF 1940**
Release No. 8394/June 21, 1974

**INVESTMENT ADVISERS ACT OF 1940**
Release No. 419/June 21, 1974

Admin. Proc. File No. 3-3836

In the Matter of

**CARL L. SHIPLEY**
1108 National Press Building
Washington, D. C.

**OPINION OF THE COMMISSION**

INVESTMENT COMPANY ACT—QUASI-JUDICIAL ADMINISTRATIVE JURISDICTION OVER CLAIMS ARISING UNDER SECTIONS 36 AND 36(a)

Administrative proceeding based solely on charges under former Section 36 and present Section 36(a) of the Investment Company Act, *dismissed*, because those sections cannot serve as the sole basis for administrative proceedings.

**PLEADING AND PRACTICE**

*Amendments to Pleadings*

Where order instituting an administrative proceeding was fatally defective because based entirely on statutory provisions that did not authorize administrative remedies, where no hearings had yet been held, and where Commission's staff sought leave to replead so as to invoke other statutory provisions not referred to in original order, motion to amend, *denied*, because application was essentially one for leave to institute a new proceeding, which Commission considered inappropriate under the circumstances.

*Consent Orders—Status of as Precedent*

Orders issued on consent pursuant to offers of settlement and unaccompanied by opinions, *held*, of little, if any, precedential weight.

APPEARANCES:

*John Barry Donohue, Jr.*, of Shipley, Akerman, Stein & Kaps, for Carl L. Shipley.

*Theodore Altman* and *David M. Lewis*, for the Division of Enforcement of the Commission.

*David Silver* and *Matthew P. Fink*, for the Investment Company Institute.

I.

Carl L. Shipley asks us to vacate the order instituting these proceedings against him under the Investment Company, Securities Exchange, and Investment Advisers Acts. 1/ Our Division of Enforcement opposes that request. It also moves to amend the order for proceedings.

The order for proceedings alleges that:

(1) Shipley was a director of Oceanographic Fund, a mutual fund registered with us as an open-end investment company under the Investment Company Act of 1940. He was also a non-voting stockholder of the Fund's investment adviser. In addition, he was legal counsel to the Fund, its investment adviser, its underwriter, and its principal broker in the execution of its portfolio transactions.

(2) Between March 1968 and May 1971, an official of the Fund, who was also an official of its investment adviser, principal underwriter and portfolio broker, aided and abetted by Shipley, willfully engaged in acts constituting gross misconduct or gross abuse of trust, or breach of fiduciary duty involving personal misconduct in respect of the Fund, within the meaning of those terms as used in Section 36 of the Investment Company Act and in Section 36(a) of that statute which superseded Section 36 on December 14, 1970. 2/

(3) As part of those acts and practices, the aforementioned official and Shipley failed to disclose to the Fund's unaffiliated directors the possibility of the Fund executing over-the-counter portfolio transactions directly with market makers on a principal basis and failed to inform the unaffiliated directors of communications by the Commission and its staff concerning the propriety of the Fund executing over-the-counter portfolio transactions on a regular basis through an affiliated broker rather than going directly to market makers.

II.

Shipley contends, among other things, that we have no power to pass on these allegations. He points out that Sections 36 and 36(a) only "authorize" us to bring injunctive actions in the courts based on alleged "gross abuse of trust" or "breach of fiduciary duty involving personal misconduct." 3/ He maintains that it follows that cases arising under those sections cannot be entertained in an administrative forum. The Investment Company Institute agrees with him. 4/

III.

But the Division disagrees. It says that we can decide cases founded on Sections 36 and 36(a). It asserts that those sections prescribe standards of conduct and that one who breaches them violates the Act. In this connection the Division places great stress on Section 9(b), added to the Act in 1970. That section authorizes us to conduct administrative proceedings whenever "any provision" of the Act has been willfully violated. 5/

The Division recognizes the absence of language specifically branding as "unlawful" failure to adhere to the standards of conduct prescribed by old Section 36 and new Section 36(a). But it argues that it would be wrong to attach any significance to Congress's failure to use that magic word in either old Section 36 or new Section 36(a). Congress made the misconduct at which those sections were aimed enjoinable. In the Division's view it follows that such misconduct must be unlawful. 6/

The Division points out that courts have granted private rights of action under Sections 36, 36(a) and 37 even though none of those sections makes any specific provision for such action. 7/ It then argues by analogy that the principles that permit private rights of action to be founded on Sections 36 and 36(a), without any specific statutory authority therefor, require that those sections be read to include an implied grant of power to conduct administrative proceedings.

The Division also reminds us that we have long applied fiduciary standards indistinguishable from those found in Sections 36 and 36(a) when acting in our quasi-judicial capacity in administrative proceedings under the Securities Exchange and Investment Advisers Acts. So courts are not the only tribunals capable of interpreting and applying those standards. We too are competent to do so. Finally, the Division argues that the recognition of an implied administrative remedy under Sections 36 and 36(a) will further the attainment of the Act's policy objectives.

IV.

Both old Section 36 and new Section 36(a) begin: "The Commission is authorized to bring an action in the proper district court of the United States, or in the United States court of any territory or other place subject to the jurisdiction of the United States, alleging..."

This choice of words was not inadvertent. The legislation which became the Investment Company Act of 1940 initially provided that "[A]ny gross misconduct or gross abuse

SEC DOCKET/477

of trust in respect to a registered investment company...shall be unlawful." 8/ It would also have made such derelictions federal crimes. 9/ This was objected to before the Congress on the ground that contravention of the general equitable standard of fiduciary conduct should not be made a criminal offense because, allegedly, that standard was too uncertain for that purpose. In response, the existing provision for civil actions in the Federal courts was substituted. 10/ No administrative remedy was authorized, perhaps because the Investment Company Act, as originally passed, did not authorize any administrative proceedings of a disciplinary nature, such as are provided for in the Securities Exchange Act of 1934.

The Division contends that the Investment Company Amendments Act of 1970 changed this situation. That Act did amend Section 9 of the statute to authorize administrative proceedings of a disciplinary nature. New Section 9(b), which was then added, authorizes the Commission in an administrative proceeding to disqualify persons from serving an investment company in specified capacities if, among other things, such persons are found to have "willfully violated" any provision of the Investment Company Act.

But the introductory phrase of Section 36 authorizing the Commission to bring an action in a district court was carried over without change, although Section 36 was otherwise amended in material respects. Neither before the amendment nor afterwards, does Section 36 in terms make anything unlawful. It simply authorizes the Commission to file an action in the Federal court and empowers the court to grant appropriate relief. Such language would not normally lead to the conclusion that the conduct actionable under the section is a violation of the Act. Moreover, violations of the Act are criminal offenses. And, as pointed out above, Congress in 1940 deliberately determined that Section 36 should not be a basis for criminal prosecution. There is no reason to believe that any change in this determination was made or intended in 1970.

Hence we conclude that Section 36 cannot serve as the sole basis for administrative sanctions. That conclusion does not rest primarily on the absence from that section of some such magic phrase as "it shall be unlawful" to engage in the conduct there specified. The revision of Section 36 was neither an incidental nor a minor part of the 1970 Amendments. On the contrary, it was one of the most carefully considered and, for that matter hotly debated, aspects of the legislative effort which culminated in those amendments. This was particularly the case after the decision, in 1969, to use Section 36 as the vehicle for providing control over management fees and compensation which was one of the central issues in the legislative program. This was, of course, accomplished by adding a new subsection 36(b) dealing specifically with the compensation of investment advisers to investment companies. Throughout the extended consideration of that subsection, it was repeatedly stressed that judgments thereunder were confided to the federal courts and not to anyone else, including the Commission. 11/

Were Section 36(a) a basis for an administrative proceeding under Section 9, the structure of the statute is such that Section 36(b) would also provide such a basis. In light of the meticulous and protracted consideration of every aspect of both of those subsections it is simply inconceivable that an administrative remedy for enforcement of these provisions was provided with no mention of this whatsoever, anywhere in the lengthy legislative history.

V.

The Division relies on precedents implying private rights of action under Sections 36 and 36(a). 12/ It argues by analogy that an implied right of administrative action should also be recognized. We find the analogy unavailing.

The right to bring a civil action is commonly implied under the securities acts and elsewhere in the law from statutes that on their face at least seem only to provide for criminal and administrative sanctions. This is so because a statute that declares something unlawful defines a standard of conduct which becomes part of the legal fabric that common law courts administer. As one noted scholar puts it:

"When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard for all members of the community from which it is negligence to deviate." 13/

Thus in our field the securities laws define duties. Persons injured by breaches of those duties can get redress in the courts (whether the statute expressly says so or not) because "the disregard of the command of a statute is a wrongful action and a tort." 14/

This doctrine has its roots in the common law. We do not consider it an adequate basis for implying a grant of authority to the Commission to conduct an administrative proceeding. Such authority must be derived from a statutory source which, as pointed out above, we do not find.

Our conclusion that we cannot conduct an administrative disciplinary proceeding, based solely upon an alleged violation of Section 36, does not mean that we have no authority to take cognizance of that section in a proceeding otherwise appropriately before us. Section 36(a) has been held to be more than a mere grant to the Federal courts of jurisdiction to apply common law principles. It is also a means of enforcing the Investment Company Act. 15/ Consequently, for example, in an administrative proceeding where we had found willful violations of some other provisions of the Act, we could, on the issue of what sanction was appropriate, consider and determine whether or not the respondent had committed a breach of trust involving personal misconduct within the meaning of Section 36. We hold only that we can neither conduct an administrative proceeding nor impose sanctions solely on the basis of Section 36.

VI.

The Division wishes to carry on with the case by recasting it as one under the antifraud provisions of the Securities and Securities Exchange Acts. To that end it cross-moves to amend the order for proceedings so as to charge Shipley with having willfully violated Section 17(a) of the Securities Act, Section 10(b) of the Securities Exchange Act,

it was ever presented to us for decision in our quasi-judicial capacity. All that we did there was to issue an order for proceedings, just as we did here, and then to accept Mosler's consent to the findings made in the order and the sanctions it imposed. Nothing was ever adjudicated in *Mosler*. Hence the order that we issued there is no more of an authority than the order for proceedings that we issued in this case, on the legal sufficiency of which we now must pass, or the order that we previously issued in this very matter accepting the offer of settlement made by the respondents other than Shipley. See n. 2, *supra*. Such orders are of little, if any, precedential weight. A long series of such non-adjudicative orders issued in many cases may be significant for certain purposes as pointing to a settled administrative construction or practice. But an isolated order or two of the *Mosler* type is of no general import. Such cases are not to be confused with those in which we accept an offer of settlement, issue an order that makes the findings and imposes the sanction assented to by the settling respondent or respondents, and either together with the order or at a later time issue an opinion stating our views on the issues raised. Such opinions (see, e.g., *Faberge, Inc.*, Securities Exchange Act Release No. 10174 (May 25, 1973), 1 SEC Docket No. 18, p. 21; *Great Northern Management Co.*, Securities Exchange Act Release No. 8856 (April 3, 1970); *Consumer Investor Planning Corporation*, 43 S.E.C. 1096 (1969); *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 S.E.C. 933 (1968); *Spear and Staff Incorporated*, 42 S.E.C. 549 (1965)) are written only after deliberation and analysis akin to that reflected in our opinions in contested causes. Hence they are as authoritative as opinions in those cases.

7/ See *Rosenfeld v. Black*, 445 F.2d 1337 (C.A. 2, 1971), petition for cert. dismissed, 409 U.S. 802; *Moses v. Burgin*, 445 F.2d 369 (C.A. 1, 1971), cert. denied, 404 U.S. 994; *Brown v. Bullock*, 294 F.2d 415 (C.A. 2, 1961). See also *Papilsky v. Berndt*, 466 F.2d 251 (C.A. 2, 1972), cert. denied, 409 U.S. 1077.

8/ Section 17(c) of S. 3580 and H.R. 8935, 76th Cong., 3rd Sess. (1940).

9/ *Id.* Section 43.

10/ This legislative history is discussed in some detail in *Brown v. Bullock*, 194 F. Supp 207, 238-245 (S.D.N.Y. 1961), affirmed on other grounds, 294 F.2d 415 (C.A. 2, 1961).

11/ See, for example, House Report No. 91-1382, 91st Cong., 2d Sess. 36-37 (1970).

12/ See cases cited in note 7, *supra*.

13/ Prosser, Torts 190 (4th ed. 1971).

14/ Kirkpatrick J. in *Kardon v. National Gypsum Co.*, 69 F. Supp. 512, 514 (E.D. Pa. 1946) quoted at 3 Loss, Securities Regulation 1762 (2nd ed. 1961).

15/ *Brown v. Bullock*, 194 F. Supp. 207, 238 (S.D.N.Y. 1961), affirmed on other grounds 294 F.2d 415 (C.A. 2, 1961). "The federal sanctions were not placed in...section 36 for the sole purpose of enforcing exclusively State-created duties as prescribed and defined in multitudinous State incorporation laws and their interpretative decisions. The more reasonable view is that the main purpose for placing these elaborate and detailed federal sanctions in this regulatory Act was to enforce compliance with the Act and performance of the duties imposed by the Act."

16/ Rule 6(d) of our Rules of Practice provides that: "In any proceeding, applications or motions for amendments to the matters of fact and law to be considered may be granted, for cause shown, ...by the Commission at any time." In applying that rule we have been guided by the liberal spirit of the Federal Rules of Civil Procedure which direct in Rule 15(a) that "leave to amend shall be freely given when justice so requires," in Rule 15(b) that even at the trial such leave be granted "freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits," and in Rule 15(d) that "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."

17/ One common situation of this type is one in which a court enters an injunction against a defendant who is also a respondent in a pending administrative proceeding. Since there was no injunction when the order for proceedings issued, it could not possibly have been alleged in the original order. Yet the public interest requires that the injunction and its implications be considered in the administrative proceeding. Accordingly, motions to amend (in the courts they would be termed motions to "supplement," but our rules of practice draw no distinction between supplemental pleadings and amended pleadings) are granted routinely in these circumstances.

18/ As ex-Commissioner Whitney said in his concurring opinion in *Fundamental Investors, Inc.*, 41 S.E.C. 285, 302-303 (1963): "It is not realistic to assume that our operating Divisions and Regional Offices can respond to very public complaint, however well founded: We cannot initiate a proceeding under Section 8(d) of the Securities Act on every registration statement which deserves a stop order; we cannot necessarily discover every broker-dealer whose conduct deserves censure and discipline; we do not participate in every Chapter X proceeding under the bankruptcy laws. For that matter, the Internal Revenue Service cannot audit every tax return which deserves that degree of scrutiny.... The public should understand that, absent a blank check appropriation which we will never have and which we cannot responsibly seek, this agency must be permitted to reserve a large measure of discretion in choosing, after a well intentioned and thoughtful assessment of the requirements of the public interest, those cases which it will hear."

19/ However, we do not imply that the proposed amendment would be defective as a matter of law.

---

SECURITIES EXCHANGE ACT OF 1934
Release No. 10870/June 21, 1974

INVESTMENT COMPANY ACT OF 1940
Release No. 8394/June 21, 1974

INVESTMENT ADVISERS ACT OF 1940
Release No. 419/June 21, 1974

Admin. Proc. File No. 3-3836

In the Matter of

CARL L. SHIPLEY
1108 National Press Building
Washington, D. C.

ORDER DENYING MOTION TO AMEND ORDER FOR PROCEEDINGS AND DISMISSING PROCEEDINGS FOR WANT OF QUASI-JUDICIAL ADMINISTRATIVE JURISDICTION

Proceedings were instituted pursuant to Section 9(b) of the Investment Company Act, Sections 15(b), 15A and 19(a)(3) of the Securities Exchange Act, and Section 203 of the Investment Advisers Act to determine the nature of the remedial action, if any, appropriate in the public interest with respect to Carl L. Shipley and others. An offer of settlement was made by the respondents other than Shipley. The Commission accepted that offer, and the proceedings with respect to those respondents were terminated by an order imposing remedial sanctions. Shipley, the sole remaining respondent, thereupon filed a petition to vacate the order for proceedings insofar as it related to him. Said petition was based on various grounds, among them the asserted legal insufficiency of the order for proceedings as a pleading. Thereafter the Division of Enforcement of the Commission moved to amend the order for proceedings. Subsequently the moving respondent and the Division of Enforcement filed briefs in support of their positions. The Investment Company Institute filed a statement of its views on some of the questions presented. Oral argument was then heard.

On the basis of the Commission's opinion issued this day, it is

ORDERED that the motion to amend the order for proceedings be, and it hereby is, denied; and it is further

ORDERED that these proceedings be, and they hereby are, dismissed.

By the Commission.

George A. Fitzsimmons
Secretary

---

SECURITIES EXCHANGE ACT OF 1934
Release No. 10871/June 21, 1974

INVESTMENT COMPANY ACT OF 1940
Release No. 8395/June 21, 1974

INVESTMENT ADVISERS ACT OF 1940
Release No. 420/June 21, 1974

Admin. Proc. File No. 3-3836

In the Matter of

MIDDENDORF, COLGATE & CO.
80 Broad Street
New York, New York
(8-10176)
(801-2798)

AUSTEN B. COLGATE

ORDER VACATING PRIOR ORDERS AND DISMISSING PROCEEDINGS

These were remedial proceedings pursuant to the Securities Exchange, Investment Company, and Investment Advisers Acts. The order instituting them named three respondents. One was Middendorf, Colgate & Co. ("registrant"), a registered broker-dealer and investment adviser. Another was Austen B. Colgate, registrant's managing partner. The third was Carl L. Shipley, an attorney.

Registrant and Colgate made a joint offer of settlement, which the Commission found acceptable. Accordingly, an order issued that made adverse findings against registrant and Colgate on the basis of their offer and of the order for proceedings. That same order also imposed the sanctions to which the offerors had consented. *Middendorf, Colgate & Co.,* Securities Exchange Act Release No. 10016 (February 26, 1973), 1 SEC Docket No. 5, p. 2.

Subsequently, a second order issued modifying the suspension that the first one had imposed on Colgate. *Austen B. Colgate,* Securities Exchange Act Release No. 10157 (May 18, 1973), 1 SEC Docket No. 16, p. 8.

Shipley, the third respondent, made no offer of settlement. Instead, he moved to vacate the order for proceedings for legal insufficiency. And the Commission has this day held the order for proceedings defective and dismissed as to Shipley. *Carl L. Shipley,* Securities Exchange Act Release No. 10870 (June 21, 1974), 4 SEC Docket, No. 13. Accordingly, it is on the Commission's own motion

ORDERED that all of the orders heretofore issued herein with respect to Middendorf, Colgate & Co. and Austen B. Colgate be, and they hereby are, vacated; and it is further

ORDERED that the proceedings be, and they hereby are, dismissed as to them.

By the Commission (Chairman GARRETT and Commissioners LOOMIS, EVANS and SOMMER); Commissioner POLLACK not participating.

George A. Fitzsimmons
Secretary

---

SECURITIES EXCHANGE ACT OF 1934
Release No. 10872/June 21, 1974

See Securities Act Release No. 5505/June 21, 1974.

SEC DOCKET/481