# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELLE YAMEEN, derivatively on behalf of the Eaton Vance Tax-Managed Growth Fund 1.1,<br><br>    Plaintiff,<br><br>        v.<br><br>EATON VANCE DISTRIBUTORS, INC., JAMES B. HAWKES, SAMUEL L. HAYES, NORTON H. REAMER, LYNN A. STOUT, WILLIAM H. PARK, RONALD A. PEARLMAN, JESSICA M. BIBLIOWICZ, JACK L. TREYNOR, and DONALD R. DWIGHT,<br><br>    Defendants, and<br><br>EATON VANCE TAX-MANAGED GROWTH FUND 1.1,<br><br>    Nominal Defendant. | Civil Action No. 03-CV-12437 DPW |

## INDEPENDENT TRUSTEE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED DERIVATIVE COMPLAINT

James S. Dittmar (BBO# 126320)
Stuart M. Glass (BBO# 641466)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

*Attorneys for Independent Trustee Defendants:*
*Donald R. Dwight, Samuel L. Hayes, William H.*
*Park, Ronald A. Pearlman, Norton H. Reamer,*
*Lynn A. Stout, and Jack L. Treynor*

Dated:  June 30, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT..........................................................................................................................3

I.  PLAINTIFF'S CLAIMS AGAINST THE INDEPENDENT TRUSTEES MUST BE
    DISMISSED FOR FAILURE TO SATISFY MASSACHUSETTS' DEMAND
    REQUIREMENTS.......................................................................................................3

    A.  Plaintiff's Failure To Make Demand On The Board of Trustees Is
        Fatal To Her Claims......................................................................................3

        1.  Under Massachusetts Law, Demand Is Required In All
            Derivative Actions .........................................................................3

        2.  The Amended Derivative Complaint Does Not Relate Back
            For Demand Purposes To The Filing of The Initial
            Complaint........................................................................................6

    B.  Even Under Massachusetts Law In Effect Prior To July 1, 2004,
        Plaintiff's Claims Against The Independent Trustees Should Be
        Dismissed For Her Failure To Plead Specific Facts Excusing Her
        Failure To Make Demand ...............................................................................9

II. PLAINTIFF'S CLAIM AGAINST THE INDEPENDENT TRUSTEES FOR
    VIOLATION OF § 36(a) OF THE ICA MUST BE DISMISSED BECAUSE THERE IS
    NO PRIVATE RIGHT OF ACTION UNDER § 36(a). ....................................................13

III. PLAINTIFF'S CLAIMS AGAINST THE INDEPENDENT TRUSTEES SHOULD BE
     DISMISSED BECAUSE THERE ARE NO ALLEGATIONS THAT THE
     INDEPENDENT TRUSTEES' ACTS WENT BEYOND THE SCOPE OF THOSE
     PROTECTED UNDER THE TERMS OF THE DECLARATION OF TRUST ..............17

IV. PLAINTIFF'S CLAIMS AGAINST THE INDEPENDENT TRUSTEES MUST BE
    DISMISSED FOR FAILURE TO VERIFY THE COMPLAINT AS REQUIRED BY
    FED. R. CIV. P. 23.1 ........................................................................................18

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abeloff v. Barth*,
    119 F.R.D. 332 (D. Mass. 1988)............................................................................ 19

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)................................................................................... 13-16

*Benak v. Alliance Capital Mgmt., Inc.*,
    No. Civ.A.01-CV-5734 (JLL), 2005 WL 1285652 (D.N.J. May 23, 2005)........................... 3

*BFP v. Resolution Trust Corp.*,
    511 U.S. 531 (1994)......................................................................................... 16

*Bonano v. E. Caribbean Airline Corp.*,
    365 F.3d 81 (1st Cir. 2004)................................................................................ 14

*Byrne v. Am. Foreign Ins. Ass'n*,
    3 F.R.D. 1 (D. Mass. 1943)................................................................................. 5

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988)......................................................................................... 19

*Chamberlain v. Aberdeen Asset Management Ltd.*,
    No. 02 CV 5870 (SJ), 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005) ................................. 14-17

*Chamberlain v. Aberdeen Asset Management Ltd.*,
    No. 02 CV 5870 (SJ), 2005 WL 1378757 (E.D.N.Y. Apr. 12, 2005) .................................. 14

*Clairdale Enters., Inc. v. C.I. Realty Investors*,
    423 F. Supp. 257 (S.D.N.Y. 1976) ........................................................................ 5

*Correctional Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001)......................................................................................... 13

*DDH Aviation, L.L.C. v. Holly*,
    No. Civ.A.3:02-CV-2598-P, 2005 WL 770595 (N.D. Tex. March 31, 2005)....................... 19

*DH2, Inc. v. Athanassiades*,
    No. 04 C 0487, 359 F.Supp. 2d 708 (N.D. Ill. Mar. 10, 2005)............................. 15

*Dorchester Investors v. Peak Int'l Ltd.*,
    134 F. Supp. 2d 569 (S.D.N.Y. 2001) ................................................................ 15

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)......................................................................................... 15

*Green v. Nuveen Advisory Corp.*,
186 F.R.D. 486 (N.D. Ill. 1999).........................................................................4-5

*Grossman v. Johnson*,
89 F.R.D. 656 (D. Mass. 1981)..............................................................................11

*Heit v. Baird*,
567 F.2d 1157 (1st Cir. 1977)...................................................................................9

*Hogan v. Eastern Enters./Boston Gas*,
165 F. Supp. 2d 55 (D. Mass. 2001)......................................................................17

*In re Kauffman Mutual Fund Actions*,
479 F.2d 257 (1st Cir. 1973)...............................................................................9-11

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
272 F. Supp. 2d 243 (S.D.N.Y. 2003) ...............................................................14-15

*In re Stratus Computer, Inc. Sec. Litig.*,
No. Civ. A. 89-2075-Z, 1992 WL 73555 (D. Mass. Mar. 27, 1992)......................19

*In re Van Wagoner Funds, Inc.*,
No. C 02-3383 JSW, 2004 WL 2623972 (N.D. Cal. July 27, 2004)......................15

*ING Principal Protection Funds Derivative Litig.*,
No. CIV. A. 03-12198JLT, 2005 WL 1107072 (D. Mass. May 9, 2005) ......................passim

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991)....................................................................................................4

*Lewis v. Graves*,
701 F.2d 245 (2d Cir. 1983) ...................................................................................11

*meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.*,
260 F. Supp. 2d 616 (S.D.N.Y. 2003) ....................................................................15

*Mutchka v. Harris*,
No. SACV0534JVSANX, 2005 WL 1414304 (C.D. Cal. June 8, 2005) ...................14-15, 17

*Olmsted v. Pruco Life Ins. Co.*,
283 F.3d 429 (2d Cir. 2002) ............................................................................passim

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979)............................................................................................16-17

*Washington Legal Found. v. Massachusetts Bar Found.*,
993 F.2d 962 (1st Cir. 1993)...................................................................................18

*White v. Heartland Yield Mun. Bond Fund,*
237 F. Supp. 2d 982 (E.D. Wis. 2002) ................................................................. 15

**STATE CASES**

*Aker v. Pearson,*
389 N.E.2d 428 (Mass. App. Ct. 1979) ............................................................ 6-9

*Bartlett v. New York, N.H. & H.R. Co.,*
109 N.E. 452 (Mass. 1915) ................................................................................. 6

*Dunphy v. Travelers' Newspaper Ass'n,*
16 N.E.2d 426 (Mass. 1888) ......................................................................... 3, 7, 9

*Greenspun v. Lindley,*
330 N.E.2d 79 (N.Y. 1975) ................................................................................. 5

*Harhen v. Brown,*
730 N.E.2d 859 (Mass. 2000) ..................................................................... passim

*New England Trust Co. v. Paine,*
59 N.E.2d 263 (1945) ........................................................................................ 17

*Woonsocket Shopping Ctr. v. Wonder Props.,*
No. 932169, 1996 WL 1186816 (Mass. Super. Ct. Feb. 23, 1996) ........................ 5

**FEDERAL STATUTES**

15 U.S.C. § 80a ...................................................................................................... 1

15 U.S.C. § 80a-35(a) ..................................................................................... 13, 15

15 U.S.C. § 80a-41 .............................................................................................. 16

28 U.S.C. § 1367(c)(3) ........................................................................................ 19

**STATE STATUTES**

Mass. Gen. Laws ch. 156D, Subdivision D, Introductory Comment ......................... 9

Mass. Gen. Laws ch. 156D, § 7.42 ................................................................. 2, 5, 8

Mass. Gen. Laws ch. 182, § 2 .............................................................................. 17

Mass. Gen. Laws ch. 182, § 2B ............................................................................ 10

# FEDERAL RULES

Federal Rules of Civil Procedure 12(b)(6) .................................................................. 1

Federal Rule of Civil Procedure 23.1 .............................................................. 1, 3, 18

Fed. R. Evid. 201 ....................................................................................................... 17

# FEDERAL REGULATIONS

17 C.F.R. § 270.12b.1 .................................................................................................. 2

# OTHER AUTHORITIES

ALI Principles of Corporate Governance: Analysis and Recommendations § 1.23(c) &
    cmt .................................................................................................................... 11-12

*In re Carl L. Shipley*, ICA Release No. IC-8394, 1974 WL 161761 (June 21, 1974)..... .....15-16

The statutorily non-interested trustee defendants Donald R. Dwight, Samuel L. Hayes, William H. Park, Ronald A. Pearlman, Norton H. Reamer, Lynn A. Stout, and Jack L. Treynor, (collectively, the "independent trustees") submit this memorandum of law pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 in support of their Motion to Dismiss the Amended Derivative Complaint ("Amended Derivative Complaint" or "Am. Compl.").

## INTRODUCTION[1]

On December 3, 2003, plaintiff filed a one-count derivative complaint – alleging violation of § 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a, *et seq.* (the "ICA") – against one defendant, Eaton Vance Distributors, Inc. ("EV Distributors") ("Initial Complaint").[2] More than one year later and following substantial document discovery from EV Distributors, on March 30, 2005, plaintiff filed an amended derivative complaint, adding nine new defendants (the independent trustees, trustee James B. Hawkes, and former trustee Jessica M. Bibliowicz) and two new causes of action – breach of fiduciary duty under § 36(a) of the ICA (Count II) and breach of fiduciary duty under Massachusetts law (Count III).[3] Plaintiff purports to bring her claims derivatively on behalf of the Eaton Vance Tax-Managed Growth Fund 1.1. (the "Fund"), a series of Eaton Vance Mutual Funds Trust (the "Trust"), which is an open-ended investment management company registered under the ICA and organized as a Massachusetts business trust. *See* Am. Compl. page 1 and ¶ 7.[4] The breach of fiduciary duty purportedly

---

[1] A detailed discussion of the background and facts appears in the memorandum of law accompanying Eaton Vance Distributors, Inc.'s motion to dismiss ("EV Distributors' Memorandum"). The independent trustees adopt and incorporate by reference the facts and arguments set forth in EV Distributors' Memorandum to the extent relevant to the trustees' motion to dismiss.

[2] *See* Am. Compl. ¶ 49.

[3] The § 36(b) claim against EV Distributors remained in the Amended Derivative Complaint as Count I.

[4] The independent trustees are five current (Mr. Hayes, Mr. Park, Mr. Pearlman, Mr. Reamer and Ms. Stout) and two former (Mr. Dwight and Mr. Treynor) trustees of the Trust. Am. Compl. ¶¶ 9-13, 15-16, 18-22. The independent trustees are not interested persons of the Trust as defined by the ICA and plaintiffs do not allege otherwise. See Initial Complaint. ¶¶ 10-13.

results from the trustees' approval of allegedly excessive and improper distribution fees paid to EV Distributors, pursuant to SEC Rule 12b-1, after the Fund was closed to new investors.[5]

Last month, in a substantially similar case in which the plaintiffs likewise alleged that the defendant-trustees there breached their fiduciary duty by authorizing excessive distribution fees during a period when a mutual fund was closed to new investors, this Court granted the independent trustees' motion to dismiss plaintiffs' breach of fiduciary duty claim. *See ING Principal Protection Funds Derivative Litig.*, No. CIV. A. 03-12198JLT, 2005 WL 1107072 (D. Mass. May 9, 2005) (Tauro, J.) ("*ING*"). In dismissing plaintiffs' claim, the Court held pre-suit demand on the trustees is universally required as a matter of Massachusetts law, and plaintiffs' failure to make pre-suit demand was fatal to their claim against the trustees. *See id.*; Mass. Gen. Laws ch. 156D, § 7.42 (establishing universal demand requirement).

As outlined below and discussed herein, plaintiff's claims against the independent trustees – breach of fiduciary duty under § 36(a) of the ICA (Count II) and breach of fiduciary duty under Massachusetts law (Count III) – fail as a matter of law and must be dismissed:

1.      Plaintiff failed to make demand on the trustees before filing the Amended Derivative Complaint on March 30, 2005, as is required, without exception, by Massachusetts law. This failure is dispositive of both claims against the independent trustees. *See* Mass. Gen. Laws ch. 156D, § 7.42 (establishing universal demand requirement). Even under Massachusetts law in effect prior to the Legislature's enactment of the universal demand requirement, plaintiff's claims should be dismissed because the Amended Derivative Complaint fails to allege with particularity specific facts demonstrating that demand should be excused.

2.      There is no private right of action under § 36(a) of the ICA.

---

[5]     *See* Am. Compl. pages 1-2 and ¶ 153; 17 C.F.R. § 270.12b.1.

3.      Plaintiff failed to allege any actions by the independent trustees that would take them outside of the scope of conduct protected under the Declaration of Trust of the Eaton Vance Mutual Funds Trust. The Declaration of Trust provides that a trustee cannot be held liable to the Trust or its shareholders for any action or failure to act except "by reason of his own willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office."[6] Plaintiff has asserted no acts or omissions that could rise to the level of such wrongful conduct on the part of any of the independent trustees.

4.      Plaintiff failed to comply with Fed. R. Civ. P. 23.1, which requires that in a derivative action "the complaint shall be verified."

## ARGUMENT

I.      **PLAINTIFF'S CLAIMS AGAINST THE INDEPENDENT TRUSTEES MUST BE DISMISSED FOR FAILURE TO SATISFY MASSACHUSETTS' DEMAND REQUIREMENTS.**

    A.      **Plaintiff's Failure To Make Demand On The Board of Trustees Is Fatal To Her Claims**

        1.      **Under Massachusetts Law, Demand Is Required In All Derivative Actions**

The board of trustees manages the affairs of the Fund and the Trust, including determinations whether to pursue legal claims in the name of the fund. Am. Compl. ¶ 18; *Harhen v. Brown*, 730 N.E.2d 859, 865 (Mass. 2000) ("[A]s a basic principle of corporate governance, the board of directors or majority of shareholders should set the corporation's business policy, including the decision whether to pursue a lawsuit.").[7] The requirements for

---

[6]   Section 4.2, Amended and Restated Declaration of Trust of Eaton Vance Government Obligations Trust, dated August 17, 1993 (now known as Eaton Vance Mutual Funds Trust) (attached hereto as Exhibit 1).

[7]   *See also Benak v. Alliance Capital Mgmt., Inc.*, No. Civ.A.01-CV-5734 (JLL), 2005 WL 1285652, at *2 (D.N.J. May 23, 2005) (dismissing derivative suit for failure to make demand on mutual fund board because the fund board "must be given the opportunity to consider, or reconsider, the issue in dispute, before legal action is taken on behalf of the very entity the board controls") (internal quotations omitted); *Dunphy v. Travelers' Newspaper Ass'n*, 16 N.E.2d 426, 431 (Mass. 1888) ("It would be contrary to the fundamental principles of corporate organization, to hold that a single shareholder can at any time launch the corporation into litigation . . . to

demand in a derivative action are determined by the substantive law of the state of incorporation or organization – in this case, Massachusetts. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991); Am. Compl. ¶ 7.

Under Massachusetts law, "to protect the authority of the board of directors to decide whether to pursue a lawsuit on behalf of the corporation," excuse from demand has been abolished and demand is universally required prior to the commencement of a derivative suit on behalf of a Massachusetts corporation. Mass. Gen. Laws, ch. 156D, § 7.42 and cmt ("Section 7.42 requires a written demand on the corporation in all cases"); *ING*, 2005 WL 1107072, at *3-4 ("[D]emand must be made prior to the commencement of every derivative case, whether or not the directors are independent with respect to the subject matter of the demand. . . . No shareholder may commence a derivative proceeding until: (1) a written demand has been made upon the corporation to take suitable action."). "There are no exceptions" to the demand requirement. *ING*, 2005 WL 1107072, at *3.

As *ING* held, the universal demand statute applies equally to business trusts as to corporations. *See ING*, 2005 WL 1107072, at *4 (rejecting plaintiffs' argument that the universal demand requirement applies to derivative suits brought on behalf of corporations only and applying the universal demand requirement to Massachusetts business trusts, holding that "a business trust in practical effect is in many respects similar to a corporation."). The *ING* decision is in accord with the longstanding practice of courts holding that rules governing suits involving corporations also apply to suits involving business trusts. *See Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 489 n.2 (N.D. Ill. 1999) ("Courts applying Massachusetts law to shareholder suits against business trusts have uniformly required the shareholder to follow

---

prevent methods of management which [he or she] thinks unwise") (cited approvingly in *Harhen*, 730 N.E.2d at 865).

Massachusetts law regarding derivative suits."); *Clairdale Enters., Inc. v. C.I. Realty Investors*, 423 F. Supp. 257, 261 (S.D.N.Y. 1976) (applying Massachusetts' demand requirement to derivative suits against Massachusetts business trusts); *Byrne v. Am. Foreign Ins. Ass'n*, 3 F.R.D. 1, 2 (D. Mass. 1943) (noting that trust "has practically all attributes of corporation") (internal quotation marks and citations omitted); *Woonsocket Shopping Ctr. v. Wonder Props.*, No. 932169, 1996 WL 1186816, at *4 (Mass. Super. Ct. Feb. 23, 1996) (stating that "[a] business trust is in many respects like a corporation" and refusing to pierce form of business trust without showing of fraudulent purpose); *Greenspun v. Lindley*, 330 N.E.2d 79, 81 (N.Y. 1975) (treating shareholders of Massachusetts business trust as shareholders of Massachusetts corporation in enforcing Massachusetts' demand requirement). Plaintiff acknowledges this fact because her complaint cites to *Harhen*, which dealt with the application of the demand requirement in the context of a corporation, not a business trust. *See* Am. Compl. ¶ 162. Now that the Massachusetts legislature has enacted the universal demand requirement of § 7.42, it is that statute – and not the demand requirements set forth in *Harhen* – that governs derivative actions brought by shareholders of Massachusetts corporations and Massachusetts business trusts. Indeed, it would be illogical for the demand requirements of *Harhen*, applicable originally to corporations – but now, by virtue of the universal demand requirement, obsolete – to continue to apply to derivative actions involving business trusts.

Here, plaintiff first named the independent trustees in this case in her Amended Derivative Complaint filed on March 30, 2005, ***after*** the universal demand requirement took effect. Accordingly, Massachusetts General Laws chapter 156D, § 7.42 controls the demand requirement as it relates to the claims asserted against the independent trustees. Plaintiff admits that she did not make demand on the board of trustees prior to filing the Amended Derivative Complaint, which added new parties and new claims to the lawsuit. Am. Compl. ¶ 160.

Plaintiff's failure to make demand in light of this controlling law compels dismissal of her two derivative claims against the independent trustees (Counts II and III). *See ING*, 2005 WL 1107072, at *4 (dismissing derivative claims brought on behalf of Massachusetts business trusts for failure to comply with universal demand requirement).

### 2.   The Amended Derivative Complaint Does Not Relate Back For Demand Purposes To The Filing of The Initial Complaint

Plaintiff's filing of her Amended Derivative Complaint on March 30, 2005 – adding nine new defendants and two new causes of action – does not relate back, for purposes of the applicability of the statutory requirement of universal demand, to her filing of the Initial Complaint. Under Massachusetts law, the doctrine of relation back does not apply where, as here, doing so would undermine the clear purpose of a statute and would deprive the party against whom the amendment is made of a substantial right. Two cases are directly on point: *ING*, 2005 WL 1107072, and *Aker v. Pearson*, 389 N.E.2d 428 (Mass. App. Ct. 1979).

First, in the recent *ING* decision, this Court held that plaintiffs' post-July 1, 2004 amendment to their complaint – which added new claims (breach of fiduciary duty) against new parties (mutual fund independent trustees) – did not relate back to the original complaint for purposes of Massachusetts' universal demand statute. *See ING*, 2005 WL 1107072, at *4. The Court held that, as to the claims added by the post-July 1, 2004 amendment to the complaint against the parties added to the litigation after July 1, 2004, the universal demand statute applied and plaintiffs' failure to make demand compelled dismissal of such claims. *Id.* The Court ruled that permitting the amended complaint to relate back "would defeat the clear purpose of the universal demand statute," which is "to protect the authority of the board of directors to decide whether to pursue a lawsuit on behalf of the corporation." *Id.*; *see also Bartlett v. New York, N.H. & H.R. Co.*, 109 N.E. 452, 456 (Mass. 1915) (the corporation's right to receive demand

before facing a derivative suit is "not a technical rule of pleading," but "one of  substantive

right"). Accordingly, in *ING*, the Court dismissed the claims against the independent trustees for

the plaintiffs' failure to make pre-suit demand. *Id.*

The present case is identical to *ING* in this regard because here plaintiff added the

independent trustees to the case, without making demand, more than eight months after the

universal demand statute took effect. As in *ING*, to permit relation back would undermine the

clear purpose of the universal demand statute and would deny the trustees their substantial right

of managing the affairs of the Fund and making the decision whether to pursue a lawsuit in the

name of the Fund for alleged harm to the Fund. *See Harhen*, 730 N.E.2d at 865; *Dunphy*, 16

N.E.2d at 431.

Second, the principles of *Aker* compel dismissal here where plaintiff has failed to make

pre-suit demand. *See* 389 N.E.2d 428.  In *Aker*, the plaintiff filed a medical malpractice

complaint in December of 1975, at which time no hearing before a medical malpractice tribunal

was required.  However, shortly thereafter, the Massachusetts legislature adopted a statute

requiring that every medical malpractice action filed on or after January 1, 1976 be subject to a

preliminary hearing by a medical malpractice tribunal.  On January 27, 1977, the plaintiff

amended his complaint to name two additional doctors as defendants.  One of the newly added

doctors moved to dismiss the complaint and for the claim to be heard by a tribunal since the

claim against him was first filed after the date when preliminary review by a tribunal became

mandatory.  The plaintiff argued that his claims against the two doctors added in January 1977

should relate back to the filing of the initial complaint.  The trial court rejected the plaintiff's

argument and the Appeals Court affirmed.

The *Aker* court reasoned that the theoretical underpinning behind the relation back

doctrine was missing in the case before it and decided that relation back was therefore not

7

justified. 389 N.E.2d at 430. As the court explained, "[t]he liberal approach to the amendment of pleadings, and their retrospective effect, has its theoretical roots in the idea that if an action was timely brought at the outset, every consideration ought to be given an amendment which would prevent the plaintiff's claim from being lost if an amendment were not allowed." *Id.* The court found that "[r]equiring the plaintiff to present his case for screening to the malpractice tribunal [did] not ... cause him to lose the opportunity to sustain his claim," and that "where parties have attempted to invoke the doctrine of relation back for reasons other than lifting the bar of the statute of limitations, courts have been less willing to apply it, particularly if to do so deprives the party against whom the amendment is made of a substantial right." *Id.* Reasoning that allowing relation back would also undermine "the legislative purpose" of the statute, the court upheld the lower court's decision directing the case to be brought before the tribunal. *Id.*

Application of the principles in *Aker* requires rejection of the relation back doctrine here. Here, as in *Aker*, (i) plaintiff filed a complaint, (ii) soon thereafter the Massachusetts legislature adopted a statute requiring a process whereby plaintiff presents her claim to another group of people for consideration before such claims may be brought in court, and (iii) then plaintiff added additional defendants to her already existing lawsuit. As in *Aker*, the theoretical underpinning of the relation back doctrine – protection of a timely-filed claim – is also absent. Any attempt by plaintiff to relate back her newly added claims against the trustees would not be to save such claims under the statute of limitations, but instead to avoid the pre-suit demand requirement of Mass. Gen. Laws, ch. 156D, § 7.42.

Moreover, as *Aker* instructs, application of the relation back doctrine is not justified as it would deprive the trustees (and the Fund) of a substantial right—namely, the right possessed by all Massachusetts boards of directors to manage the affairs of the corporation, including the decision whether to enter the corporation into litigation. *See Harhen*, 730 N.E.2d at 865;

8

*Dunphy*, 16 N.E.2d at 431. Allowing plaintiff to avoid making demand on the board would in turn undermine the purpose behind the universal demand statute, namely, "to protect the authority of the board of directors to decide whether to pursue a lawsuit on behalf of the corporation," *ING*, 2005 WL 1107072, at *4, and to "eliminate the often excessive time and expense for both litigants and the court in litigating the question whether demand is required. . . ." Mass. Gen. Laws, ch. 156D, Subdivision D, Introductory Comment.

Accordingly, the new claims asserted against the independent trustees in the Amended Derivative Complaint should not relate back to the Initial Complaint for purposes of the universal demand statute. Plaintiff's derivative claims against the independent trustees should be dismissed for her failure to make demand.

**B. Even Under Massachusetts Law In Effect Prior To July 1, 2004, Plaintiff's Claims Against The Independent Trustees Should Be Dismissed For Her Failure To Plead Specific Facts Excusing Her Failure To Make Demand**

Even if this Court finds the statutory requirement of universal demand does not apply, plaintiff's two claims against the independent trustees nevertheless must be dismissed because plaintiff failed to adequately plead that demand should be "excused." Under Massachusetts law in effect prior to July 1, 2004, demand may be "excused" only in very limited circumstances. The demand requirement is "vigorously enforced" in this Circuit and a shareholder's efforts to plead demand futility is subject to strict pleading requirements. *Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977); *see also* Fed. R. Civ. P. 23.1 (plaintiff must plead "with particularity" her purported reasons for demand futility); *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263 (1st Cir. 1973) (Rule 23.1 is an "exceptional rule of pleading" and for a shareholder to place herself in charge of conducing the affairs of the company "without first affording the directors the opportunity to occupy their normal status, a stockholder must show that [her] case is exceptional.").

Even prior to the enactment of the universal demand statute, plaintiff could not have maintained this action without prior demand unless she alleged with particularity in a verified complaint facts sufficient to show that a majority of the board of trustees was "interested" and therefore could not have fairly evaluated a pre-suit demand. *Harhen*, 730 N.E.2d at 865. Plaintiff attempts to demonstrate that demand would have been futile by alleging that (1) the claims asserted concern the Rule 12b-1 plan and agreement that the Trustees "voted to approve," "voted to continue" and "failed to terminate" and (2) if true, the facts of the Amended Derivative Complaint "raise a significant prospect that the defendants would be adjudged liable to the Fund." Compl. ¶¶ 161-63. These allegations of demand futility are wholly insufficient as a matter of Massachusetts law.

First, plaintiff ignores controlling Massachusetts statutory law, which provides that the independent trustees are "independent and disinterested when making any determination or taking any action as a trustee." Mass. Gen. Laws, ch. 182, § 2B. That statute provides in full:

> This section shall apply to a trust that is an investment company, as defined in the Investment Company Act of 1940, and that is registered thereunder with the United States Securities and Exchange Commission.
>
> A trustee of a trust who with respect to the trust is not an interested person, as defined in the Investment Company Act of 1940, shall be deemed to be independent and disinterested when making any determination or taking any action as a trustee.

Mass. Gen. Laws, ch. 182, § 2B. Plaintiff acknowledges that the Trust is a registered investment company (Am. Compl. ¶ 7) and that the independent trustees have been designated as statutorily non-interested persons under the ICA (Initial Complaint ¶ 13). Plaintiff does not challenge the independent trustees' status as non-interested persons under the ICA. Indeed, plaintiff does not even purport to make any showing that the independent trustees somehow meet the ICA's definition of "interested." Consequently, the independent trustees are independent and

10

disinterested for all purposes, including for the consideration of any demand and, accordingly, plaintiff's failure to make demand cannot be excused.

Second, even putting the trustee disinterest provision aside, plaintiff's first allegation that demand would be futile because the trustees approved, voted to continue and failed to terminate the 12b-1 plans and agreements fails to establish director interest. Am. Compl. ¶ 161. Courts in this Circuit and elsewhere have routinely rejected futility arguments that are based on the theory that the directors approved of the transactions at issue. *See, e.g., In re Kauffman Mut. Fund Actions*, 479 F.2d at 265 ("Where mere approval of the corporate action, absent self-interest or some other indication of bias is the sole basis for establishing the directors' 'wrongdoing' and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed"); *Grossman v. Johnson*, 89 F.R.D. 656, 659 (D. Mass. 1981), *aff'd*, 674 F.2d 115 (1st Cir. 1982) ("[M]ere approval by directors of the alleged unlawful action does not constitute sufficient participation in that conduct to excuse demand upon them."); *Lewis v. Graves*, 701 F.2d 245, 248 (2d Cir. 1983) ("[A]bsent specific allegations of self-dealing or bias on the part of a majority of the board, mere approval and acquiescence are insufficient to render demand futile."). Most recently, in *ING*, this Court, in a factually similar case, rejected the plaintiffs' argument that demand would be futile because the trustees "specifically voted to approve [the fees], and thereafter specifically voted to continue [paying the fees]." *ING*, 2005 WL 1107072, at *5.

Third, plaintiff's second allegation that demand is futile – because the facts of the complaint, if true, "raise a significant prospect that the Trustee Defendants would be adjudged liable to the Fund" – also fails as a matter of law. Am. Compl. ¶ 162, quoting ALI Principles of Corporate Governance: Analysis and Recommendations § 1.23(c)(2) (1994). Plaintiff's selective quotation from Section 1.23 distorts the meaning of the provision. The relevant portion of § 1.23(c) provides that:

11

> A director is interested in an action . . . if . . . (2) The director is a
> defendant in the action, except that the fact a director is named as a
> defendant does not make the director interested under this section
> if the complaint against the director: (A) is based only on the fact
> that the director approved of or acquiesced in the transaction or
> conduct that is the subject of the action, and (B) does not otherwise
> allege with particularity facts that, if true, raise a significant
> prospect that the director would be adjudged liable to the
> corporation or its shareholders.

*Harhen*, 703 N.E.2d at 865 n.5 (quoting ALI Principles, § 1.23). As stated in the Official

Comment to § 1.23, "if the gravamen of a complaint against a director is based only on the fact

that the director approved of or acquiesced in the transaction or conduct that is the subject of the

action, the court should disregard the plaintiff's different labeling of the claim . . ." and such a

director is not "interested." ALI Principles, § 1.23 cmt. Here, the gravamen of plaintiff's claim

against the independent trustees is that the independent trustees approved of and failed to

terminate the 12b-1 plan and agreements. Am. Comp. ¶ 153. Plaintiff does not "otherwise

allege with particularity" any facts about the independent trustees that, if true, raise a significant

prospect that they would be found liable.[8] *Id.* (emphasis added). Accordingly, the ALI

Principles do not support plaintiff's demand futility argument. Plaintiff has therefore failed to

make any allegations establishing that demand is excused.

---

[8]    Moreover, the provision relied upon by plaintiff does not apply here. As stated in the Official Comment to the
section quoted by plaintiff: "The only application of [the section relied upon by Plaintiffs] involves cases where
the corporation rejects a demand (see § 7.04), moves to dismiss a complaint on the ground that the action is
contrary to the corporation's best interests (see §§ 7.08, 7.11) or seeks to settle the action without the consent of
plaintiff (see § 7.15)." ALI Principles, § 1.23 cmt. Here, the Trust has not rejected a demand; the trustees have
not moved to dismiss the Amended Derivative Complaint on the ground that the action is contrary to the Trust's
best interests; and the trustees have not sought to settle the action without the consent of plaintiff.

## II. PLAINTIFF'S CLAIM AGAINST THE INDEPENDENT TRUSTEES FOR VIOLATION OF § 36(a) OF THE ICA MUST BE DISMISSED BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER § 36(a).

In Count II of the Amended Derivative Complaint, plaintiff purports to assert a private action against all defendants for violating § 36(a) of the ICA, for alleged breach of fiduciary duty. This cause of action also must be dismissed because there is no private right of action under § 36(a) of the ICA.

The ICA does not provide an *express* cause of action under § 36(a) to private civil litigants. *See* 15 U.S.C. § 80a-35(a) (providing that "The Commission [SEC] is authorized to bring an action . . ."). Therefore, plaintiff's claim under this section would only be actionable if an *implied* private right of action existed under § 36(a). Recent case law from the Supreme Court and elsewhere confirms that no private right of action exists under § 36(a).

In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court severely limited the extent to which courts may imply private rights of action under federal statutes. *See also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 n.3 (2001) (noting that the Supreme Court has "retreated from [its] previous willingness to imply a cause of action where Congress has not provided one."). In *Sandoval*, the Court explained that what is "determinative" is "statutory intent" "to create not just a private right but also a private remedy": "[w]ithout [this statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable it may be, or how compatible with the statute." 532 U.S. at 286-87; *see also Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 434 (2d Cir. 2002) (noting primacy of congressional intent to inquiry). As *Sandoval* instructs, the text of the statute, not "contemporary legal context," drives the inquiry. *See Sandoval*, 532 U.S. at 287. Shortly after *Sandoval* was decided, the Second Circuit applied these principles in *Olmsted* to hold that there was no implied private right of action under two sections of the ICA (§§ 26(f), 27(j)). *See Olmsted*, 283 F.3d at 434.

13

Decisions finding implied private rights of action under the ICA were handed down prior to *Sandoval* and *Olmsted* and are now considered part of an "*ancien regime*." *Olmsted*, 283 F.3d at 434, quoting *Sandoval*, 532 U.S. at 287; *Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, No. 02 CV 5870(SJ), 2005 WL 195520, at *4 (E.D.N.Y. Jan. 21, 2005), *vacated due solely to settlement*, Apr. 12, 2005.[9]   Indeed, the First Circuit has recognized that "[b]ecause ... *Sandoval* changed the legal landscape [with respect to private rights of action under federal statutes], we regard that pre-*Sandoval* decision as lacking continued vitality." *Bonano v. E. Caribbean Airline Corp.*, 365 F.3d 81, 86 (1st Cir. 2004).

And, indeed, since *Sandoval* and *Olmsted*, district courts have uniformly refused to imply a private right of action under various sections of the ICA, including, under § 36(a).  *See Mutchka v. Harris*, No. SACV0534JVSANX, 2005 WL 1414304, at *4 (C.D. Cal. June 8, 2005) (applying *Sandoval* and *Olmsted*, dismissing §36(a) claim with prejudice based on no private right of action, and noting that that "cases decided after *Sandoval* have refused to find an implied private right of action in the ICA"); *Chamberlain*, 2005 WL 195520, at *2-*4 (applying *Sandoval* and *Olmsted* and granting defendants' motion to dismiss 36(a) because "it is evident that the provision does not give rise to a  private right of action.").  In fact, since *Olmsted*, we are not aware of any federal court finding an implied private right of action under any section of the ICA.  *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 258 (S.D.N.Y. 2003) ("[S]ince the Second Circuit's decision in *Olmsted*, there appear to have been

---

[9]   The decision in *Chamberlain* was vacated solely for the purposes of settlement. *See Chamberlain v. Aberdeen Asset Mgmt. Ltd.*, No. 02 CV 5870 (SJ), 2005 WL 1378757 (E.D.N.Y. Apr. 12, 2005) ("this [Order] does not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued Order; rather, the Motion [to vacate] is granted simply in order to permit the parties to proceed to settlement.").

no decisions in which a court has found an implied private right of action under any section of the 1940 Act.").[10]

As the recent decisions in *Mutchka* and *Chamberlain* demonstrate, application of the *Sandoval-Olmsted* rationale demonstrates that there is no private right of action under § 36(a).

First, a consideration of the "text and structure" of the statute demonstrates that no private right of action exists. *Sandoval*, 532 U.S. at 288. The plain language of § 36(a) provides that "[t]he Commission [SEC] is authorized to bring an action . . . ," and does not provide a private right of action for private plaintiffs. 15 U.S.C. § 80a-35(a). In these circumstances, "a court must presume that Congress did not intend to create" a private right of action. *Chamberlain*, 2005 WL 195520, at *2; *Mutchka*, 2005 WL 141304, at *4 (noting that § 36(a) specifically authorizes the SEC, but not private individuals, to bring an action to enforce § 36(a)).

Second, § 36(a) does not contain any "rights-creating language." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002); *see also Olmsted*, 283 F.3d at 435 ("A statutory provision that does not use rights-creating language, in a statute that provides for other remedies and contains explicit private rights of action to enforce other sections, creates no ambiguity on the question of an implied private right of action that legal context might clarify."). Section 36(a) creates no duties or liabilities and prohibits nothing. It merely authorizes the SEC to bring suit for breach of fiduciary duty. *See In re Carl L. Shipley*, ICA Release No. IC-8394, 1974 WL 161761, at *3

---

[10] *See also, e.g. DH2, Inc. v. Athanassiades*, No. 04 C 0487, 359 F.Supp. 2d 708, 714-15 (N.D. Ill. Mar. 10, 2005) (no implied private right of action under § 17(j) of the ICA); *In re Van Wagoner Funds, Inc.*, No. C 02-3383 JSW, 2004 WL 2623972, at *11-12 (N.D. Cal. July 27, 2004) (no implied private right of action under § 34(b) of the ICA); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. at 255-59 (same); *meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners, L.P.*, 260 F. Supp. 2d 616, 621-25 (S.D.N.Y. 2003) (no implied private right of action under § 12(d)(1)(A) of the ICA); *White v. Heartland Yield Mun. Bond Fund*, 237 F. Supp. 2d 982, 987 (E.D. Wis. 2002) (no implied private right of action under §§ 22 and 34(b) of the ICA); *Dorchester Investors v. Peak Int'l Ltd.*, 134 F. Supp. 2d 569, 581 (S.D.N.Y. 2001) (no implied private right of action under § 34(b) of the ICA).

(June 21, 1974) ("Neither before the amendment nor afterwards, does Section 36 in terms make anything unlawful. It simply authorizes the Commission to file an action in the Federal court and empowers the court to grant appropriate relief.").[11]

Third, § 36(a) authorizes the SEC to bring an action, and § 42 of the ICA vests the SEC with the power to investigate alleged violations of the ICA and to bring actions in district courts to enforce the provisions of the ICA. *See* 15 U.S.C. § 80a-41. This strongly suggests that Congress intended to preclude private rights of action as a mechanism for enforcing the ICA's provisions. *See Sandoval*, 532 U.S. at 290 ("[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); *Chamberlain*, 2005 WL 195520, at *3 (same); *Olmsted*, 283 F.3d at 433.

Fourth, that Congress created an express private right of action under § 36(b), but not under §36(a) is compelling evidence that Congress did not intend to provide a private right of action under § 36(a):

> Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional. . . . [I]f Congress wished to create a private right of action for violations of Section 36(a), it could have done so, as it did for Section 36(b).

*Chamberlain*, 2005 WL 195520, at *3 (internal quotation marks omitted); *see also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) ("It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another") (internal quotation marks omitted); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979) ("when Congress wished to provide a private damage remedy, it knew how

---

[11]    Section 36(a)'s reference to "the protection of investors" is not rights-creating language. As the *Chamberlain* court correctly noted, "[t]o the extent that [§ 36(a)] mentions investors, it is only to say that a court, in awarding relief after the [SEC] has established its allegations of breach of fiduciary duty, should give 'due regard to the protection of investors and to the effectuation of the policies declared in section 80a-1(b) of this title.'"

to do so and did so expressly."); *Olmsted*, 283 F.3d at 433 (the inclusion in the ICA of a private

right of action to enforce one section "suggests that omission of an explicit private right of action

to enforce other sections was intentional"); *Mutchka*, 2005 WL 1414304, at *4 (finding

"particularly instructive" the fact that Congress provided an express right of action under §

36(b), but not § 36(a) and stating that "Congress certainly knows how to create a private right of

action when it wants to.").

Accordingly, no private right of action exists under § 36(a) of the ICA and Count II of the

Amended Derivative Complaint should be dismissed.

### III.    PLAINTIFF'S CLAIMS AGAINST THE INDEPENDENT TRUSTEES SHOULD BE DISMISSED BECAUSE THERE ARE NO ALLEGATIONS THAT THE INDEPENDENT TRUSTEES' ACTS WENT BEYOND THE SCOPE OF THOSE PROTECTED UNDER THE TERMS OF THE DECLARATION OF TRUST

The Trust, of which the Fund is a series, is a Massachusetts business trust. Am. Compl. ¶

7. To operate as a Massachusetts business trust, the Trust must be organized pursuant to a

declaration of trust. *See* Mass. Gen. Laws ch. 182, § 2. Under the Declaration of Trust, as

amended and restated, a trustee cannot be held liable to the Trust or its shareholders for any

action or failure to act except for "his own willful misfeasance, bad faith, gross negligence or

reckless disregard of the duties involved in the conduct of his office." Amended and Restated

Declaration of Trust of Eaton Vance Government Obligations Trust, dated August 17, 1993 (Ex.

1); *see also* Mass. Gen. Laws, ch. 156D, § 2.02(b)(4); *New England Trust Co. v. Paine*, 59

N.E.2d 263, 269-70 (1945).[12]  Plaintiff's claims against the independent trustees must be

---

*Chamberlain*, 2005 WL 195520, at *3 (citation omitted). The responsibility, and right, to initiate an action contemplated by § 36(a) is vested exclusively in the SEC.

[12]    The Declaration of Trust is filed with the Securities and Exchange Commission and is publicly available with the Commonwealth of Massachusetts' Secretary of State's Office; its authenticity is not subject to dispute and under Fed. R. Evid. 201, the court may take judicial notice of it. It therefore may be referred to and relied on in a motion to dismiss. *See Hogan v. Eastern Enters./Boston Gas*, 165 F. Supp. 2d 55, 58 (D. Mass. 2001) (stating that court may consider official public records in deciding motion to dismiss).

dismissed because the Amended Derivative Complaint fails to contain any specific allegations of wrongdoing rising to this level of misconduct. The only alleged wrongful conduct is the Trustees' approval of the continuation of the 12b-1 plan and agreements and their failure to terminate the plans and agreements. *See* Am. Compl. ¶ 153. The Amended Derivative Complaint contains no well-pleaded facts alleging any conduct by the independent trustees that, even if true, would constitute "willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of [their] office." Accordingly, plaintiff has failed to state a claim against the independent trustees upon which relief can be granted. *See Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993) ("[B]ecause only well pleaded facts are taken as true, we will not accept a complainant's unsupported conclusions of law.").

## IV.    PLAINTIFF'S CLAIMS AGAINST THE INDEPENDENT TRUSTEES MUST BE DISMISSED FOR FAILURE TO VERIFY THE COMPLAINT AS REQUIRED BY FED. R. CIV. P. 23.1

Plaintiff failed to verify the Amended Derivative Complaint, despite the fact that Federal Rule of Civil Procedure 23.1 requires that in all derivative actions brought by shareholders "***the complaint*** shall be verified...." Fed. R. Civ. P. 23.1 (emphasis added). Instead, plaintiff merely stated that the allegations of paragraph 5 of the Amended Derivative Complaint, which concern her ownership and purchase of shares in the Fund and her residence in Massachusetts, are true and accurate to the best of her knowledge and belief. *See* February 17, 2005 Declaration of Michelle Yameen, attached to the Amended Derivative Complaint. Plaintiff did not verify any of the other allegations in her 45-page, 176-paragraph Amended Derivative Complaint, which accuse the independent trustees of violation of a federal securities law and breach of fiduciary duty under state law. Plaintiff's statement does not constitute verifying "the complaint." Fed. R. Civ. P. 23.1.

18

The verification of a derivative complaint serves a significant purpose and should not be taken lightly or ignored. "Verification is another safeguard to ensure that complaints in derivative suits are well-grounded in fact and to prevent frivolous litigation." *In re Stratus Computer, Inc. Sec. Litig.*, No. Civ. A. 89-2075-Z, 1992 WL 73555, at \*10 (D. Mass., Mar. 27, 1992). Plaintiff's failure to verify the Amended Derivative Complaint violated Rule 23.1 and her claims should accordingly be dismissed. *See id.* (dismissing derivative clam where plaintiff failed to satisfy the verification requirement of Rule 23.1); *Abeloff v. Barth*, 119 F.R.D. 332, 334 (D. Mass. 1988) (describing the verification requirement as a "mandatory prerequisite[]" to the maintenance of a derivative suit and stating that failure to satisfy the verification requirement "is grounds for dismissal of a derivative action"); *DDH Aviation, L.L.C. v. Holly*, No. Civ.A.3:02-CV-2598-P, 2005 WL 770595, at \*5 (N.D. Tex. March 31, 2005) (granting motion to dismiss derivative claims where plaintiff failed to verify the complaint).[13]

---

[13]   Plaintiff's state law claim also should be dismissed for lack of subject matter jurisdiction. Diversity jurisdiction does not exist in the present case. *See* Am. Compl. ¶¶ 5, 8-11 (plaintiff and certain defendants alleged to reside in Massachusetts). In the absence of diversity jurisdiction, where claims arising under federal law are dismissed on a motion for failure to state a claim upon which relief can be granted, any remaining state law claims should be dismissed as well. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.")

## CONCLUSION

For the foregoing reasons, the two counts in the Amended Derivative Complaint asserted against the independent trustees (Counts II and III) should be dismissed with prejudice.

Respectfully submitted,

DONALD R. DWIGHT, SAMUEL L. HAYES,
WILLIAM H. PARK, RONALD A. PEARLMAN,
NORTON H. REAMER, LYNN A. STOUT, and
JACK L. TREYNOR

*/s/ Stuart M. Glass*
James S. Dittmar (BBO# 126320)
Stuart M. Glass (BBO# 641466)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Dated: June 30, 2005

LIBA/1561347.4

20