UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHELLE YAMEEN,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>EATON VANCE DISTRIBUTORS, INC., *et al.*,<br><br>　　　　Defendants, and<br><br>EATON VANCE TAX-MANAGED GROWTH FUND 1.1,<br><br>　　　　Nominal Defendant. | Civil Action No. 03-12437- DPW |

### DECLARATION OF THEODORE M. HESS-MAHAN PURSUANT TO FED. R. CIV. P 56(f) IN OPPOSITION TO MOTION OF EATON VANCE DISTRIBUTORS, INC. TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I, Theodore M. Hess-Mahan, hereby depose and say:

1.　　I am counsel to the Plaintiff in the above-referenced action.

2.　　I submit this Declaration, pursuant to Fed. R. Civ. P. 56(f), in opposition to the portion of Motion of Eaton Vance Distributors, Inc. to Dismiss, or in the Alternative, for Summary Judgment, in which the Distributors seeks summary judgment pursuant to Fed. R. Civ. P. 56.

3.　　As discussed and detailed in Plaintiff's Memorandum of Law in Opposition to Motion of Eaton Vance Distributors, Inc.'s to Dismiss or, in the Alternative, for Summary Judgment, the core issue in this case is, in light of the fact that the trustees determined, as of March 1, 2001, that it was no longer in the best interests of the Fund and the shareholders of the Fund, for additional shares of the Fund to be sold to the public, could the trustees, "…in the exercise of their fiduciary

duties under state law and under sections 36(a) and 36(b) of the [1940] Act…" have concluded "…that there is a reasonable likelihood that [the continuation of] the plan will benefit the [Fund] and its shareholders…" Rule 12b-1(e).

4. As also demonstrated in Plaintiff's Memorandum, Section 36(b)(2) of the Investment Company Act of 1940 (the "1940 Act") provides that:

> (2) In any such action approval by the board of directors of such investment company of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments...shall be given such consideration by the court as is deemed appropriate **under all the circumstances**.

Section 36(b)(2) (emphasis added).

5. There are two different Rule 12b-1 distribution fees which are paid by the Fund to Distributors, and which are at issue in this action:

- the Rule 12b-1 fees sometimes described as a "Sales Charge," which the Class B and Class C shares of the Fund pay at the rate of .75% per year of the assets of the Class B and Class C shares of the Funds (the ".75% Distribution Fee"); and

- the Rule 12b-1 fees sometimes described as "Trail Commissions" or "Service Fees," which all of the classes of the Fund – Class A, Class B and Class C – pay at a rate of .25% per year of the assets of all classes of the Fund (the ".25% Distribution Fee").

Complaint ¶¶34-37. The .75% Distribution Fee is credited against funds previously advanced by Distributors. The .25% Distribution Fee, however, does not pay for or reimburse Distributors for any commissions or other expenses that it previously advanced. Rather, those payments are additional payments made each year after the Fund was closed to new investors.

6. Discovery in this case has been limited thus far to the production of some but not all relevant documents, and depositions of key witnesses, including but not limited to the Trustees of the Fund and Rule 30(b)(6) designees of Distributors, have not yet been taken. For the reasons stated in the accompanying Memorandum, it is important to have discovery of "all the circumstances" involved in the decision by the Trustees of the Fund to continue the Rule 12b-1 Plans and Distribution Agreements at issue in this case, after the Fund ceased selling its shares to the public, including the payment or reimbursement of Sales Charges and Service Fees after the Fund was closed to new investors. Moreover, although there does not appear to be any dispute that the Service Fees are for additional payments for services provided each year after the Fund was closed to new investors and not for expenses previously incurred, Plaintiff alleges that the services rendered in exchange for the annual 0.25% Distribution Fees were *de minimis*, and decreasing as a result of the closing of the Fund, and that the service fee was excessive. Amended Derivative Complaint ¶50. To the extent Distributors dispute these facts, however, Plaintiff will need to obtain further discovery.

7. In addition, in order for Plaintiff to provide the Court with a full factual record, reflecting "all the circumstances" involved in the decision by the Trustees of the Fund to continue the Rule 12b-1 Plans and Distribution Agreements at issue in this case, after the Fund ceased selling its shares to the public, the Plaintiff will need to obtain discovery, including but not limited to, the following:

    a. Depositions of each of the Trustees of the Fund;

    b. Depositions of appropriate Rule 30(b)(6) designees of Distributors.

8. For the reasons set forth in Plaintiff's Memorandum of Law in Opposition to

Motion of Eaton Vance Distributors, Inc., To Dismiss Or, in the Alternative, for Summary Judgment, plaintiff believes that the Distributors' motion should be denied on the record currently before the Court. However, if the Court should conclude that the Distributors might be entitled to summary judgment on the record currently before the Court, then the plaintiff requests that the Court, pursuant to Fed. R. Civ. P. 56 deny the Motion for Summary Judgment, in order to afford the plaintiff the opportunity to obtain the necessary discovery, including but not limited to, the discovery described above, in order to obtain facts with which to oppose the Distributors' Motion for Summary Judgment.

9. In further support of Plaintiff's opposition to Distributors' motion, attached hereto as exhibits are true and correct copies of the following:

Exhibit 1. Relevant excerpts from Eaton Vance Tax Managed Growth Fund 1.1, Statement of Additional Information dated May 1, 2003.

Exhibit 2. Distribution Agreement, effective March 1, 2001, between Eaton Vance Mutual Funds Trust and Eaton Vance Distributors, Inc.

Exhibit 3. Relevant excerpts from Eaton Vance Tax Managed Growth Fund 1.1 Annual Report for Year Ended December 31, 2001.

Exhibit 4. Relevant excerpts from Eaton Vance Tax Managed Growth Fund 1.1 Annual Report for Year Ended December 31, 2002.

Exhibit 5. Relevant excerpts from Eaton Vance Tax Managed Growth Fund 1.1 Annual Report for Year Ended December 31, 2003.

Exhibit 6. Relevant excerpts from Eaton Vance Tax Managed Growth Fund 1.1 Annual Report for Year Ended December 31, 2004.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on August 15, 2005.

                                              **/s/Theodore M. Hess-Mahan**
                                              Theodore M. Hess-Mahan