**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MICHELLE YAMEEN,

       **Plaintiff,**

vs.

EATON VANCE DISTRIBUTORS, INC.,
*et al.*,

       **Defendants, and**

EATON VANCE TAX-MANAGED
GROWTH FUND 1.1,

       **Nominal Defendant.**

**Civil Action No. 03-12437- DPW**

**PLAINTIFF'S RESPONSE TO STATEMENT OF MATERIAL FACTS**
**NOT IN DISPUTE IN SUPPORT OF EATON VANCE DISTRIBUTORS, INC.'S**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Plaintiff hereby submits her Response to Statement of Material

Facts Not In Dispute in Support of Eaton Vance Distributors, Inc.'s Motion to Dismiss or, in the

Alternative, for Summary Judgment.

Plaintiff respectfully submits, as explained in the accompanying memorandum of law in

opposition to the motion to dismiss or, in the alternative, for summary judgment filed by Eaton

Vance Distributors, Inc. ("Distributors"), that Distributors ignores a series of important factual

issues relevant to the resolution of the ultimate issues in this case, including, without limitation,

whether Distributors fulfilled its fiduciary obligations, and, taking into account all the surrounding

circumstances, whether the fees paid to Distributors were excessive.  Because these factual issues

simply are not addressed and most likely are contested by Distributors, the purported undisputed

facts addressed below are insufficient for Defendant to prevail as a matter of law at this stage in the

litigation.

Plaintiff responds to each Statement as follows:

**Distributors' Statement No. 1:**

Eaton Vance Tax-Managed Growth Fund 1. 1 (the "Fund") is an open-end management investment company, or mutual fund, and a series of Eaton Vance Mutual Funds Trust ("Trust"). See Decl. ¶ 2. The Fund was "closed" to new investors on March 1, 2001, in that it stopped sales of shares to persons who were not existing shareholders. The Fund has continued to sell shares to current shareholders. *Id.*

**Plaintiff's Response to Distributors' Statement No. 1:**

Undisputed, except to the extent that Distributors' statement that "The Fund has continued

to sell shares to current shareholders" wrongly suggests that Distributors continues to perform the

type of distribution services it performed prior to March 1, 2001.  Further answering, Plaintiff states

that the number of Class B and Class C shares have steadily declined since the Fund has closed as

follows:

| Date | Class B Shares Outstanding | Class C Shares Outstanding |
|---|---|---|
| December 31, 2001[1] | 166,790,226 | 63,150,169 |
| December 31, 2002[2] | 137,468,307 | 50,843,023 |
| December 31, 2003[3] | 117,488,471 | 43,156,108 |
| December 31, 2004[4] | 92,906,722 | 36,214,323 |

[1]*See* Eaton Vance Tax Managed Growth Fund 1.1, Annual Report for December 31, 2001, attached as Exhibit 3 to the Declaration of Theodore M. Hess-Mahan Pursuant to Fed. R. Civ. P 56(f) in Opposition To Motion of Eaton Vance Distributors, Inc. to Dismiss Or, in the Alternative, for Summary Judgment ("Hess-Mahan Decl."), at pages 13-14.

[2]*See* Eaton Vance Tax Managed Growth Fund 1.1, Annual Report for December 31, 2002, attached as Exhibit 4 to the Hess-Mahan Decl., at pages 13-14.

[3]*See* Eaton Vance Tax Managed Growth Fund 1.1, Annual Report for December 31, 2003, attached as Exhibit 5 to the Hess-Mahan Decl., at page 19.

[4]*See* Eaton Vance Tax Managed Growth Fund 1.1, Annual Report for December 31, 2004, attached as Exhibit 6 to the Hess-Mahan Decl., at page 7.

**Distributors' Statement No. 2:**

Distributors serves as the Trust's principal underwriter pursuant to an Amended and Restated Distribution Agreement effective as of June 16, 2003 ("Distribution Agreement"). A copy of the Distribution Agreement is attached as Exhibit A to the Declaration. See Decl. ¶ 3.

**Plaintiff's Response to Distributors' Statement No. 2:**

Undisputed.

**Distributors' Statement No. 3:**

The Distribution Agreement governs the distribution of Fund shares, including Class A, Class B and Class C shares, which are principally sold through broker-dealers or other financial institutions. Decl. ¶4. The Trust's Board of Trustees has approved the Distribution Agreement. Decl. ¶4.

**Plaintiff's Response to Distributors' Statement No. 3:**

Undisputed except to the extent that Distributors' statement can be read to suggest that the

Fund's Board of Trustees' approval of the Distribution Agreement was consistent with its fiduciary

obligations.

**Distributors' Statement No. 4:**

The Fund has adopted a Class B Distribution Plan and a Class C Distribution Plan and a Class A Service Plan. True and correct copies of these Plans are attached as Exhibits B, C, and D to the Declaration, respectively. The Trust's Board of Trustees has approved the Class B Distribution Plan, the Class C Distribution Plan, and the Class A Service Plan. Decl. ¶5, Exhibits B, C and D respectively.

**Plaintiff's Response to Distributors' Statement No. 4:**

Undisputed except to the extent that Distributors' statement can be read to suggest that the

Fund's Board of Trustees' approval of the Distribution Agreement was consistent with its fiduciary

obligations.

**Distributors' Statement No. 5:**

As explained in the Fund's Prospectus, purchasers of Class A shares pay a sales charge or "front-end load" calculated as a percentage of the purchase price. Decl. ¶6. The front-end load is paid to Distributors, which uses it to pay commissions to the selling broker-dealer and other distribution expenses. Decl. ¶6.

**Plaintiff's Response to Distributors' Statement No. 5:**

Undisputed, except to the extent the statement implies that Distributors cannot or does not

profit from the sales charge.  May 1, 2003 Statement of Additional Information at 17, attached as

Exhibit 1 to Hess-Mahan Decl.

**Distributors' Statement No. 6:**

Purchasers of Class B and Class C shares do not pay front-end loads. Brokers' commissions
and other expenses incurred in connection with the distribution of Class B and Class C shares are
paid by Distributors. Decl. ¶7.

**Plaintiff's Response to Distributors' Statement No. 6:**

Undisputed, but subject to the fact that Distributors paid those brokers commissions and

other expenses incurred in connection with the distribution of Class B and Class C shares pursuant

to a Distribution Agreement with the Fund which Distributors knew could be terminated by the Fund

on 60 days notice without penalty, and without the Fund having any further obligation to

Distributors with respect to the brokers' commissions and other expenses incurred in connection

with the distribution of Class B and Class C shares paid by Distributors.  O'Connor Decl. ¶5, Exhibit

A ¶9(b), Exhibit B ¶10, and Exhibit C ¶10.

**Distributors' Statement No. 7:**

Pursuant to the Distribution Agreement, the Fund has agreed to pay Distributors a
commission of 5% and 6.25% on each sale of Class B and Class C shares, respectively, plus interest
on outstanding amounts. Decl. ¶8; Distribution Agreement (Exhibit A to Declaration) ¶5(c). That
commission and interest component are paid through the accrual of an amount equal to .75% per
annum. of the net asset value of the Fund's Class B and Class C shares. The fee is calculated daily
and paid monthly. Decl. ¶8; Distribution Agreement (Exhibit A to Declaration) ¶5(d).

**Plaintiff's Response to Distributors' Statement No. 7:**

Undisputed, but subject to the fact that Distributors paid those brokers commissions and

other expenses incurred in connection with the distribution of Class B and Class C shares pursuant

to a Distribution Agreement  with the Fund which Distributors knew could be terminated by the

Fund on 60 days notice without penalty, and without the Fund having any further obligation to

Distributors with respect to the brokers' commissions and other expenses incurred in connection

with the distribution of Class B and Class C shares paid by Distributors.  *See* O'Connor Decl. ¶5,

Exhibit A ¶9(b), Exhibit B ¶10, and Exhibit C ¶10.

**Distributors' Statement No. 8:**

Under Paragraph 5(c) of the Distribution Agreement, the Fund may make such payments to
Distributors only after and as a result of the sale of Fund shares. Decl. ¶9; Distribution Agreement
(Exhibit A to Declaration) ¶5(c).

**Plaintiff's Response to Distributors' Statement No. 8:**

Undisputed, but subject to the fact that Distributors paid those brokers commissions and

other expenses incurred in connection with the distribution of Class B and Class C shares pursuant

to a Distribution Agreement  with the Fund which Distributors knew could be terminated by the

Fund on 60 days notice without penalty, and without the Fund having any further obligation to

Distributors with respect to the brokers' commissions and other expenses incurred in connection

with the distribution of Class B and Class C shares paid by Distributors.  *See* O'Connor Decl. ¶5,

Exhibit A ¶9(b), Exhibit B ¶10, and Exhibit C ¶10.

**Distributors's Statement No. 9:**

The amounts that are due and payable to Distributors are referred to as "uncovered
distribution charges" and are tracked by share class on a daily basis by the Fund administrator. Decl.
¶10; Distribution Agreement (Exhibit A to Declaration) ¶5(d).

**Plaintiff's Response to Distributors's Statement No. 9:**

Disputed.  The "uncovered distribution charges" are not obligations of the Fund or "due and

payable to Distributors."   The Fund's financial statements reflect that the Fund and its auditor,

Deloitte & Touche LLP, fully understand that the Fund is under no legal obligation to pay

Distributors the "uncovered distribution charges."  As indicated on page 16 of the Fund's Annual

Report for 2002 (attached as Exhibit 4 to the Hess-Mahan Decl.),  the amount of the "uncovered

distribution charges" for the Fund's Class B and Class C shares, as of December 31, 2002, was

$86,884,581 and $86,489,100 respectively.  If the Fund was obligated to pay that $173,373,681 of

"uncovered distribution charges," that sum would have appeared on the Fund's financial statements

as a liability.  In fact, no such liability appears of the Fund's Statement of Assets and Liabilities,

which appears on page 7 of the Fund's Annual Report for 2002.

**Distributors' Statement No. 10:**

Pursuant to the Distribution Agreement, the Class B Distribution Plan, and the Class C Distribution Plan, each Class of shares makes monthly payments to Distributors until the amount of uncovered distribution charges for that Class reaches zero, at which time the .75 basis point distribution fee for that Class is not accrued or paid by that Class. Decl. ¶11; Distribution Agreement (Exhibit A to Declaration) ¶5(d); Class B Distribution Plan (Exhibit B to Declaration) ¶3; Class C Distribution Plan (Exhibit C to Declaration) ¶3.

**Plaintiff's Response to Distributors' Statement No. 10:**

Undisputed, but subject to the fact that Distributors paid those brokers commissions and

other expenses incurred in connection with the distribution of Class B and Class C shares pursuant

to a Distribution Agreement  with the Fund which Distributors knew could be terminated by the

Fund on 60 days notice without penalty, and without the Fund having any further obligation to

Distributors with respect to the brokers' commissions and other expenses incurred in connection

with the distribution of Class B and Class C shares paid by Distributors.  *See* O'Connor Decl. ¶5,

Exhibit A ¶9(b), Exhibit B¶ 10, and Exhibit C ¶ 10.

**Distributors' Statement No. 11:**

Also pursuant to the Distribution Agreement (Exhibit A to Declaration) ¶5(i) and the Class B Distribution Plan (Exhibit B to Declaration) ¶¶5, 15, the Class C Distribution Plan (Exhibit C to Declaration) ¶¶5, 15, and the Class A Service Plan (Exhibit D to Declaration) ¶¶1, 11, in addition to the distribution fees described above, a service fee at an annual rate of .25% of net assets is paid out of the assets of Class A, B, and C shares. Decl. ¶12. As stated in the Plans for these respective share classes, such payments are limited to service fees as defined in subsections (b) and (d) of Rule 2830. Decl. ¶12; Class A Distribution Plan (Exhibit B to Declaration) ¶¶5, 15; Class C Distribution Plan (Exhibit C to Declaration) ¶¶5, 15; Class A Service Plan (Exhibit D to Declaration) ¶¶1, 11. Accordingly, the payments are made either directly to brokers providing personal services to current Fund shareholders or to Distributors, which in turn pays such brokers for such services. Decl, ¶12.

**Plaintiff's Response to Distributors' Statement No. 11:**

The first two sentences of this statement are undisputed, subject to the fact that Distributors paid those service fees and other expenses incurred for services provided in connection with Class A, Class B and Class C shares pursuant to a Distribution Agreement with the Fund which Distributors knew could be terminated by the Fund on 60 days notice without penalty, and without the Fund having any further obligation to Distributors with respect to the reimbursement of service fees and other expenses incurred for services provided in connection with the Class A, Class B and Class C shares paid by Distributors. *See* O'Connor Decl. ¶5, Exhibit A ¶9(b), Exhibit B ¶10, and Exhibit C ¶10. The third sentence of this statement is disputed in that the 0.25% Service Fee does not pay for or reimburse Distributors for any commissions or other expenses that it previously advanced. Rather, those payments are additional payment made each year after the Fund was closed to new investors. Plaintiff alleges that the services rendered in exchange for the 0.25% annual service fee were *de minimis*, and decreasing as a result of the closing of the Fund, and that the service fee was excessive. Because discovery has been limited to date, Plaintiff cannot for the reasons set forth in the Hess-Mahan Decl. respond to Distributors' statement.

Dated: August 15, 2005

Respectfully submitted by the attorneys for the plaintiff,

**/s/Theodore M. Hess-Mahan**
Edward F. Haber (BBO No. 215620)
Michelle Blauner (BBO No. 549049)
Theodore M. Hess-Mahan (BBO No. 557109)
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
(617) 439-3939

OF COUNSEL:
Richard J. Vita (BBO No. 510260)
77 Franklin Street, 3rd Fl.
Boston, MA 02110
(617) 426-6566