# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

MICHELLE YAMEEN,

       Plaintiff,

    v.

EATON VANCE DISTRIBUTORS, INC., *et al.*,

       Defendants, and

EATON VANCE TAX-MANAGED
GROWTH FUND 1.1.,

       Nominal Defendant.

Civil Action No. 03-12437-DPW

## REPLY MEMORANDUM IN SUPPORT OF MOTION OF
## DEFENDANT EATON VANCE DISTRIBUTORS, INC.
## TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Wm. Shaw McDermott (BBO #330860)
Gregory R. Youman (BBO#648721)
Eileen E. Pott (BBO #662350)
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA 02109-1808
(617) 261-3100

Jeffrey B. Maletta, Esq.
Nicholas G. Terris, Esq.
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
1800 Massachusetts Avenue, N.W.
Washington, D.C. 20036
(202) 778-9000

*Attorneys for Defendant*
*Eaton Vance Distributors, Inc.*

# Table of Contents

Page

PRELMINARY STATEMENT ..................................................................................................... 1

DISCUSSION OF ALTERNATIVE GROUNDS FOR DISMISSAL ........................................... 2

I.      SECTION 36(b)(4) EXCLUDES 12b-1 PAYMENTS FROM § 36(b) ............................. 2

II.     EVEN SETTING ASIDE § 36(b)(4), § 36(b) DOES NOT ENCOMPASS AN
        ATTACK FOCUSED SOLELY ON DISTRIBUTION FEES .......................................... 4

III.    THE DISTRIBUTION PAYMENTS IDENTIFIED IN THE COMPLAINT ARE
        EXPRESSLY AUTHORIZED BY ICA § 22(b) AND THE RULES
        THEREUNDER AND CANNOT BE ATTACKED AS EXCESSIVE ............................. 7

IV.     DISTRIBUTORS IS ENTITLED TO SUMMARY JUDGMENT .................................... 11

        A.      Plaintiff Has Raised No Genuine Issue of Material Fact ..................................... 12

        B.      Plaintiff's Request for Relief Under Fed. R. Civ. P. 56(f) Is Frivolous .............. 12

CONCLUSION ......................................................................................................................... 15

Defendant Eaton Vance Distributors, Inc. ("Distributors") respectfully submits this Reply to Plaintiff's Memorandum of Law in Opposition to Motion of Eaton Vance Distributors, Inc. to Dismiss or, in the Alternative, for Summary Judgment (the "Opposition" or "Opp.").[1]

## PRELIMINARY STATEMENT

Plaintiff's Opposition underscores that the termination of this frivolous action is long overdue. Just two business days before the long-scheduled hearing on Distributors' motion to dismiss Plaintiff's initial § 36(b) complaint, which had been pending for nearly a year, Plaintiff requested a delay in the proceedings so that she could file an Amended Complaint. That pleading added two derivative claims against Distributors and several new parties.[2] Plaintiff added these claims even though, as she well knew, Massachusetts law foreclosed her right to bring them without first making demand on the board of trustees. After taking the Court's and Distributors' time with motion practice concerning whether she should be permitted to file the Amended Complaint, and then forcing Distributors to respond to her new derivative claims, Plaintiff has now announced, without explanation, that she is abandoning them. *See* Opp. at 1, nn.1-2.

Accordingly, all that remains of this case is Plaintiff's § 36(b) claim against Distributors for collecting distribution and service fees (at annual rates of .75% and .25%, respectively) after the Fund was closed to new investors. This is the same claim that was rejected by a recent case in this District involving the same plaintiff's attorney. *See* EV Mem. 1-4 (discussing *ING Principal Protection Funds Derivative Litig.*, 369 F. Supp. 2d 163 (D. Mass. 2005)). Plaintiff

---

[1]     Distributors' initial Memorandum in Support of its Motion to Dismiss or, in the Alternative, for Summary Judgment will be referred to hereinafter as the "EV Memorandum" or "EV Mem." This Reply incorporates the abbreviations and definitions used in the EV Memorandum.

[2]     Plaintiff compounded this delay by waiting until one business day before this hearing to notify the Court of the involvement of an attorney in the case whose participation caused the assigned judge to recuse himself.

does not, and cannot, dispute that the allegations dismissed in *ING* are identical in all material respects to those at bar. And her argument that *ING* is "fundamentally flawed," Opp. 7, 8, depends entirely on her contention that Rule 12b-1 somehow prohibits a fund's board from approving distribution and service fees unless the fund is currently seeking to attract additional shareholders as opposed to paying for distribution expenses advanced for the fund's benefit in prior years. *See* Opp. 8 (asserting that "the reasonableness or excessiveness of Rule 12b-1 fees must be judged in light of the benefits received by the shareholders or the Fund **during the period of time that fees are being paid**") (emphasis in original). As discussed in the EV Memorandum (at pp. 2-4, 7-9), this baseless argument has been rejected by this Court in *ING*, by the court in *Pfeiffer v. Bjurman Barry & Associates*, 2004 WL 1903075 at *1, *5 (S.D.N.Y. Aug. 26, 2004), and by the SEC and NASD.

Accordingly, the Amended Complaint should be dismissed, and this Court need read no further. For the sake of completeness, however, the remainder of this brief replies to Plaintiff's arguments opposing Distributors' alternative grounds for dismissal of Plaintiff's § 36(b) claim.

## DISCUSSION OF ALTERNATIVE GROUNDS FOR DISMISSAL

## I.    SECTION 36(b)(4) EXCLUDES 12b-1 PAYMENTS FROM § 36(b)

The EV Memorandum demonstrated that § 36(b)(4) expressly removes the 12b-1 fees at issue from the scope of § 36(b). EV Mem. 11-12. This is because (i) § 36(b)(4) provides that § 36(b) "shall not apply to compensation or payments made in connection with transactions subject to § 17 of this title [the ICA], or the rules, regulations or orders thereunder," EV Mem. 11-12, (ii) the SEC has made clear that, absent an exemptive rule, a 12b-1 plan would be a "joint transaction" forbidden by § 17(d) and Rule 17d-1, EV Mem. 12 n.11, and (iii) Rule 17d-3 specifically addresses (and thus governs) Rule 12b-1 plans. EV Mem. 12.

2

Plaintiff argues that 12b-1 payments cannot be "subject to Section 17" because "they are explicitly exempted from Section 17 of the Act by SEC Rule 17d-3." Opp. 9. To reach this result, Plaintiff selectively quotes from Rule 17d-3, Opp. 9, but omits the crucial clause of the rule: the exemption set forth by 17d-3 applies only "***Provided That: (a) such [12b-1] agreement is made in compliance with the provisions of [Rule 12b-1]***." Rule 17d-3 (emphasis added).

Thus, 12b-1 payments are regulated by § 17 and the SEC's rules thereunder or – in the language of § 36(b)(4) – are "payments made in connection with transactions subject to Section 17 of this title [the ICA], or the rules, regulations or orders thereunder." It is beyond serious dispute that Rule 17d-3 is a "regulation … []under Section 17," and, absent Rule 17d-3, 12b-1 plans would be forbidden by § 17 and Rule 17d-1. *See* EV Mem. 12. In other words, the 12b-1 plan and distribution agreement in this case unquestionably are "governed by" and must "conform … to the terms imposed by [§ 17 and the rules thereunder]." *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 547-48 (D.C. Cir. 2002) (discussing the meaning of "subject to" in another statutory context).[3] That the terms of the rules under § 17 incorporate the requirements of Rule 12b-1 is utterly beside the point.

In any event, Plaintiff cannot have it both ways. If, as Distributors states, the 12b-1 payments at issue comply with Rule 12b-1, they are covered by the Rule 17d-3 exemption but Plaintiff concededly has no claim. If, on the other hand, the distribution payments are not "made in compliance with the provisions of" Rule 12b-1 (as Plaintiff repeatedly alleges), Rule 17d-3's exemption does not apply and these payments are subject to § 17(d) and Rule 17d-1, so that § 36(b)(4) puts them beyond the reach of § 36(b) (*i.e.*, they are "subject to … Section 17 … or the rules, regulations or orders thereunder" even under Plaintiff's unduly cramped understanding

---

[3]     *See* EV Mem. 12 n.12 (citing cases). The cases cited by Plaintiff, Opp. 9-10 n.8, are not particularly germane, but in any event do not suggest a different definition of "subject to" that might apply in this context.

of the statutory phrase "subject to"). If, as Plaintiff contends, "nonsensical word game[s]," Opp.

10 n.9, are being played, it is Plaintiff who is playing them.

## II.    EVEN SETTING ASIDE § 36(b)(4), § 36(b) DOES NOT ENCOMPASS AN ATTACK FOCUSED SOLELY ON DISTRIBUTION FEES

The EV Memorandum also demonstrated that, even apart from the specific statutory

exclusion contained in § 36(b)(4), § 36(b) cannot be used to bring a case such as this that

narrowly focuses on distribution fees and lacks an allegation that the fees paid by the Fund are

disproportionate to the overall services provided to the Fund. *See* EV Mem. 13-14.

Plaintiff recognizes that Distributors has cited authorities that endorse this understanding

of the statute, but contends that these cases were "erroneously decided." Opp. 13. Plaintiff

advances two principal reasons for this assertion, each of which is incorrect.

First, Plaintiff contends that the statutory text of § 36(b) "demonstrates that actions can

be brought under § 36(b) against principal underwriters for excessive distribution fees." Opp. 10

(capitalization altered). This is so, Plaintiff maintains, because the second sentence of § 36(b)

provides that classes of persons listed in § 36(a)(2) (which includes principal underwriters such

as Distributors) may be sued for receipt of excessive compensation. Opp. 10-11. According to

Plaintiff, the legislative history supports this interpretation. *See* Opp. 14 (asserting that Senate

Report accompanying § 36(b) "is saying that all of the persons and entities identified [in § 36(a)]

have a fiduciary duty with respect to payments they receive from a mutual fund, and they can be

sued under § 36(b) for recovery of those payments").

Plaintiff has fundamentally misunderstood this aspect of § 36(b). As discussed in the EV

Memorandum (and to no relevant response in the Opposition), prior to § 36(b), investment

advisers and principal underwriters had no fiduciary duties with respect to their receipt of

compensation and were generally treated in the same manner as any other adverse party in an

arm's-length contractual relationship.  EV Mem. 17.  The first sentence of § 36(b) altered this state of affairs, but only to a limited extent: it provides that "the investment adviser" shall "be deemed to have a fiduciary duty with respect to the receipt of compensation for services" or "payments of a material nature" made either to the adviser itself or to its affiliated persons.  15 U.S.C. § 80a-35(b).  No person other than the investment adviser is deemed to have a fiduciary duty under § 36(b).  *See* EV Mem. at 14 n.14.  The second sentence of § 36(b) creates a right of action to enforce the fiduciary duty created in the first sentence and also authorizes a suit against "any other person enumerated in [§ 36(a)] **who has a fiduciary duty concerning such compensation or payments**."  15 U.S.C. § 80a-35(b) (emphasis added).[4]    In other words, the persons enumerated in § 36(a) other than the adviser may be sued only if (and only if) they had a *pre-existing* fiduciary duty with respect to their receipt of compensation.  *See* Senate Report 91-184 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4902.  As already discussed, however, principal underwriters generally do not have fiduciary duties with respect to their receipt of compensation, *see* EV Mem. 17, and Plaintiff has alleged no unusual circumstances suggesting that such duties should be imputed in this case.

Once the confusion caused by Plaintiff's invocation of non-existent fiduciary duties is dispelled, it is clear that, if Distributors may be sued under § 36(b), it is not because Distributors is a person listed in § 36(a).  Instead, it is only because the second sentence of § 36(b) also allows a plaintiff to sue affiliated persons (including an affiliated principal underwriter) of the investment adviser for breach of the adviser's fiduciary duty.  As the authorities cited by the

---

[4]    For reasons already indicated in the EV Memorandum and in the text, § 36(a) does not itself create any such duty with respect to receipt of compensation.  *See* EV Mem. 17, 19 n. 20.  Indeed, because an investment adviser is also one of the persons enumerated in § 36(a), Plaintiff's assertion that "all of the persons and entities identified [in § 36(a)] have a fiduciary duty with respect to payments they receive from a mutual fund," Opp. 14, would (improperly) render mere surplusage the first sentence of the § 36(b) creating such a fiduciary duty applicable only to investment advisers.  *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute.") (citations and internal quotation marks omitted).

Distributors and abundant legislative history – not merely "a single sentence" of the Senate

Report (Opp. 14) – demonstrate, the sole purpose of including affiliated persons as additional

potential defendants was to ensure that the adviser did not evade its fiduciary obligation.[5]  And in

asserting that an investment adviser has breached its fiduciary duty with respect to receipt of

compensation, a plaintiff may not cherry pick a discrete portion of the services provided by the

investment adviser, but must allege and prove that the compensation received by the adviser and

its affiliates is disproportionate to the overall services rendered.  *See* EV Mem. at 14 n.14 *citing*

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982).   As stated in

*Gartenberg*, to determine whether the adviser has breached its fiduciary duty:

> Congress intended that the court look at all the facts in connection with the
> determination and receipt of such compensation including ***all services rendered to
> the fund or its shareholders and all compensation and payments received***, in
> order to reach a decision as to whether the adviser has properly acted as a
> fiduciary in relation to such compensation.

694 F.2d at 930 *quoting* Senate Report 91-184 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897,

4910 (citation and internal quotation marks omitted, emphasis).[6]   Because it is necessary to

consider all services rendered and all compensation, a § 36(b) claim may not focus narrowly on

---

[5]        *See* Senate Report 91-184 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4902 ("[Section 36(b)'s] sole
purpose is to specify the fiduciary duty of the investment adviser with respect to compensation, and provide a
mechanism for court enforcement of this duty."); *id.* at 4910-11 ("The fiduciary duty of the investment adviser is
extended not only to compensation paid to the investment adviser but also to payments made by the investment
company or its shareholders to an affiliated person of the investment adviser.  This provision affords a remedy if the
investment adviser should try to evade liability by arranging for payments to be made not to the adviser itself but to
an affiliated person of the adviser."); *id.* at 4898 ("This bill would make it clear that, as a matter of Federal law, the
***investment adviser or mutual fund management company has a fiduciary duty*** ....  It provides an effective method
whereby the courts can determine whether there has been a breach of ***this duty*** by the adviser or by certain other
persons with respect to their compensation from the fund.") (emphasis added); *id.* at 4903 ("this section is designed
... to provide a means by which the Federal courts can effectively enforce the federally-created duty with respect to
management compensation").  The additional potential defendants may be sued for breach of the adviser's fiduciary
duty (and notwithstanding the lack of their own independent fiduciary duty) because, in the language of § 48(a) of
the ICA, it prevents the adviser from "indirectly ... caus[ing] to be done an[] act or thing through or by means of any
other person which it would be unlawful for such person to do under the provisions of this title" (*i.e.*, charging
excessive advisory fees and thereby violating its fiduciary duty with respect to the receipt of compensation).

[6]        *See also id.* at 928 (to determine whether adviser has breached its fiduciary duty, "all pertinent facts must
be weighed.") (citations and internal quotation marks omitted).

the cost or profitability of a single discrete service. *See Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 931 (2d Cir. 1982) (rejecting plaintiff's effort to "[p]roceed[] on the erroneous theory that only the administrative costs incurred by the Manager itself may be considered"; to allow this would "ignore the heavy costs incurred by other ... affiliates [of the adviser] in processing the increased volume of purchases and redemptions of Fund shares which were under the Manager's guidance"). *See also Benak v. Alliance Capital Mgmt. L.P.*, 2004 WL 1459249 at *8 (D.N.J. Feb. 9, 2004) ("under § 36(b) it is the *overall* nature and quality of the services provided by the investment adviser that is at issue--not merely some small percentage of those services.").

Second, Plaintiff also argues that Distributors' position is inconsistent with Second and Third Circuit authority. Opp. 11-13. This is incorrect. The three cases Plaintiff cites involved challenges to the advisory or overall services provided to the mutual fund at issue and thus are fully consistent with Distributors' position.[7] As discussed above, moreover, Distributors' position is affirmatively supported by cases decided in the Second and Third Circuits.

## III. THE DISTRIBUTION PAYMENTS IDENTIFIED IN THE COMPLAINT ARE EXPRESSLY AUTHORIZED BY ICA § 22(b) AND THE RULES THEREUNDER AND CANNOT BE ATTACKED AS EXCESSIVE

The EV Memorandum also demonstrated that, because the .75% distribution fee and the .25% service fee comply with the comprehensive regulatory scheme under § 22(b) and NASD

---

[7]     *Krantz v. Prudential Investments Fund Mgmt. LLC*, 305 F.3d 140, 143-44 (3rd Cir. 2002) affirmed the dismissal of a 36(b) complaint pursuant to Fed. R. Civ. P. 12(b)(6) and provides no support whatsoever to Plaintiff's position. *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76, 83 (2nd Cir. 1985), stated: "[a] claim that payments made under rule 12b-1 are excessive **when combined with advisory fees**, where both payments are made to 'affiliated persons' of an investment adviser, is cognizable under section 36(b)" (emphasis added). Plaintiff has not alleged that the Fund's advisory fees are excessive either alone or combined with 12b-1 fees. *Meyer v. Oppenheimer Mgmt. Corp.*, 895 F.2d 861, 866-77 (2nd Cir. 1990), simply held that, given the finding of fact by the district court in that case that payments for two entirely different services (investment advisory fees and 12b-1 fees) were not excessive when viewed separately, aggregating the payments would not lead to a different result.

Rule 2830, these fees cannot be deemed legally excessive under § 36(b) and the Amended

Complaint must be dismissed.  EV Mem. 14-17.

Plaintiff effectively concedes that there is no material factual dispute in this case: she

acknowledges that "*[n]o claim is made in this case that Distributors is violating NASD Rule*

*2830*."  Opp. 16 (emphasis added).  This concession destroys any argument that the fees are

legally excessive.  As discussed in the EV Memorandum, EV Mem. 15, in approving this rule,

the SEC found that Rule 2830:

> *carries out the NASD's congressional mandate to prevent excessive sales*
> *charges on mutual fund shares*.  The [SEC] believes that the proposed rule
> change appropriately balances the need to ensure that the NASD's rules allow …
> underwriters to receive reasonable compensation, against the need to ensure that
> investors are charged reasonable sales loads.

Inv. Co. Release No. 34-30897, 57 Fed. Reg. 30985, 30989 (July 7, 1992) (emphasis added).

Plaintiff nonetheless advances two erroneous legal arguments as to why this action

should be allowed to proceed:

- Plaintiff asserts that whether the distribution and service fees comply with NASD
  Rule 2830 is a "red herring" because "[c]ompliance with NASD Rule 2830 does
  not, in any way, mean that a mutual fund, its trustees or its underwriter, have
  complied with Rule 12b-1."  Opp. 16.

Plaintiff's argument makes no sense.  By its terms, Rule 12b-1 does not even apply to

underwriters, other than to require that they furnish certain information requested by a fund's

board of trustees.  *See* Rule 12b-1(d).[8]  The rule does not address whether sales charges are

reasonable or excessive, a role that is entrusted to the NASD under § 22(b) and implemented in

---

[8]    Except as specifically authorized elsewhere in the Rule, Rule 12b-1 makes it "unlawful for any registered
open-end management investment company … to act as a distributor of securities of which it is the issuer."  Rule
12b-1(a).  It also imposes certain obligations on a mutual fund's trustees in adopting a rule 12b-1 plan.  *See, e.g.*,
Rule 12b-1(e).

SEC-approved NASD Rule 2830.[9]  Accordingly, it is difficult to discern how Distributors could have failed to "compl[y] with Rule 12b-1." Opp. 16.

In any event, Plaintiff is not suing for a violation of Rule 12b-1 – as Plaintiff well knows, there is no private right of action under Rule 12b-1[10] -- she is now solely suing Distributors for excessive compensation under a specific, express provision, § 36(b).  Plaintiff's frivolous claim (which she has now abandoned) that the Fund's trustees breached *their* fiduciary duties in approving 12b-1 payments that, for the reasons discussed elsewhere, unquestionably are proper in amount and purpose is simply irrelevant to a claim under § 36(b).  *See, e.g., Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 329 (4th Cir. 2001) ("[I]f [a] claim for general breach of fiduciary duty is to be brought, it must be done under some other section of the ICA, or alternatively under state law."  Section 36(b) is limited to cases where there was excessive compensation.

- Plaintiff argues that, for purposes of the argument in this section, this Court should follow the reasoning of three district court cases, *Pfeiffer v. Bjurman Barry & Associates*, 2004 WL 1903075 at *5 (S.D.N.Y. Aug. 26, 2004), *Zucker v. AIM Advisors, Inc.*, 371 F. Supp. 2d 852 (S.D. Tex. 2005), and *Lieber v. INVESCO Fund Group, Inc.*, 371 F. Supp. 2d 852 (S.D. Tex. 2005).[11]  *See* Opp. 17-20.[12]

---

[9]   Plaintiff's argument seems to be based on the premise that there is an irreconcilable conflict between Rule 12b-1 on the one hand and NASD Rule 2830 on the other, which, as interpreted in NASD Notice to Members 93-12 (discussed in the EV Memorandum at 8) specifically permits an underwriter to receive 12b-1 fees after a fund is closed for the purpose of reimbursing an underwriter for past distribution expenses.  *See* Opp. 18 n.12 (suggesting that the Court disregard NASD Notice to Members 93-12 because the NASD "has no place giving advisory opinions regarding SEC rules"); Opp. 17 ("NASD Rule 2830 does not and cannot preempt the mandate of SEC Rule 12b-1.").  Plaintiff's argument ignores that the later-enacted Rule 2830 and the NASD's interpretations thereof are subject to SEC oversight and have been explicitly or implicitly approved by the SEC.  *See* SEC Release No. 34-30897, 57 Fed. Reg. 30985, 30985-86 (July 13, 1992) (SEC approves NASD Rule 2830); *United States v. NASD*, 422 U.S. 694, 733 (1975) ("[W]e see no meaningful distinction between the [NASD's] rules and the manner in which it construes and implements them.  Each is equally a subject of SEC oversight."); *General Bond & Share Co. v. SEC*, 39 F.3d 1451, 1457-60 (10th Cir. 1994) (discussing SEC authority under § 19(b) of the Securities Exchange of 1934 to oversee NASD rule interpretations, including notices to members); 15 U.S.C. § 22(b).  Accordingly, as the *ING* and *Pfeiffer* courts have held, Rule 12b-1 and Rule 2830 must be read *in pari materia* in the manner Distributors suggests.

[10]   *See* EV Mem. 18-19 (demonstrating, in response to Plaintiff's withdrawn implied private right of action claim under ICA § 36(a), that there are no such implied private rights).

[11]   *AIM* and *INVESCO* were issued by the same judge on the same day and are (in the words of the court issuing the opinions) "virtually identical."  *AIM* 371 F. Supp. 2d at 853 n.2.  Accordingly, only *AIM* will be

As noted in the EV Memorandum, EV Mem.16-17 n.17, the defendants in *AIM*, *INVESCO*, and *Pfeiffer* did not brief, and therefore those courts did not address, several essential points argued by Distributors in this case. Most significantly:

1.    Section 22(b) and § 36(b) were part of the same 1970 amendments to the ICA and both the text of the two provisions and the legislative history draw a clear contrast between the authorization in § 36(b) of a private right for advisory fees and certain other compensation and the regulation of mutual fund sales charges, which was committed exclusively to the jurisdiction of the NASD, subject to SEC oversight. *See* EV Mem. 15; S. Rep. No. 91-184, at 17 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4912 (stating, on page of Senate Report immediately following discussion of § 36(b), that "sales loads should be regulated through the existing industry-government framework of self regulation.").

2.    In contrast to § 36(b), which is focused solely on preventing excessive advisory fees and certain other compensation, § 22(b) is partly concerned with protecting the securities industry. It expressly requires (and the SEC has found that Rule 2830 accomplishes) a balancing between prohibiting "excessive" sales charges and "allow[ing] for reasonable compensation" for underwriters. EV Mem. 15-16. None of the decisions cited by Plaintiff explains how this balance (and the regulators' exclusive authority) could possibly be maintained were courts to

---

discussed. Plaintiff also quotes portions of a transcript of a hearing on a motion to dismiss in *Bahe v. Franklin/Templeton Distributors, Inc., et al.*, Civil Action No. 04-1195 (D. Mass). Opp. 19-20. Even setting aside the unorthodox nature of this citation, the court in *Bahe* relied on the three cases Plaintiff cites, *see* Opp. 19 (asserting that *Bahe* relied on cases cited by Plaintiff), and Distributors' analysis of these cases applies equally to the comments from the bench in *Bahe*.

[12]    Despite the overly broad language in these opinions, *Pfeiffer* and *AIM* are not (as Plaintiff seems to suggest, Opp. 18-19) factually similar to the case at bar, and the results in those cases can be squared with Distributors' analysis. In essence, *Pfeiffer* and *AIM* involved allegations that, while payments of 12b-1 fees ostensibly were for ongoing distribution efforts, no such efforts were actually being made. Hence, the fees allegedly were not bona fide sales charges at all. In this case, however, it is undisputed and indisputable that the payments were for purposes and in amounts that the SEC and NASD have approved pursuant to the regulatory scheme under § 22(b) and Rule 2830.

intrude with their own judgments of what constitutes "excessive" sales charges. EV Mem. 16 & n.16; *cf. Friedman v. Salomon/Smith Barney, Inc.*, 313 F.3d 796, 800 (2d Cir. 2002) (regulatory scheme with "built in balance" supports implied repeal of antitrust statute).[13]

3.      In enacting § 36(b)(4), Congress expressly exempted all then-known sales charges from the reach of § 36(b). *See* EV Mem. 16. The SEC and NASD later decided to regulate 12b-1 fees (which did not exist in 1970 when § 36(b) was enacted) pursuant to their pervasive regulatory authority over mutual fund sales charges. *See* EV Mem. 15. This demonstrates that immunity from § 36(b) must be deemed to have been impliedly if not explicitly granted. *See* EV Mem. 16; *cf. United States v. NASD,* 422 U.S. 694, 735 (1975) (antitrust laws impliedly repealed given the "pervasive regulatory scheme" established by § 22 of ICA and the Maloney Act and given the "close relationship" between challenged activities and activities expressly immunized by § 22(f)); *see also id.* at 700 n.6, 710 n.19 (discussing § 22 and Maloney Act).

In short, the SEC and NASD have broad and exclusive authority over mutual fund sales charges, which they have exercised. Allowing courts to issue rulings about whether these charges are excessive under § 36(b) would be inconsistent with the regulatory scheme.

## IV.   DISTRIBUTORS IS ENTITLED TO SUMMARY JUDGMENT

Alternatively, summary judgment should be granted for Distributors.

---

[13]     *See also Gordon v. NYSE*, 422 U.S. 659, 689 (1975) (antitrust laws impliedly repealed with respect to practice of fixed commission rates because, whereas antitrust laws were concerned solely with competition, the SEC "must consider, in addition, the economic health of … the securities industry"). Indeed, statutory language similar to that found in § 22(b) coupled with SEC-supervised NASD regulatory activity has been found to justify implied repeal of the antitrust laws. *See id.*, 422 U.S. at 667, 681 (§ 19(b)(9) of the Securities Exchange Act of 1934 authorized the SEC to "supervise exchange self-regulation with respect to the 'fixing of reasonable rates of commission'").

## A.    Plaintiff Has Raised No Genuine Issue of Material Fact

Plaintiff has failed to raise any genuine issue of material fact. Regarding the 75 basis point fee, Plaintiff does not dispute that the fee is paid to cover actual past distribution charges incurred by Distributors; and that, once the uncovered distribution charges for a class have been paid, all payments of such distribution fees for that class will end. *See, e.g.*, Plaintiff's Response to Statement of Material Facts, Responses to Statement Nos. 8, 10. For the reasons already explained, Plaintiff's concessions on these points dispose of the case.[14]

With respect to the 25 basis point payments, Plaintiff concedes that the payments are limited to service fees as defined in Rule 2830(b) and (d). *See* Plaintiff's Response to Statement of Material Facts, Response to Statement No. 11. As discussed in the EV Memorandum, such service fees by definition are for ongoing personal services to existing Fund shareholders that continue irrespective of the closing of the Fund. *See* EV Mem. 3-4, 9.[15]

## B.    Plaintiff's Request for Relief Under Fed. R. Civ. P. 56(f) Is Frivolous

Finally, Plaintiff has the temerity to request that, if the Court concludes that Distributors is entitled to summary judgment on the current record, it should nonetheless deny summary

---

[14]    Although recognizing that Distributors is entitled to receive the 75 basis point fee under the terms of the Distribution Agreement, Plaintiff argues that, under her interpretation of Rule 12b-1 and the Fund's Distribution Agreements, the Fund could have terminated the Distribution Agreement at any time without penalty. Opp. 23. Regardless of whether this is so, the indisputable fact is that the Fund has not terminated the Distribution Agreement. Plaintiff's implicit argument that the Fund's trustees breached their fiduciary duty by not terminating the Distribution Agreement is (1) incorrect because it depends on her erroneous legal argument that a fund's board of directors necessarily breaches its fiduciary duties by approving payment of 12b-1 fees to a closed fund, and (2) irrelevant because Plaintiff has abandoned her claims against the trustees and is now solely suing Distributors under § 36(b). *See* p. 9 above (*citing Migdal*).

[15]    In a footnote of her brief, Plaintiff asserts that she "alleges that the services rendered in exchange for the annual .25% Distribution Fee were *de minimis* and decreasing as a result of the closing of the Fund, and that the service fee was excessive." Opp. 23 n.17 (*citing* Complaint ¶ 54). Paragraph 54 of the Amended Complaint cannot reasonably be read as Plaintiff suggests – it is devoid of allegations focusing on fees for ongoing personal services – and thus fails to provide Distributors fair notice of Plaintiff's contention in this regard. More fundamentally, however, such mere allegations in a complaint cannot defeat a motion for summary judgment. *See Roslindale Coop. Bank v. Greenwald*, 638 F.2d 258, 261 (1st Cir. 1981).

judgment pursuant to Fed. R. Civ. P. 56(f) so that Plaintiff may have an additional opportunity to conduct discovery. *See* Opp. 26. The request is frivolous.

> The First Circuit has recently restated the standards under Fed. R. Civ. P. 56(f):

> [I]nvoking [Rule 56(f)] require[s] due diligence both in pursuing discovery before the summary judgment initiative surfaces and in pursuing an extension of time thereafter. In addition to due diligence … [w]hen, as is often the case, the reason for a requested extension relates to incomplete discovery, the party's explanation must take a special form: it should show good cause for the failure to have discovered the facts sooner; it should set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist; and it should indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.

*Guzman-Ruiz v. Hernandez-Colon*, 406 F.3d 31, 35 (1st Cir. 2005) (citations and internal quotation marks omitted). Plaintiff obviously fails to meet these standards.

For reasons already discussed above, the additional discovery Plaintiff seeks – primarily information relating to the reason the trustees decided to continue the Rule 12b-1 Plans and Distribution Agreements after the Fund closed to new investors[16] – has no bearing on Plaintiff's sole remaining claim under § 36(b).

Even if some or all of the additional discovery sought by Plaintiff were somehow relevant to her § 36(b) claim, Plaintiff has not attempted to show, and cannot show, that there is good cause for her failure to obtain it earlier. This case was filed in late 2003, and Plaintiff had ample opportunity to obtain whatever discovery she wanted consistent with the pretrial orders entered by the Court. Plaintiff already filed a Rule 56(f) request in this case in response to Distributors' previous motion for summary judgment in March 2004 – in Plaintiff's counsel's own words at the March 2005 hearing concerning whether Plaintiff should be allowed to file her Amended Complaint this was "a long time ago." March 29, 2005 Hr'g Tr. at 23, attached hereto as Exhibit

---

[16] *See* Declaration of Theodore M. Hess-Mahan Pursuant to Fed. R. Civ. P. 56(f) in Opposition to Motion of Eaton Vance Distributors, Inc. to Dismiss or, in the Alternative, for Summary Judgment at 3 ¶¶ 6-7.

A.  At the same March 2005 hearing, the Court inquired about the extent of discovery that had already occurred in the case and Plaintiff assured the Court that she had taken substantial discovery:

> THE COURT: You've been doing nothing in the interim?
>
> MR. HABER: Well, quite to the contrary, Your Honor.  We've been doing a great deal of paper discovery which is reflected in the amended complaint.

March 29, 2005 Hr'g Tr. at 7-8.  Although Plaintiff indicated a desire to take certain depositions should her case survive dispositive motions, *id.* at 7-8, given the substantial discovery already taken, the Court announced its intention (to which Plaintiff explicitly agreed) to stay further discovery pending resolution of the instant motion for summary judgment:

> THE COURT: Well, let me suggest a way, after listening to this, that I'm inclined to think about this, which is to say if you want to bring them in now in this complaint, I'm going to stay the complaint, stay the proceedings until I hear motion to dismiss practice, both motion for summary judgment as to the original defendants and any motion to dismiss filed by the parties as a result of a new amended complaint.  It seems to me that that, at least, gives some balance to the problem of late filing and the circumstances of late filing.  And I'll focus it from that perspective.
>
> MR. HABER: I have no problem with that, Your Honor.

March 29, 2005 Hr'g Tr. at 24.  If Plaintiff genuinely believed she needed additional discovery to respond to Distributors' motion, it was incumbent upon her to say so at the hearing, or at least soon after the Court entered its order in accordance with its pronouncements at the hearing, rather than to require Distributors first to endure the burden and expense of preparing a ***second*** unnecessary dispositive motion, having already sought to moot the first such motion with her eleventh hour filing of an Amended Complaint.

Plaintiff's Rule 56(f) request also should be rejected given her decision to file a 26-page brief purporting to explain why her sole remaining claim survives a motion to dismiss or for

14

summary judgment.    "Ordinarily, a party may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its first effort is unsuccessful."  *Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 23 (1st Cir. 1999) (citations and internal quotation marks omitted).

## CONCLUSION

The Amended Complaint should be dismissed.  In the alternative, summary judgment should be granted for Distributors.

Respectfully submitted,

/s/ Eileen E. Pott
Wm. Shaw McDermott (BBO #330860)
  smcdermott@klng.com
Gregory R. Youman (BBO #648721)
  gyouman@klng.com
Eileen E. Pott (BBO #662350)
  epott@klng.com
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
75 State Street
Boston, MA  02109-1808
(617) 261-3100

Jeffrey B. Maletta, Esq.
Nicholas G. Terris, Esq.
KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
1800 Massachusetts Avenue, N.W.
Washington, D.C.  20036
(202) 778-9000

*Attorneys for Defendant*
*Eaton Vance Distributors, Inc.*

Date:  September 14, 2005