EATON.TXT

1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MASSACHUSETTS

3      * * * * * * * * * * * * * * *
                                    *
4      MICHELLE YAMEEN               *
                      Plaintiff      *
5                                    *
         VERSUS                      *    CA-03-12437-DPW
6                                    *
       EATON VANCE DISTRIBUTORS,     *
7        INC., ET AL                 *
                      Defendants     *
8      * * * * * * * * * * * * * * *

9
            BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
10
              UNITED STATES DISTRICT COURT JUDGE
11
                          HEARING
12
                      MARCH 29, 2005
13
       APPEARANCES:
14
            EDWARD F. HABER, ESQ., Shapiro, Grace, Haber &
15          Urmy, 53 State Street, Boston, Massachusetts
            02109, on behalf of the Plaintiff
16
            WILLIAM SHAW McDERMOTT, ESQ., Kirkpatrick,
17          Lockhart, Nicholson, Graham, LLP, 75 State
            Street, 6th Floor, Boston, Massachusetts
18          02109-1808, on behalf of Eaton Vance Distributors,
            Inc., Defendant
19
            JEFFREY B. MALETTA, ESQ., Kirpatrick, Lockhart,
20          Nicholson, Graham, LLP, 1800 Massachusetts Avenue,
            NW, Suite 200, Washington, DC  20036, on behalf
21          of the Eaton Vance Distributors, Inc., Defendant

22          SANFORD F. REMZ, ESQ., Yurko & Salvesen, P.C.,
            One Washington Mall, 11th Floor, Boston,
23          Massachusetts  02108, on behalf of Eaton Vance
            Tax-Managed Growth Fund 1.1, Defendant
24

25

EATON.TXT

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14          Courtroom No.  1 - 3rd Floor
            1 Courthouse Way
15          Boston, Massachusetts 02210
            3:00 P.M. - 3:40 P.M.
16

17

18

19

20          Pamela R. Owens - Official Court Reporter
            John Joseph Moakley District Courthouse
21            1 Courthouse Way - Suite 3200
              Boston, Massachusetts  02210
22

23

24     Method of Reporting:  Computer-Aided Transcription

25

3

EATON.TXT
1                    CA-03-12437-DPW

2                    MARCH 29, 2005

3            THE CLERK:  Would counsel please identify

4    themselves?

5            MR. HABER:  Good afternoon, Your Honor.

6    Edward Haber of Shapiro, Haber & Urmy for the Plaintiff.

7            MR. McDERMOTT:  Good afternoon, Your Honor.

8    William Shaw McDermott of Kirkpatrick & Lockhart,

9    Nicholson, Graham.  With me is my partner, Jeffrey

10   Maletta, from our Washington office who will address the

11   Court.

12           THE COURT:  Okay.

13           MR. REMZ:  Good afternoon, Your Honor.

14   Sanford Remz from Yurko & Salvesen, also for defendants.

15           THE COURT:  Okay.  Well, I have to express

16   some perplexity in how this case got to me, but now it's

17   with me and I don't know anything about it yet.  But

18   aren't the alternatives here really to have two lawsuits

19   rather than one, I mean, if the defendants prevail in

20   blocking the amendment of the complaint?  Do you want to

21   speak to that?

22           MR. MALETTA:  Your Honor, I don't think we do

23   have two lawsuits.

24           THE COURT:  You will, won't you?

25           MR. MALETTA:  Well, I don't think we will have

                                                           4

1    two lawsuits.

2            THE COURT:  Why not?
                         Page 3

EATON.TXT

3          MR. MALETTA:  Because I think that the motion
4     to dismiss, which was denied without prejudice by Judge
5     Lindsay, presents a dispositive legal issue.  And that's
6     the --
7          THE COURT:  Is it dispositive with respect to
8     the trustees as well?
9          MR. MALETTA:  I believe it is, Your Honor.
10     I believe it would be.
11          THE COURT:  Well, then, so why not simply
12     rebrief the thing with respect to everybody involved and
13     get it wrapped up at the same time --
14          MR. MALETTA:  Well, Your Honor --
15          THE COURT:  -- and apart from the fact that
16     there are fewer hoops to run through.
17          MR. MALETTA:  Well, Your Honor, we believe
18     that the way this proposed amended complaint came about
19     is grounds on its own for reasons to deny the amended
20     complaint.
21          THE COURT:  Well, but why?  Nobody stayed the
22     discovery in this case.  They are going forward
23     with their discovery.  It doesn't appear that there was a
24     fixed date for new parties to get involved.  And the
25     scheduling order doesn't seem to have addressed that.

                                                            5

1          MR. MALETTA:  That's correct, Your Honor.
2          THE COURT:  So, ordinarily for myself, I set
3     up or explore the prospect of additional parties because

EATON.TXT

4    I want my schedule to run more or less in the way in

5    which I've set it up.  And, so, new people getting

6    involved always have new ideas about scheduling, but

7    that isn't the case here.  And, so, I guess I'm of the

8    the general view that they say they've got a reason to

9    get them in here.  There doesn't appear to be a statute

10   of limitations' issue, is there?

11         MR. MALETTA:  I don't believe there is, Your

12   Honor, with respect to the particular claim.  When that

13   claim would actually start, there might be a statute of

14   limitations' issue.

15         THE COURT:  What does that mean?

16         MR. MALETTA:  As to how far back they could

17   go.

18         THE COURT:  Relation back as to the

19   independent trustees.

20         MR. MALETTA:  As to the independent trustees,

21   Your Honor, whether they would be liable for some of the

22   fees that were incurred or paid at the earliest portion

23   of the time that the fund was closed to new investors;

24   there might be that issue.  But as to whether or not

25   the practice itself is something that could not be

1    challenged on statute of limitations' grounds.  I don't

2    think that's the case.

3         THE COURT:  And I take it that the practice

4    continues now?

5         MR. HABER:  It does, Your Honor?

EATON.TXT

6          THE COURT:  Okay.  Well, Mr. Haber, let me
7    understand from you.  Anybody else -- anybody new you're
8    going to be hiring as a lawyer in your firm?
9          MR. HABER:  No, Your Honor, none that I
10   anticipate.  And I did apologize to Judge Lindsay for
11   the fact that that didn't hit our radar screen as
12   quickly as it should have.  Ms. Sutherland was working
13   on it.  She joined us a few months before and we didn't
14   dot the "i" across the two in terms of realizing that
15   there might be an issue in terms of Judge Lindsay's
16   comfort in continuing with the case at that point.  But
17   we don't anticipate hiring anyone that would create a
18   conflict with Your Honor and we don't anticipate any --
19         THE COURT:  Well, no one will because I have
20   no friends and, as a consequence, limited the number of
21   disqualifications.  But I'm getting it --
22         MR. HABER:  But this case should move forward
23   like you're suggesting, Your Honor.
24         THE COURT:  All right.  So you have discovery
25   completed in the end of this -- is it April; is that

                                                        7

1    when it's completed?
2          MR. HABER:  Well, Your Honor, the parties had
3    submitted in late November or early December a joint
4    scheduling statement.  We never had a Rule 16 conference
5    with Judge Lindsay.  That was essentially scheduled the
6    same day we saw him, the day in which he recused

                         Page 6

EATON.TXT

7    himself.  So nothing has ever -- no scheduling order has

8    ever entered.  And I have not discussed this with Mr.

9    Maletta.  I believe, Your Honor, that the appropriate

10   procedure now would be -- obviously, I feel that the

11   complaint should be deemed -- the amended complaint

12   should be deemed filed.  We need to address with Your

13   Honor the issue of it being filed under seal, which is

14   another matter to address today.

15         And I suggest that we establish a scheduling

16   order for the continued litigation of the case

17   consistent with the order with the joint statement that

18   the parties proposed in December, but just to be moving

19   all of the dates that we agreed to forward four or five

20   months to accommodate the fact that if the order would

21   be entered now as opposed to last December --

22         THE COURT:  Well, you've been doing nothing in

23   the interim?

24         MR. HABER:  I'm sorry?

25         THE COURT:  You've been doing nothing in the

8

1    interim?

2         MR. HABER:  Well, quite to the contrary, Your

3    Honor.  We've been doing a great deal of paper discovery

4    which is reflected in the amended complaint.  We will

5    obviously -- now that we have the new defendants in that

6    case, we will need to get the appropriate discovery from

7    their personal files -- I don't expect that to be

8    enormously voluminous -- and we will need to give

EATON.TXT

9   counsel for the new defendants time to join the case and

10  get up to speed.  And then we'll need their depositions

11  and the case can proceed.  And it's just a matter of

12  scheduling enough time for all of that.

13          THE COURT:  Mr. Rems, do you want to be heard

14  on this question?

15          MR. REMS:  No, Your Honor.

16          THE COURT:  I mean, how long do you think it's

17  going to take to get you up to speed?

18          MR. REMS:  For me to get up to speed, I've

19  been in the case, Your Honor.  The normal defendants

20  have been in the case since the beginning.

21          THE COURT:  Oh, I guess I misunderstood.

22          MR. REMS:  They referred to them --

23          THE COURT:  The independent --

24          MR. REMS:  -- as the independent trustees.

25          THE COURT:  Yes.  Are they represented?

9

1           MR. REMS:  They are not.  We do not represent

2   them yet, Your Honor.

3           THE COURT:  Okay.  They are not represented,

4   to your knowledge yet or how --

5           MR. MALETTA:  Your Honor --

6           THE COURT:  -- how is representation going to

7   be --

8           MR. MALETTA:  Your Honor, they will have

9   separate counsel, I expect.  There is a regular counsel

Page 8

EATON.TXT
10    for the independent trustees who meet the independent
11    counsel qualifications of the 40 Act.
12              THE COURT:  Right.
13              MR. MALETTA:  I would expect them to be
14    involved.
15              THE COURT:  Who is that?
16              MR. MALETTA:  It's Goodwin, Procter, Your
17    Honor.
18              THE COURT:  Whose name is misspelled in the
19    pleadings of the plaintiff.
20              MR. MALETTA:  And there would be an issue,
21    Your Honor, since this is entirely a derivative action.
22              THE COURT:  It's "e-r," not "o-r."  That's
23    what I'm getting at.
24              MR. MALETTA:  There would be an issue, Your
25    Honor, under 23.1, though you shouldn't have any

10

1     discovery at all until what I expect would be motions on
2     the demand requirement to be filed as well as the
3     renewal of our own motion.  I think the Kaufman case
4     in the 1st Circuit --
5               THE COURT:  Well, let me just understand this
6     a bit more.  Because I'm innocent of the motion to
7     dismiss as Judge Lindsay ultimately was as well.  Does
8     it all go off on demand; is that --
9               MR. MALETTA:  Your Honor, the existing
10    complaint, the complaint before the Court has one count.
11    And it's 30(6)(b) of the 40 Act which has no demand

EATON.TXT

```
12    requirement.  It's a direct shareholder action.  That
13    was what this case was structured as.  It was litigated
14    as that up until two days before we had the hearing with
15    Judge Lindsay.  That's what we moved to dismiss on,
16    solely the point that this is not a 30(6)(b) claim.  And
17    as a matter of law, the fees are not excessive.  And
18    this is a motion to dismiss in the alternative for
19    summary judgment.  We don't believe that the very few
20    facts we need to bring to the Court's attention are in
21    any way disputed.  And that is that the distribution
22    fees are, in fact, being used to pay down prior
23    distribution expenses as they are permitted to be used
24    under SEC law.  I think it's a fairly straightforward
25    legal issue once these fee facts, which I don't
```

11

```
1     understand to be disputed, are put before the Court.
2             The new complaint is a classical derivative
3     case.  The argument is that demand is excused
4     notwithstanding a recent Massachusetts statute that
5     makes it essentially universal notwithstanding the
6     Massachusetts statute that makes the independent
7     directors independent for purposes of considering
8     demand.  We would think that the first argument to be
9     raised with respect to the classical derivative claims
10    is that demand is not excused and that if demand is
11    made, the independent directors will make a
12    determination as to whether or not this is proper,
```

Page 10

EATON.TXT

13    present that issue to the Court, and then the Court

14    will have, if you will, a thinking of the independent

15    directors in front of it and can rule on that.  I

16    understand it's a business judgment determination.

17              THE COURT:  Well, let me understand this

18    sequencing a bit more.  No demand has yet been made; is

19    that it?

20              MR. MALETTA:  That's correct, Your Honor.

21              THE COURT:  Why not?

22              MR. HABER:  Your Honor, we believe that demand

23    is futile and we believe that under the jurisprudence,

24    the amended complaint more than satisfies the Supreme

25    Judicial Court's criteria for demand futility.  And that

12

1     is measured by Massachusetts law since the --

2               THE COURT:  Right.

3               MR. HABER:  -- funded issue here is organized

4     in Massachusetts law.

5               THE COURT:  Right.  But I guess if you want to

6     deal with that question -- that is, demand futility --

7     let me step back a little bit more.  Let's assume that I

8     find that as a matter of law, the underlying conduct is

9     not inappropriate -- that is, what I understand to be

10    their motion to dismiss or for summary judgment -- what

11    happens to the rest of the case?

12              MR. HABER:  Well, Your Honor, I guess the best

13    way to answer your question is to reiterate what Mr.

14    Maletta said.  That was accurate that the original

Page 11

EATON.TXT

15  complaint -- the current complaint, so to speak -- is a

16  one-count complaint --

17      THE COURT:  Right.

18      MR. HABER:  -- only against the distributors

19  of the fund --

20      THE COURT:  Right.

21      MR. HABER:  -- which is the only entity that

22  could be sued under 30(6)(b).  It's only the recipients

23  of the fees that can be sued.  And it alleges that those

24  fees are -- it's violative of Section 30(6)(b).

25      THE COURT:  Okay.  Let's say I say that it

13

1   isn't.  I'll ultimately say that on the motion to

2   dismiss and motion for summary judgment.  What happens

3   to the --

4       MR. HABER:  We would still have a claim, Your

5   Honor.  All right.  Granted if you reach that

6   conclusion, I would be climbing up a steep hill.  I

7   agree.  All right.  But we would still have a claim that

8   the trustees, who are continually reviewing under the

9   law, you must annually review these fees, make a

10  determination whether to continue the fees, Rule

11  12(b)(1) expressly says that these fees, the primary

12  purpose of these fees must be the sale of shares in the

13  fund.  These funds aren't selling their shares.  The

14  fund is closed to the public.  That's what precipitates

15  this issue.  They're not in the market of selling their

EATON.TXT

16  shares, yet they continue to charge fees for

17  distribution.  Rule 12(b)(1) says that the continued

18  payment must be primarily intended for sales in the fund

19  shares and the trustees in making a decision to sales

20  must determine that there is a substantial likelihood

21  that continued payment will benefit the current

22  shareholders of the fund.  And what we say is neither of

23  those are present under these circumstances.

24          THE COURT:  And I measure that against the

25  business judgment rule?

                                                          14

1           MR. HABER:  No.  Your Honor, no.  12(b)(1)

2  requires the trustees to measure it in the way that I

3  have indicated.  What we demonstrated in the amended

4  complaint which comes from the discovery we've obtained

5  thus far is -- to back up a minute, another requirement

6  of 12(b)(1) is that the trustees must meet at least

7  annually at a specific meeting for the purpose of

8  reviewing these fees.  They must keep minutes of those

9  meetings.

10          THE COURT:  They didn't do this?

11          MR. HABER:  No.  They did keep minutes of the

12  meetings.

13          THE COURT:  They met annually and they kept

14  minutes and notes?

15          MR. HABER:  They kept minutes and the rule

16  requires that all of the factors that they considered in

17  determining to continue the fees be set forth in those

                        Page 13

EATON.TXT

18    minutes.  And the minutes that we've received for all of

19    the meetings up to 2003, which was before we even

20    brought this action, are completely silent on this issue

21    of will it benefit the fund's shareholders to continue

22    these fees when the fund is no longer selling their

23    shares to the public, completely silent on the issue of

24    can this be primarily for the purpose of selling shares

25    in the fund when the fund is closed.  They didn't

15

1     consider it.  It's not in the minutes.  We demonstrate

2     in the amended complaint a very, very strong case

3     against the trustees for breach of fiduciary duty.

4     And coming back to the demand issue --

5             THE COURT:  What happens under those

6     circumstances?  Let's assume that this is a violation of

7     it.  This is again an area that I just haven't thought

8     about for some time.  Okay.  So the minutes don't

9     disclose that they did what they were supposed to do or

10    at least it doesn't report that they did what they were

11    supposed to do.  But if it --

12            MR. HABER:  What would be the relief?  Is that

13    what you're asking?

14            THE COURT:  Yes.

15            MR. HABER:  The relief would be two things.

16    And one of the things we ask for in the complaint is an

17    injunction against the fund continuing to be --

18            THE COURT:  Well, what's the standard that I

Page 14

EATON.TXT

19    use to make that determination?  That is, I say that they

20    should have kept better minutes.

21              MR. HABER:  Well, --

22              THE COURT:  And then -- just a moment.

23              MR. HABER:  Yes.  Go ahead.

24              THE COURT:  Then I say they made a reasonable

25    judgment about keeping the fee, what happens then?

16

1              MR. HABER:  If you concluded, Your Honor, that

2    based on all of the evidence -- and the law is clear

3    that in making that decision, Section 30(6)(b) talks to

4    it directly, that the Court is to consider all of the

5    circumstances.

6              THE COURT:  But are we back to where we were?

7    When you say that, 30(6)(b), aren't we back to where we

8    were with the determination that I was or the Court was

9    obligated to make with respect to the motion to dismiss

10   and motion for summary judgment on the original

11   complaint?

12             MR. HABER:  No, Your Honor.  I think that the

13   issue -- this 30(6)(b), the only defendant in the case

14   is the distributors.

15             THE COURT:  Well, that may be the only

16   defendant which may mean you've got limited relief.

17             MR. HABER:  I'm sorry?

18             THE COURT:  You've got limited relief, but it

19   doesn't necessarily mean that you don't get -- that the

20   legal issue isn't teed up, does it?

Page 15

EATON.TXT

21          MR. HABER:  Well, it's teed up somewhat

22     differently, Your Honor, in that what the distributor

23     says is we're getting paid back money we advanced.  All

24     right.  And they are making an argument that that's okay

25     because -- and that is only partially accurate.

17

1          THE COURT:  But isn't that presented to me in

2     the motion to dismiss?

3          MR. HABER:  Yes, it is presented in the motion

4     to dismiss, that particular claim.  But that particular

5     claim also, as set forth in the original complaint,

6     doesn't benefit from all of the additional facts that

7     are set forth in the amended complaint that we have

8     gained from the document discovery.

9          THE COURT:  Well, but that may be so.  And

10     then you'll present them to me in the motion to dismiss

11     or for summary judgment.

12          MR. HABER:  Well --

13          THE COURT:  I mean, having lots of facts in a

14     complaint doesn't do much for you unless you can support

15     it at the summary judgment level.

16          MR. HABER:  Well, that's true.  But what I'm

17     saying, Your Honor, is what we should simply be doing

18     here now is the amended complaint should be deemed

19     filed.  We need to deal, as I said, with the issue of it

20     being under seal.  The defendants are then free to make

21     whatever appropriate attack they think they can make on

EATON.TXT

22    that complaint whether it's the 30(6)(b) claim or the

23    breach of fudiciary duty claim or the demand futility

24    issue, it will all be in front of you, but with the

25    benefit of the factual allegations that we couldn't have

18

1     made when we first started this case.  We didn't have

2     the facts that could have given us a claim against the

3     trustee.

4            THE COURT:  But that -- then you submit it in

5     response to the motion for summary judgment.

6            MR. HABER:  I'm sorry?

7            THE COURT:  You'd submit it in response to the

8     motion for summary judgment?  I don't -- I guess I have

9     to say I'm not fully -- as you can understand or observe

10    -- not fully familiar with the ins and outs of this.

11    I'm simply trying to understand exactly how I'm going to

12    be dealing with the order of presentation.

13           MR. HABER:  And I would respectfully submit,

14    Your Honor, that the appropriate approach here is in

15    that sense the ordinary approach.  Without debating,

16    which I think is strongly that we have the right to file

17    that amended complaint under 15(a) without leave of

18    court and we briefed that issue.  But whichever way one

19    looks at it, whether it's as a matter of right or with

20    leave of Court pursuant to all the jurisprudence and

21    help, clearly that leave should be granted.  The amended

22    complaint should be deemed filed, then new defendants

23    need to appear through counsel.  And whatever motions,

Page 17

EATON.TXT

24  whether some of them overlap the motions that have
25  already been made or not, they can be made to Your

19

1   Honor.  We'll respond to them and the case can proceed
2   in the ordinary course.
3        I think that the plaintiff would be severely
4   disadvantaged if we went back to the original complaint
5   without the benefit of all of those other facts.  We
6   wouldn't be talking about the conduct of the trustees.
7   We'd only be talking about the conduct of the
8   distributor.  We make a compelling case against the
9   trustees that will breach their fiduciary duty.  We're
10  entitled to have that complaint filed.  We are more than
11  prepared to defend it.
12       THE COURT:  That may be so.  Of course you
13  are.  You can file any complaint you want.  The question
14  is whether or not it gets tied into this case.  And of
15  course, under our relatedness rules, it ends up with me.
16  So that's not something that I have any particular
17  vested interest in one way or the other.  I'm not sure
18  I understand how it was that you filed a motion to
19  dismiss and for summary judgment when discovery wasn't
20  completed.  What's going on there?
21       MR. MALETTA:  Your Honor, the motion to
22  dismiss, we believe, on the face of the complaint we can
23  make the argument that it fails to state a claim based
24  to 30(6)(b)(4) -- 30(6)(b) and particularly 30(b)(6)(4).

EATON.TXT
25     There are a few facts which we believe are in the public

20

1     record which we believe plaintiff's counsel was fully

2     aware of before he filed this lawsuit concerning the use

3     to which these distribution fees are put.

4          The basic argument in this case by plaintiff

5     is that the fees are excessive because, as Mr. Haber

6     explained, Rule 12(b)(1) can only have prospective

7     operation.  You can only get distribution fees if you

8     are still selling the fund and you use the fees to pay

9     prospective distribution expenses.  The SEC and the NASD

10    have both said that's not the case.  The industry has

11    operated on that basis for at least 10 or 15 years.

12    There is no secret that the money is used to pay

13    down distribution expenses that have been incurred,

14    particularly in the sale of B&C shares of mutual funds

15    where the distributor advances the commissions, the

16    selling brokers, and other expenses and gets paid back

17    out of the stream of fees.  There's no secret about

18    that.  Mr. Haber knows that's the way a business

19    operates.  Everybody in the industry knows how it's

20    operated for many years.

21         The few acts we've put in front of the Court

22    on a summary judgment are, frankly, the distribution

23    agreements which are in the public record and filed with

24    the SEC as part of the prospectus and statement of

25    additional information.  We've put the amount of the

EATON.TXT

21

1   uncovered distribution fees which are 33 and 34 million

2   dollars which have been advanced by the distributor

3   which he's getting paid back.  So the money is not going

4   as excess profits.  It's money that's been expended and

5   is being repaid.  And we put those facts in front of the

6   Court.  That's all we did.

7           THE COURT:  Was there a 56(f) motion in

8   connection with this?

9           MR. MALETTA:  There is, Your Honor.  There is

10  a 56(f) affidavit.  But our position is the facts that

11  you need in front of you to decide the legal issue are

12  not really in dispute.  And they are the distribution

13  agreement and the fact that these funds are being used

14  to pay down expenses which the distributor has already

15  incurred.  Under Mr. Haber's theory and the relief

16  that's requested, essentially the distributor has been

17  making a gift with no expectation of being repaid.  And

18  it's simply you can cut off any responsibility to pay

19  those funds down.  And he would argue that you can't

20  have a contract that requires that payment.

21          That's not the way the industry has worked for

22  years, Your Honor.  It's not the way it works today.

23  And the SEC and the NASD, as I've said, have said you

24  can use fees for this purpose and that's the basis of

25  our motion.